## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STEVEN TALBERT WILLIAMS, CESTUI QUÉ

**19 CV 11547**

_____

Write the full name of each plaintiff.

_____CV_____

(Include case number if one has been assigned)

-against-

UNITED STATES OF AMERICA (DEPARTMENT OF TREASURY:
INTERNAL REVENUE SERVICE & SOCIAL SECURITY ADMINISTRATION), et al.
Other Defendants:

AVROM R. VANN, PC (AVROM R. VANN); PERSHING, LLC (BANK OF NEW YORK
MELLON CORPORATION); UBS AG; FMR, LLC (FIDELITY CLEARING & CUSTODY

SOLUTIONS; CORRESPONDENT SERVICES CORP.); BORAH, GOLDSTEIN,
ALTSCHULER, NAHINS & GOIDEL (ST OWNER, LP); PERSHING SQUARE HOLDINGS

GROUP, LLC; WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30;
WALKER & DUNLOP CAPITAL, LLC (CW CAPITAL ASSET MANAGEMENT, LLC)

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

## COMPLAINT

Do you want a jury trial?
☑ Yes    ☐ No

(RULE 7(a))

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question** ⟶  (Fed. R. Civ. P. 4(k)(1)(c), 8(a)(3), 14(a)(3), 18, 42(a)(1), (a)(2) (consolidate), 19(a)(1); 28 U.S.C. §§139, 1367(a), 1399, (see 28 U.S.C. 1332(c)(1), 1357, 1441(c)(1)(A)), 3002(15)(A); 18 U.S.C. §§1593, 1836(b), 1964(4), 2264, 3150,

☐ **Diversity of Citizenship**    3363, 3364, 3556; 5 C.F.R §2635; 28 C.F.R. §0.5, 45.10; U.S. Const. Art. 3; Fed. R. Crim. P. 60(b); 15 U.S.C. §§5, 10; 42 U.S.C. §§1981a, 3755)

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
Claimed antitrust offenses (nature of suit No. 410):

| | | | |
|---|---|---|---|
| (i) | U.S. Const. Art. 1 §8 Cl. 17, 1 §10 (Commerce Clause; Social Contract and Natural Rights theories), 3 §3, 6 §3; | (vi) | *Economic Espionage Act of 1996;* |
| (ii) | U.S. Const. Ams. 1, 4, 5-8, 10, 11 (sanctions against I.R.S., S.S.A. & MR. VANN); 13 §3 (subversion), 14 §1, 14 §4, 16 (double taxation; fraud), 26 §1 (mail fraud); | (vii) | *Racketeer Influenced and Corrupt Organizations Act of 1970;* |
| | | (viii) | *Sarbanes Oxley Act of 2002;* |
| | | (ix) | *Rent Stabilization Act of 1969;* |
| (iii) | §10(b) & §13 of the *Security Act of 1933;* | (x) | Other Acts of Congress; |
| (iv) | *Clayton Act of 1914 & Sherman Antitrust Act of 1890;* | (xi) | Fed. R. Civ. P. 11(c), 65 (I.R.S., S.S.A. & MR. VANN claims); and |
| (v) | *Dodd-Frank Act of 2010;* | (xii) | Fed. R. Civ. P. 37 (motion for antitrust discovery - *sua* sponte) |

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
    (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

| STEVEN | T. (TALBERT) | WILLIAMS , | CESTUI QUÉ ("beneficiary") |
|--------|--------------|------------|----------------------------|
| First Name | Middle Initial | Last Name | |

(Currently Displaced: last known address: 449 E. 14th Street Apt. 7d, NYC 10009)
*American Guild for Variety Artists* (In Care of Steven Talbert Williams) 363 7th Ave., 17th Fl.

Street Address

| New York | NY | 10001-3904 |
|----------|-----|------------|
| County, City | State | Zip Code |

| N/A | STWLEGAL@GMAIL.COM |
|-----|---------------------|
| Telephone Number | Email Address (if available) |

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

STEVEN TERNER  MNUCHIN

First Name  Last Name
SECRETARY OF THE UNITED STATES DEPTARTMENT OF TREASURY ("U.S. TREAS.")
(in his official capacity over the I.R.S. and S.S.A.)

Current Job Title (or other identifying information)

1500 Pennsylvania Avenue, NW

Current Work Address (or other address where defendant may be served)

| Washington | District of Columbia | 20220 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

CHARLES P.  RETTIG

First Name  Last Name
COMMISSIONER OF THE UNITED STATES INTERNAL REVENUE SERVICE ("I.R.S.")
(in his official capacity over I.R.S. agents JOHN DOE (1) and JOHN DOE (2))

Current Job Title (or other identifying information)

Civ. Rights Div., 1111 Constitution Avenue, NW

Current Work Address (or other address where defendant may be served)

| Washington | District of Columbia | 20224 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

JOHN DOE (1) (I.R.S. AGENT "DAVID MOESER," ID No. "0196323")

First Name  Last Name

AGENT OF THE UNITED STATES INTERNAL REVENUE SERVICE

Current Job Title (or other identifying information)

ADDRESS UNKNOWN

Current Work Address (or other address where defendant may be served)

| | | |
|---|---|---|
| County, City | State | Zip Code |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 4:

JOHN DOE (2) (I.R.S. AGENT "FRANK BARLO," ID No. "*0195670*")

First Name      Last Name

AGENT OF THE UNITED STATES INTERNAL REVENUE SERVICE

Current Job Title (or other identifying information)

ADDRESS UNKNOWN

Current Work Address (or other address where defendant may be served)

County, City     State     Zip Code

Defendant 5:

ANDREW M.     SAUL

First Name      Last Name
COMMISSIONER OF THE UNITED STATES SOCIAL SECURITY ADMINISTRATION ("S.S.A.")
(in his official capacity over General Counsel, N.Y.S. Regional Office & N.Y. County S.S.A.)

Current Job Title (or other identifying information)

200 Constitution Avenue, NW

Current Work Address (or other address where defendant may be served)

| Washington | District of Columbia | 20210 |
| County, City | State | Zip Code |

Defendant 6:

ROYCE B.     MIN

First Name      Last Name
ACTING GENERAL COUNSEL OF THE
UNITED STATES SOCIAL SECURITY ADMINISTRATION

Current Job Title (or other identifying information)

Altmeyer Blg, 6401 Security Boulevard, Rm. 600

Current Work Address (or other address where defendant may be served)

| Baltimore | MD | 21235 |
| County, City | State | Zip Code |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 7:**

RAYMOND S.         EGAN

First Name         Last Name
N.Y.S. COMMISSIONER OF THE UNITED STATES SOCIAL SECURITY ADMINISTRATION
(in his official capacity over **N.Y. County S.S.A. & JANE DOE (1)**)

Current Job Title (or other identifying information)

26 Federal Plaza, Rm. 40-120

Current Work Address (or other address where defendant may be served)

New York         NY         10278
County, City         State         Zip Code

**Defendant 8:**

JANE DOE (1) ("MS. PARKER," unverified)

First Name         Last Name

**SUPERVISOR** OF THE NEW YORK SOCIAL SECURITY ADMINISTRATION

Current Job Title (or other identifying information)

123 Williams Street

Current Work Address (or other address where defendant may be served)

New York         NY         10038
County, City         State         Zip Code

**Defendant 9:**

AVROM R.         VANN

First Name         Last Name

**OWNER** OF AVROM R. VANN, PC

Current Job Title (or other identifying information)
(last known address: 420 Lexington Avenue, Ste. 2400 New York, NY 10170)
1211 Avenue of the Americas, 40th Fl.

Current Work Address (or other address where defendant may be served)

New York         NY         10036
County, City         State         Zip Code

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 10:**

| THOMAS P. | GIBBONS |
| --- | --- |
| First Name | Last Name |

C.E.O. OF BANK OF NEW YORK MELLON CORPORATION ("B.N.Y.")
(official capacity over PERSHING, LLC & check clearing for LINDA WILLIAMS BENEFICIAL TRUST)

Current Job Title (or other identifying information)

240 Greenwich Street

Current Work Address (or other address where defendant may be served)

| New York | NY | 10286 |
| --- | --- | --- |
| County, City | State | Zip Code |

**Defendant 11:**

| JAMES T. | CROWLEY |
| --- | --- |
| First Name | Last Name |

C.E.O. OF PERSHING, LLC ("PERSHING" or PERSHING GROUP, LLC)
(official capacity over JOHN DOE (3) & LINDA WILLIAMS BENEFICIAL TRUST)

Current Job Title (or other identifying information)

One Pershing Plaza

Current Work Address (or other address where defendant may be served)

| Jersey City | NJ | 07399 |
| --- | --- | --- |
| County, City | State | Zip Code |

**Defendant 12:**

| JOHN DOE (3) | |
| --- | --- |
| First Name | Last Name |

SENIOR BROKER OF PERSHING, LLC

Current Job Title (or other identifying information)

One Pershing Plaza

Current Work Address (or other address where defendant may be served)

| Jersey City | NJ | 07399 |
| --- | --- | --- |
| County, City | State | Zip Code |

**Page 7**

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 13:**

| SERGIO P. | ERMOTTI | |
|---|---|---|
| First Name | Last Name | |

**C.E.O.** OF UBS AG ("UBS")
(official capacity over the LINDA WILLIAMS BENEFICIAL TRUST - once of UBS/PaineWebber)

Current Job Title (or other identifying information)

| 1285 Avenue of Americas | | |
|---|---|---|

Current Work Address (or other address where defendant may be served)

| New York | NY | 10020 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 14:**

| ABIGAIL P. | JOHNSON | |
|---|---|---|
| First Name | Last Name | |

**C.E.O.** OF FMR, LLC ("FIDELITY," official capacity over FIDELITY CLEARING & CUSTODY SOLUTIONS [formally National Financial Services, LLC, **Correspondent Services Corp.** & of the LINDA WILLIAMS BENEFICIAL TRUST)

Current Job Title (or other identifying information)

| 245 Summer Street | | |
|---|---|---|

Current Work Address (or other address where defendant may be served)

| Boston | MA | 02210 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 15:**

| SANJIV | MIRCHANDANI | |
|---|---|---|
| First Name | Last Name | |

**PRESIDENT** OF FIDELITY CLEARING & CUSTODY SOLUTIONS
(official capacity over **Correspondent Services Corp.** & the LINDA WILLIAMS BENEFICIAL TRUST)

Current Job Title (or other identifying information)

| 200 Seaport Boulevard | | |
|---|---|---|

Current Work Address (or other address where defendant may be served)

| Boston | MA | 02110 |
|---|---|---|
| County, City | State | Zip Code |

**Page 8**

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 16:**

| ROBERT  D. | GOLDSTEIN |
|---|---|
| First Name | Last Name |

MANAGING PARTNER OF BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL
(official capacity over senior partners, JOHN DOE (4) & ST OWNER, LP)

Current Job Title (or other identifying information)

377 Broadway

Current Work Address (or other address where defendant may be served)

| New York | NY | 10013-3993 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 17:**

JOHN DOE (4)

| First Name | Last Name |
|---|---|

LEGAL REPRESENTATIVE for BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL & ST OWNER, LP (see *ST Owner, LP v. Eugene Williams*, Index No. 52069/12(Chan)(JHS)(NYHC))

Current Job Title (or other identifying information)

377 Broadway

Current Work Address (or other address where defendant may be served)

| New York | NY | 10013-3993 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 18:**

| GREGORY J. | CLAUDE |
|---|---|
| First Name | Last Name |

LEGAL REPRESENTATIVE for BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL & ST OWNER, LP (see *ST Owner, LP v. Eugene Williams*, Index No. 52069/12(Chan)(JHS)(NYHC))

Current Job Title (or other identifying information)
(see the PCV/ST Mgmt. Office: 276 First Ave Loop, New York, NY 10009)
377 Broadway

Current Work Address (or other address where defendant may be served)

| New York | NY | 10013-3993 |
|---|---|---|
| County, City | State | Zip Code |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 19:**  WILLIAM A.                          ACKMAN
_____
First Name                        Last Name
C.E.O. OF PERSHING SQUARE HOLDINGS GROUP, LLC ("P.S.H.") (official capacity over:
ST OWNER, LP & WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30 (UBS AG))

Current Job Title (or other identifying information)
(NY offices: 888 7th Avenue New York, NY 10019)
Elysium Fund Management Limited P.O. Box 650 1st Floor Royal Chambers St. Julian's Avenue

Current Work Address (or other address where defendant may be served)

| St. Peter Port | Guernsey | GY1 3JX Channel Islands |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 20:**  G. KENNEDY                          THOMPSON
_____
First Name                        Last Name
C.E.O. OF WACHOVIA BANK, N.A. ("WACHOVIA") (official capacity over: WACHOVIA BANK
COMMERCIAL MORTGAGE TRUST 2007-C30 ("TRUST2007-C30," UBS AG))

Current Job Title (or other identifying information)

8739 Research Drive URP 4 Charlotte, NC 28262

Current Work Address (or other address where defendant may be served)

| Charlotte | NC | 28262 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 21:**  WILLY                          WALKER
_____
First Name                        Last Name
C.E.O. OF WALKER & DUNLOP CAPITAL, LLC ("W&D")
(official capacity: CW CAPITAL ASSET MGMT., LLC ("CWCAM") & its C.E.O., DAVID B. IANNARONE)

Current Job Title (or other identifying information)
(N.Y. Office: 535 Madison Ave, Fl. 12 New York, NY 10022)
7501 Wisconsin Ave, Ste. 1200 E.

Current Work Address (or other address where defendant may be served)

| Bethesda | MD | 20814 |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 22:**

| DAVID B. | IANNARONE |
|---|---|
| First Name | Last Name |

C.E.O. OF CW CAPITAL ASSET MANAGEMENT, LLC ("CWCAM")

Current Job Title (or other identifying information)
(N.Y. Office: 555 5th Avenue, Fl. 5  New York, NY 10017)
701 13th Street, NW

Current Work Address (or other address where defendant may be served)

| Washington | DC | 20005 |
|---|---|---|
| County, City | State | Zip Code |

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   UNITED STATES Claims: (i) I.R.S., over the phone and fax machine of MR. MICHAEL WHITNEY (50 Granite St Brooklyn, N.Y. 11207); and (ii) S.S.A., at the N.Y.S.S.A. (123 Williams St.).  See attached pages 11 to 140 for locations of occurrences for associated claims.

Date(s) of occurrence:   UNITED STATES Claims: (i) I.R.S., during the months of August to September of the year 2013 (exact date uncertain due to an alleged theft of property by the NYPD's 20TH PRECINCT. See attached **DISCLAIMER #1**).  See attached pages 12 to 140 for other dates of occurrences.

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

I, STEVEN TALBERT WILLIAMS, CESTUI QUÉ ("PLAINTIFF," Pro Sé), in reference to the accompanying "*Motion For In Forma Pauperis*," present this brief as a claimed factual testimony of relevant events surrounding an alleged conspired antitrust, economic espionage scheme, via the corruption of enterprises, within and without government agencies of the UNITED STATES (namely the I.R.S. and S.S.A.  See Exhibit 7); violating PLAINTIFFs' rights as claimed "sole beneficiary" to the LINDA WILLIAMS BENEFICIAL TRUST (Exhibit 1) and as the beneficiary to a rent stabilized  real property within the estate of LINDA PAULA STREGER WILLIAMS ("DECEDENT," PLAINTIFFs' mother) (enforced under: U.S. Const. Am. 1, 4, 5, 6, 7, 8, 10, 13 §1, 14 §1, 14 §4, 16, 26 §1; Fed. R. Civ. P. 8(d)(2), (e), 9(b), (d), (e), 26, 27; 18 U.S.C. §§2, 241, 286, 371; 28 U.S.C. §762, including various antitrust statutes such as within the *Clayton Act* (15 U.S.C. §§1-11), *Sherman Antitrust Act* (15 U.S.C. §§12-38), *Donnelly Act, Sarbanes Oxley Act of 2002, Security Act of 1933, Securities & Exchange Act of 1934* (§§10(b), 13), *Dodd-Frank Wall Street Reform & Consumer Protection Act of 2010, Investment Company Act, Fair Credit Reporting Act* (15 U.S.C. §§1681, et seq.), and *Trust Indenture Act of 1939* (15 U.S.C. §§ 77aaa, et. seq.).

As claimed, the conspired scheme was perpetrated so as to deter PLAINTIFF from:

(i) the acquisition of securitized beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST, confirmed by the *Federal Deposit Insurance Corporation* ("F.D.I.C.") as having "*a certificate of ownership of an investment...* [from] *1987 with Microsoft Corporation*" [emphasis added] (Appendix A & Exhibit 10), containing an *Individual Retirement Account* ("IRA," Exhibit 2);

(ii) legal malpractice claims against DECEDENTs' legal representative, MR. AVROM R. VANN, who allegedly denied PLAINTIFF the "*irrevocable*" (Ex. 1, *Id.* at 1.3) beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST upon reaching the custodial age of his "*Thirtieth birthday*" (Ex. 3, *Id.* at 3.2 of DECEDENTs' Last Will & Testament, Exhibit 3); and

(iii) retaining rights to rent stabilized succession (9 NYCRR §2522.8) for DECEDENTs' dwelling unit within *Peter Cooper Village/Stuyvesant Town* ("PCV/ST"), through a claimed unconstitutional eviction (despite having a renter's insurance policy from *State Farm Life Insur. Co.*, "*State Farm Fire & Casualty Co.*" Exhibit 4), where the claimed illegal fiduciary acquisition of DECEDENTs' IRA (by the controlling entities of PERSHING (B.N.Y.), UBS, and FMR (from *Correspondent Services Corp.*); originally formed from *Kirlin Securities, Inc.* of Syosset, NY (Ex. 5), transferred to PERSHING and UBS/PaineWebber (Ex. 2.4, 2.5), and split into the above controlling entities) allegedly incurred the claimed illegal advertising and trading of securitized assets within the world financial markets, whereby, upon PLAINTIFFs' investigation, through alleged "dark-pool" trading, the *Assets Under Management* ("AUM") of UBS were utilized within the *Initial Public offering* ("IPO," Exhibit 6) of P.S.H. to "bail out" the defaulted senior mortgage of PCV/ST's *TRUST2007-C30 (and tranches)* in the year 2008 (via a Deed-In-Lieu, "DIL," of foreclosure, U.C.C. Art. 9, auction; the final years of the U.S. housing crisis of 2000-2010), allegedly leading to a prior attempt to evict DECEDENT, as such attempt was in coordination with an alternate claimed scheme to evict rent stabilized and elderly tenants (see FACT SHEET #36, Appendix B) in order to maliciously raise rental prices to market-rate value, thereby eliminating the owners need for tax exempt benefits and, further, convert the PCV/ST community into co-op's or condominiums.

The claimed corruption of enterprises allegedly occurred after the alleged trial of Dizengoff (*ST Owner, LP v. Dizengoff, et al.*, No. 08113861), where owners of PCV/ST performed financial background checks of all tenants, thereafter (after the claimed unconstitutional eviction), PLAINTIFF is claims he experienced numerous unconstitutional acts in aid of subversion within **Page 11** impoverishment, connected to the bondholders of PCV/ST's TRUST2007-C30.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 556, 570, 679 (2007), 127 S. Ct. 1955, 1964-67, 167 L. Ed. 2d 929, 2007 U.S. LEXIS 5901, "*a plausible claim for relief.*"  See also *Cryer v. Commissioner of Revenue Services*, No. 8118-09 (U.S. T.C., 2013), "[t]*he presence or absence of fraud is never presumed.*[.]"



**FITTED SOLE**
PRODUCTIONS.

FITTED    FABLES
A PUBLISHING COMPANY

*Southern District Court of the State of New York*

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    12

## COMPLAINT ATTACHMENT

DISCLAIMER #1
DISCLAIMER #2

## PART III (CONTINUED)

| | |
|---|---|
| PART III | STATEMENT OF CLAIM (CONTINUED): FACTS (RESTATED) |
| PART III.A | PRAYER FOR RELIEF |
| PART III.A.1. | CLAIMS AGAINST THE UNITED STATES |
| PART III.A.2. | CLAIMS AGAINST MR. AVROM R. VANN OF AVROM R. VANN, PC |
| PART III.A.3. | CLAIMS AGAINST THE FINANCIAL INSTITUTIONS OF THE *LINDA WILLIAMS BENEFICIAL TRUST* |
| PART III.A.4. | CLAIMS AGAINST BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL & THE FINANCIAL INSTITUTIONS OF THE WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30 |
| PART III.B. | BACKGROUND |
| PART III.B.1. | UNITED STATES ANTITRUST CLAIMS |
| PART III.B.1.a | ANTITRUST CLAIMS AGAINST THE INTERNAL REVENUE SERVICE |
| PART III.B.1.a.i | ABRUPT RESIGNATION OF THE SECRETARY IN 2012 |
| PART III.B.2. | OBSTRUCTION & TAKING CLAIMS AGAINST THE INTERNAL REVENUE SERVICE (2010 INDIVIDUAL TAXES) |
| PART III.B.3. | ANTITRUST CLAIMS AGAINST THE SOCIAL SECURITY ADMINISTRATION |
| PART III.B.3.a. | EMPLOYMENT IDENTIFICATION NUMBER OF THE LINDA WILLIAMS BENEFICIAL TRUST (FORM "*SSA-1694*") |
| PART III.B.3.b. | COMPREHENSION OF FORM "*SSA-1694*" |
| PART III.B.4. | UNITED STATES/CANADA TAX TREATY CLAIMS: SOCIAL SECURITY ADMINISTRATION /INTERNAL REVENUE SERVICE |
| PART III.C. | THE LINDA WILLIAMS BENEFICIAL TRUST (LAST WILL & TESTMENT, CODICILS & TESTAMENTARY IRREVOCABLE/CUSTODIAL TRUST) |
| PART III.D. | CLAIMS AGAINST AVROM R. VANN (AVROM R. VANN, PC) |
| PART III.D.1. | HISTORICAL LEGAL & ACCOUNTANT REPRESENTATIONS FOR MRS. LINDA PAULA STREGER WILLIAMS |
| PART III.D.2. | HISTORICAL LEGAL REPRESENTATIONS (PAUL & ROSEN, LP) |
| PART III.D.3. | HISTORICAL LEGAL REPRESENTATIONS (JULIETTE LEVIN, ESQ.) |
| PART III.D.4. | SUCCESSOR LEGAL REPRESENTATIVE; HOLDER OF TESTAMENTARY INSTRUMENTS & FORCED DIVULGENCE FROM THE MARZEC LAW FIRM |
| PART III.D.5. | LEGAL MALPRACTICE (EMAILED CORRESPONDENCES W/ CESTUI QUE STEVEN TALBERT WILLIAMS) |
| PART III.D.5.a. | CHARACTER OF MR. AVROM R. VANN: PRIOR TRIALS PROVING LEGAL MALPRACTICE |
| PART III.D.5.a.i. | "*TED LAPIDUS V. VANN.*" SANCTIONS PLACED UPON MR. AVROM R. VANN |
| PART III.D.5.a.ii. | "*VANN V. HOME INSURANCE CO.:*" NEGLECT TO COMMENCE IN APPROPRIATE TIME |
| PART III.D.5.b. | INVESTIGATIONS |
| PART III.E. | DOMESTIC HOUSING TERRORISM: ANTITRUST CLAIMS AGAINST THE FINANCIAL INSTITUTIONS OF THE LINDA WILLIAMS BENEFICIAL TRUST & PETER COOPER VILLAGE/STUYVESANT TOWN |
| PART III.E.1. | A HISTORICAL REFERENCE |
| PART III.E.1.a. | UNCONSTITUTIONAL USE OF TAX-EXEMPT BONDS |
| PART III.E.2. | ANTITRUST SCHEMES |
| PART III.E.3. | ILLEGAL EVICTION (FACTUAL BACKGROUND) |
| PART III.E.3.a. | STATE FARM RENTERS' INSUR. POLICY & REPRESENTATIVE AGENT MR. KEVIN LEONG |
| PART III.E.3.b. | MANAGEMENT RELATIONS W/ TENANTS |
| PART III.E.3.c. | LEAD-BASED PAINT CAUSING ADVANCED DEATHS IN CANCER & DIALYSIS PATIENTS |
| PART III.E.3.d. | ILLEGAL EVICTION |
| PART III.E.3.d.i. | *ST OWNER LP V. EUGENE WILLIAMS*, INDEX NO. 52069/12(CHAN)(JHS)(NYHC) |
| PART III.E.3.d.ii. | INDEX NO. 52069/12: RECORDS FOR REVIEW |

COMPLAINT



*Southern District Court of the State of New York*

**FITTED SOLE**
PRODUCTIONS™

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    13

PART III.E.3.d.ii.A.         "*CASE SUMMARY*" REPORT
PART III.E.3.d.ii.B.         REQUISITION SLIP NO. 1 (MARCH 8, 2013)
PART III.E.3.d.ii.C.         REQUISITION SLIP NO. 2 (APRIL 15, 2013)
PART III.E.3.d.ii.D.         REQUISITION SLIP NO. 3 (OCTOBER 9, 2015)
PART III.E.3.d.ii.E.         FILINGS OF BORAH, GOLDSTEIN, ALTSHULER, NAHINS & GOIDEL, P.C.
                             (CW CAPITAL ASSET MGMT. - PCV/ST) TO OBTAIN EVICTION FROM
                             HON. MARGARET PUI YEE CHAN
PART III.E.3.d.iii.          INDEX NO. 52069/12: TRIAL ON REVIEW
PART III.E.3.d.iii.A.        INDEX NO. 52069/12-001(JHS)(NYHC)
PART III.E.3.d.iii.B.        SERVING NEW TENANTS: MR. JOHNATHAN BYER & MR. BENJAMIN CROES
PART III.E.3.d.iii.C.        INDEX NO. 52069/12-002(JHS)(NYHC)
PART III.E.3.e.              PARALLELISM & PARALLEL PLUS FACTORS
PART III.E.3.f.              NANOBIOTECHNOLOGY & INFORMED CONSENT
PART III.F.                  REOPENING OF TRIALS CLAIMED WRIT OF ERROR (FED. R. CIV. P. 60 MOTIONS)
PART III.G.                  PRELIMINARY ALTERNATIVE DISPUTE RESOLUTION PROPOSAL
PART III.G.1.                EXPERIMENTAL PROGRAMS
PART III.G.2.                SEMI-SAFE HARBER SETTLEMENTS (TAX-SHIFTED LIABILITY)
PART III.G.3.                SLIP LAW PROPOSAL ("*INDIVIDUAL TAX IMMUNITY ACT*")
PART III.G.4.                DAMAGES OF LESSER AMOUNTS & THEIR USE
PART III.G.5.                CONTINUANCE UPON ACCEPTANCE
PART III.G.6.                HIGHLIGHTED INVESTMENT OPPORTUNITY FOR DEFENDANTS
PART III.G.7.                OTHER MANDATORY PROVISIONS
PART III.G.8.                REQUESTED ADOPTION FOR A "GIFT VOUCHER ALLOWANCE"
PART III.H.                  SUGGESTED PRETRIAL HEARINGS FOR COPYRIGHT INFRINGEMENT TO EXPEDITE TRIAL
PART III.I.                  SUBSEQUENT JURISDICTION
PART III.I.1.                CLASS ACTIONS
PART III.I.2.                CONGRESSIONAL OVERSIGHT FOR THE ESTATE OF LINDA PAULA STREGER WILLIAMS
                             W/IN THE SURROGATE COURT OF THE COUNTY OF NEW YORK

## INDEX TO APPENDICES

APPENDIX A      F.D.I.C. response email of "*Microsoft*" assets in the LINDA WILLIAMS BENEFICIAL TRUST
APPENDIX B      Department of Housing & Community Renewal's FACT SHEET #36
APPENDIX C      *ESTATE OF LINDA PAULA STREGER WILLIAMS,* File No. 2013-3538(SCNY)
APPENDIX D      U.S. TREAS.'s "*SS-4*" form filing of the LINDA WILLIAMS BENEFICIAL TRUST
APPENDIX E      I.R.S.'s "W-9" form filing of the LINDA WILLIAMS BENEFICIAL TRUST
APPENDIX F      PLAINTIFFs' visit to N.Y.S.S.A. (stamped SSA-1694 form and ticket receipt stub)
APPENDIX G      *ST OWNER, LP v. EUGENE WILLIAMS,* Index No. 52069/12(NYHC)
APPENDIX H      *MARYLAND v. WILLIAMS, STEVEN T.,* No. ID00283543 (M.C. Dist.Ct., 2012)
APPENDIX I      *PEOPLE v. STEVEN WILLIAMS,* Docket No. 2012NY089333(NYCC)
APPENDIX J      *UNEMPLOYMENT INSURANCE BOARD v. STEVEN WILLIAMS,* Case Nos. 012-24319 (NYSDOL),
                012-24 322(ALJ Prichardo)(NYSDOL)
APPENDIX K      *PEOPLE v. WILLIAMS, STEVEN,* Violation No. 109705119(TAB)
APPENDIX L      *PEOPLE v. WILLIAMS, STEVEN,* Violation No. 110944195(TAB), Dock. No. "*160523*' (Control No.
                "*0042740210*'")(N.Y. S.Ct., Kings Co., Civ.)
APPENDIX M      *WILLIAMS v. USA, ET AL.,* Dock. No. 15cv5114(LAP)(SDNY), 16-189(ALK)(DJ)(BDP)(2ⁿᵈ Cir.),
                137 U.S. 1611(2017) (Index No. 16M111, denying "*Motion To Direct The Clerk To File The Petition
                Out Of Time*") (U.S. S.Ct., Mar. 15, 2017)
APPENDIX N      *PEOPLE (N.Y.P.D., 20ᵀᴴ PRECINCT) v. WILLIAMS, STEVEN,* Ticket No. 0203004955, Dock. No.
                0203004955(OATH)(September 16 & 17, 2018)
APPENDIX O      *WILLIAMS v. USA, ET AL.,* 18cv1264(LLS)(SDNY), 19-39(JAC)(PWH)(JMW)(2ⁿᵈ Cir.) (denied on appeal)
APPENDIX P      *WILLIAMS v. USA, ET AL.,* 18cv1264(LLS)(SDNY), 19-240(JAC)(PWH)(JMW)(2ⁿᵈ Cir.) (man. denied)
APPENDIX Q      *WILLIAMS v. USA, ET AL.,* 18cv1264(LLS)(SDNY), 19-1392(RSP)(BDP)(RR)(2ⁿᵈ Cir.) (man. denied)
APPENDIX R      *WILLIAMS v. USA, ET AL.,* 18cv1264(LLS)(SDNY), 19-39(JAC)(PWH)(JMW)(2ⁿᵈ Cir.) (man. denied),
                19-5398(pet. denied)



*Southern District Court of the State of New York*



*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 14

**APPENDIX S**   *WILLIAMS v. USA, ET AL.*, 18cv1264(LLS)(SDNY), 19-240(JAC)(PWH)(JMW)(2nd Cir.) (man. denied), 19-5399(pet. denied)

**APPENDIX T**   *WILLIAMS v. USA, ET AL.*, 18cv1264(LLS)(SDNY), 19-1392(RSP)(BDP)(RR)(2nd Cir.) (man. denied), 19-5405(U.S. S.Ct.)(pet. denied)

**APPENDIX U**   *WILLIAMS v. USA, ET AL.*, 18cv1264(LLS)(SDNY), 19-1392(RSP)(BDP)(RR)(2nd Cir.) (man. denied), 19-6227(U.S. S.Ct.)(man. denied)

**APPENDIX V**   *WILLIAMS v. USA, ET AL.*, 18cv1264(LLS)(SDNY), 19-1392(RSP)(BDP)(RR)(2nd Cir.) (man. denied), 19-6565(U.S. S.Ct.)**(man. pending)**

## INDEX TO EXHIBITS

**EXHIBIT 1**   LINDA WILLIAMS BENEFICIAL TRUST

**EXHIBIT 2**   Individual Retirement Account of the LINDA WILLIAMS BENEFICIAL TRUST

**EXHIBIT 3**   Last Will & Testament of **MRS. LINDA PAULA STREGER WILLIAMS**

**EXHIBIT 4**   **MRS. LINDA PAULA STREGER WILLIAMS** rental insur. policy with **STATE FARM ( MR. KEVIN LEONG)**

**EXHIBIT 5**   Kirlin Securities, Inc.'s transfer to the LINDA WILLIAMS BENEFICIAL TRUST to **PERSHING (B.N.Y.)**

**EXHIBIT 6**   Initial Public Offering of **P.S.H.**

**EXHIBIT 7**   PLAINTIFFs' phone conversation notes I.R.S. AGENTS JOHN DOE (1) and (2)

**EXHIBIT 8**   **MR. MICHAEL WHITNEY's** fax machine telephone number ("[xxxxxx]*2587*")

**EXHIBIT 9**   **BANK OF AMERICA's** "*Estate of Linda P. Williams*" account

**EXHIBIT 10**   **FMR's (CORRESPONDENT SERVICES CORPORATION)** "*TRUST ERISA PLAN TRUSTEE CERTIFICATION*" filing of the LINDA WILLIAMS BENEFICIAL TRUST

**EXHIBIT 11**   PLAINTIFFs' email to F.D.I.C.'s secure website

**EXHIBIT 12**   PLAINTIFFs' mailed a letter to the I.R.S., with postal receipt

**EXHIBIT 13**   Paul & Rosen, LP 's letter to **MRS. LINDA PAULA STREGER WILLIAMS** and correspondences with **MR.VANN** as legal representative for **MRS. LINDA PAULA STREGER WILLIAMS'** estate

**EXHIBIT 14**   PLAINTIFFs' email to New York County E-court's **HON. J. LUIS A. GONZALES**, **MS./MRS. SUSANNA MOLINA ROJAS** (Clerk of the court) and New York Univ. professors

**EXHIBIT 15**   Carson, Escott, Slevin & Dipene email to PLAINTIFF (July 2, 2011 audition, "*Neilsen Print Casting Today.*")

**EXHIBIT 16**   **MS./MRS. LUCY HALLER's** email to PLAINTIFF of proof of service pictures

**EXHIBIT 17**   A picture of PLAINTIFFs' mailbox key for PCV/ST Building 449's Apt. 7d

**EXHIBIT 18**   Evidence of economic espionage (tranche investments of TRUST2007-C30)

**EXHIBIT 19**   Slip Law proposal "*An Act to Immunize an Individual from Tax liability within Sovereignty*" ("Individual Tax Immunity Act")

**EXHIBIT 20**   Slip Law proposal "*Deprived Economic Status*"

**EXHIBIT 21**   Slip Law proposal "*Slip Law Draft Of Federal Rules Of Civil Procedure, Rule 3.1, By Cestui Que Steven Talbert Williams*"



**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*Southern District Court of the State of New York*
*(Docket - TBD) (Dated December 13, 2019)*    15

## DISCLAIMER #1

Due to <u>dissolved counterclaims</u> within the previous trial of *PEOPLE (N.Y.P.D., 20TH PRECINCT) v. STEVEN TALBERT WILLIAMS (CESTUI QUE)*, (OATH, 0203004955, September 16 & 17, 2018) of **NEW YORK POLICE DEPARTMENT's ("N.Y.P.D.") 20TH PRECINCT** stealing PLAINTIFFs' personal property (containing evidence of this trial; previously filed in: (i) *WILLIAMS v. UNITED STATES, ET AL.*, 15cv5114(LAP)(SDNY), 16-189(ALK)(DJ)(BDP), 137 U.S. 1611(2017) (Index No. 16M111)(U.S. S.Ct., Mar. 15, 2017)); and (ii) *WILLIAMS v. UNITED STATES, ET AL.*, **18cv1264(LLS)(SDNY)**, 19-39(2nd Cir.)(denied on appeal), 19-240(2nd Cir.)(man. denied), 19-1392(2nd Cir.)(man. denied), 19-5405(U.S. S.Ct.)(pet. denied), 19-6227(U.S. S.Ct.)(man. denied), **19-6565(U.S. S.Ct.)** (see <u>Appendix V</u>)), he is unfortunately unable to provide the Court certain evidence in support of his complaint. However, some evidence presented is still in his possession.

The claimed theft of PLAINTIFFs' personal property by the **20TH PRECINCT**, as alleged, was shortly after an event when he filed a police report (**Complaint Report No. 3687**) with the **20TH PRECINCT** for his certiorari petition, appendices and exhibits from *WILLIAMS v. UNITED STATES, ET AL.*, 137 U.S. 1611(2017) being allegedly stolen within a two to three minute period, at approximately 5:15 in the morning (on **September 6, 2017**), after sleeping in Richard Tucker Park (located at Columbus Ave. and 66th Street), when he arose to purchase a cup of coffee across the street, only to return to find one of his bags missing (allegedly containing his certiorari petition and some appendices/exhibits).

PLAINTIFFs' other appendices/exhibits were allegedly stolen by the **20TH PRECINCT** under a claimed unconstitutional sanitation charge of ADC §16-122(b) (the "*Legislative intent*" of ADC §16-122(a) stating such was enacted for the "*punish*[ment of] *those persons who abandon and/or remove <u>component parts of motor vehicles in public streets</u>.*" [emphasis added]), where his personal belongings were secured to a bike post outside of *Vivé Le Crepe* (located at 187 Columbus Ave., NY, NY 10025, where PLAINTIFF was allegedly allowed to sleep in front of for nearly a six month period; in constant contact with officers of the nearby **20TH PRECINCT**).

## DISCLAIMER #2
## PRO SÉ DISCLOSURE STATEMENT

This antitrust matter entails the financial institutions of the "*LINDA WILLIAMS BENEFICIAL TRUST*" (Exhibit 1) (**PERSHING**, now **B.N.Y.**; **UBS AG** and **CORRESPONDENT SERVICES CORPORATION**, now **F.M.R.**; as well as the trust's check clearing firms: **JP MORGAN (JPSEC)** and **B.N.Y.**) and affiliated financial institutions (including tranche trusts) to the community of *Peter Cooper Village/Stuyvesant Town* ("**PCV/ST**") (namely **WACHOVIA**, **TRUST2007-C30 (BONDHOLDERS)** and **B.O.A.**), as well as owners, managers and legal representatives of PCV/ST (namely **TISHMAN**, **BLACKROCK**, **CWCAM**, **BORAH**, **GOLDSTEIN**, **ALTSCHULER**, **NAHINS & GOIDEL**, **COMPASSROCK**, **P.S.H.** (and **P.S.H.'s** subsidiaries and affiliations, **PSW**, **PCV/ST OWNER** and **G.G.P.A.M. (TRUST2006-C1)**, **CWCAM** (subsidiary of **W.D.C.**) and **BLACKSTONE GRP.**) and others. FRAP 26.1.

The likelihood of antitrust offenses, as claimed, not only affect the general world economy, but also to citizens within dwellings run by financial institutions (whom have a "strong-arm" of monopolized power and federally established rights to inspect financial documents of tenants), where the threat of domestic invasion is at the doorstep of an Anti-Jacksonian enslavement; a modern day Calvinist movement upon those without the financial means to enjoy the liberties for which this great and powerful Country was founded.




**COMPLAINT**
*Southern District Court of the State of New York*
*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 16

FITTED SOLE PRODUCTIONS.    FITTED FABLES *A PUBLISHING COMPANY*

## III. STATEMENT OF CLAIM (continued)
## FACTS (restated):

I, STEVEN TALBERT WILLIAMS, CESTUI QUÉ ("PLAINTIFF," Pro Sé), in reference to the accompanying "*Motion For In Forma Pauperis*," present this brief as a claimed factual testimony of relevant events surrounding an alleged conspired antitrust, economic espionage scheme, via the corruption of enterprises, within and without government agencies of the **UNITED STATES** (namely sanctions sought against the **I.R.S.** and **S.S.A.**  See Exhibit 7); violating PLAINTIFFs' constitutional rights as the claimed "sole beneficiary" to the LINDA WILLIAMS BENEFICIAL TRUST (Exhibit 1) and as the beneficiary to a rent stabilized  real property within the estate of **LINDA PAULA STREGER WILLIAMS** ("**DECEDENT**," PLAINTIFFs' mother) (enforced under: U.S. Const. Am. 1, 4, 5, 6, 7, 8, 10, 11 (sanctions against **I.R.S.**, **S.S.A.** and **MR. AVROM R. VANN**), 13 §1, 14 §1, 14 §4, 16, 26 §1; Fed. R. Civ. P. 8(d)(2), (e), 9(b), (d), (e), 11(c), 26, 27, 37, 65; 18 U.S.C. §§2, 241, 286, 371; 28 U.S.C. §762, including various antitrust statutes such as within the *Clayton Act* (15 U.S.C. §§1-11), *Sherman Antitrust Act* (15 U.S.C. §§12-38), *Donnelly Act*, *Sarbanes Oxley Act of 2002*, *Security Act of 1933*, *Securities & Exchange Act of 1934* (§§10(b), 13), *Dodd-Frank Wall Street Reform & Consumer Protection Act of 2010*, *Investment Company Act*, *Fair Credit Reporting Act* (15 U.S.C. §§1681, et seq.), and *Trust Indenture Act of 1939* (15 U.S.C. §§ 77aaa, et. seq.).

As claimed, the conspired scheme was perpetrated so as to deter PLAINTIFF from:

(i) the acquisition of securitized beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST, confirmed in an *Federal Deposit Insurance Corporation* ("F.D.I.C.") email as having "*a certificate of ownership of an investment*... [from] *1987 with Microsoft Corporation*" [emphasis added] (App. A & Ex. 10; a financial trade secret. 5 U.S.C. §§552(b)(4), 552a), containing an *Individual Retirement Account* ("IRA," Exhibit 2) during the final years of **DECEDENTs'** life;

(ii) legal malpractice claims against **DECEDENTs'** legal representative, **MR. AVROM R. VANN**, who allegedly denied PLAINTIFF the "*irrevocable*" (Ex. 1, *Id.* at 1.3) beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST upon reaching the custodial age of his "*Thirtieth birthday*" (Ex. 3, *Id.* at 3.2 of **DECEDENTs'** Last Will & Testament, Exhibit 3); and

(iii) retaining beneficial rights to rent stabilized succession (9 NYCRR §2522.8) for **DECEDENTs'** dwelling unit within *Peter Cooper Village/Stuyvesant Town* ("PCV/ST"), through a claimed unconstitutional eviction (form 449 E. 14th St., Apt. 7d, "Building 449," despite having a renter's insurance policy from *State Farm Life Insur. Co.*, "*State Farm Fire & Casualty Co.*" Exhibit 4), where the claimed illegal fiduciary acquisition of **DECEDENTs'** IRA (by the controlling entities of **PERSHING** (B.N.Y.), **UBS**, and **FMR** (from **CORRESPONDENT SERVICES CORPORATION**); formed from *Kirlin Securities, Inc.* of Syosset, NY (Exhibit 5), transferred to **PERSHING** and UBS/PaineWebber (Ex. 2.4, 2.5), and split into the above controlling entities) allegedly incurred the claimed illegal advertising and trading of securitized assets within the world financial markets, whereby, upon PLAINTIFFs' investigation, through alleged "dark-pool" trading, the *Assets Under Management* ("AUM") of **UBS** were utilized within the *Initial Public offering* ("IPO," Exhibit 6) of P.S.H. to "bail out" the defaulted senior mortgage of PCV/ST's TRUST2007-C30 (and tranches) in the year 2008 (via a *Deed-In-Lieu*, "DIL," of foreclosure, U.C.C. Art. 9, auction; the final years of the U.S. housing crisis of 2000-2010), allegedly leading to a prior attempt to evict **DECEDENT**, as such attempt was in coordination with an alternate claimed scheme to evict rent stabilized and elderly tenants (see FACT SHEET #36, Appendix B) in order to maliciously raise rental prices to market-rate value, thereby eliminating the owners need for tax exempt benefits and, further, convert the PCV/ST community into co-op's or condominiums.

The claimed corruption of enterprises allegedly occurred after the alleged trial of Dizengoff (*ST OWNER, LP v. DIZENGOFF, ET AL.*, No. 08113861), where owners of PCV/ST performed financial background checks of all tenants, thereafter (after the claimed unconstitutional eviction),

*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    17



PLAINTIFF is claims he experienced numerous unconstitutional acts in aid of subversion within impoverishment, connected to the bondholders of PCV/ST's **TRUST2007-C30**.    See *BELL ATLANTIC CORP. v. TWOMBLY* ("Matter of Twombly"), 550 U.S. 544, 555, 556, 570, 679 (2007), 127 S. Ct. 1955, 1964-67, 167 L. Ed. 2d 929, 2007 U.S. LEXIS 5901, "*only a* [com]*plaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.*" See also *CRYER v. COMMISSIONER OF REVENUE SERVICES*, Dock. No. 8118-09 (U.S. T.C., 2013):

> "[t]*he presence or absence of fraud is never presumed but is a question of fact that must be established by affirmative evidence. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir.1978); Beaver v. Commissioner, 55 T.C. 85, 92 (1970)[,... as such] may also prove fraudulent intent by means of circumstantial evidence where direct evidence is unavailable. See Stone v. Commissioner, 56 T.C. 213, 223-224(1971); Otsuki v. Commissioner, 53 T.C. 96, 105 106 (1969)[.]*" [emphasis added]

See also *DELGADO v. NEW YORK CITY DEPARTMENT OF CORRECTION* ("Matter of Delgado"), 797 F.Supp. 327, 23 N.Y.D. 4th Ed. 626 (S.D.N.Y. 1992), "[c]*ourt has jurisdiction to... avoid procedural abuses injurious to any party.*" See also a *Spiegel & McDiarmid, LLP* publication,[1] entitled "*Twombly's New 'Plausibility' Standard for Complaints*[:] *A New Special Pleading Rule for Antitrust or Complex Case Plaintiffs, or for All Plaintiffs?*" ("Twombly's 'Plausibility' Standard for Complaints," by Mr. Tillman L. Lay), "*Twombly arose out of a class action Sherman Act complaint alleging a conspiracy in restraint of trade*[.]" [highlighting and emphasis added]  See also Matter of Twombly:

> "*parallel conduct is... much like a naked assertion of conspiracy in a* [15 U.S.C. ]*§1 complaint...*
> "[T]*he complaint must contain...* [']*a reasonable expectation that discovery will reveal evidence of an illegal agreement*[' ('*Id. at 1965*'),]*... especially so in light of the potentially enormous expense of discovery in such a large antitrust case, which would imbue even a largely groundless §1 claim with... 'in terrorem...settlement value*[' ('*Id. at 1966*')."] [highlighting and emphasis added]

See also a *NYS Bar Assoc.* publication,[2] entitled "*WHISTLEBLOWER CLAIMS UNDER THE DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT: THE NEW LANDSCAPE*" (by Jill L. Rosenberg and Renée B. Phillips):

> "*In Egan v. TradingScreen, Inc.,*[' *No. 10 Civ. 8202(LBS), 2011 WL 1672066(S.D.N.Y. May 4, 2011),*'] *Judge Sand interpreted the anti-retaliation provisions of section 21F as covering not only whistleblowers who provide information to the SEC, but also individuals whose disclosures are 'required or protected' under the Sarbanes-Oxley Act ('SOX'), the Securities Exchange Act, 18 U.S.C. § 1513(e), or any other law,... subject to the SEC's jurisdiction.*"

See also Matter of Twombly:

> "*only a* [com]*plaint that states a plausible claim for relief survives a motion to dismiss*[' (*Id.* at 556)]
> "*parallel conduct is... much like a naked assertion of conspiracy in a* [15 U.S.C. ]*§1 complaint*[,... where a] *complaint must contain...* [']*a reasonable expectation that discovery will reveal evidence of an illegal agreement*[' ('*Id. at 1965*'),]*... especially so in light of the potentially enormous expense of discovery in such a large antitrust case, which would imbue even a largely groundless §1 claim with... 'in terrorem... settlement value*[' ('*Id. at 1966*')."] [highlighting and emphasis added]

See also *ASHCROFT v. IQBAL*, 556 U.S. 662 ("Matter of Iqbal"), referencing Matter of Twombly, where the common law matter was:

> "*interpreted and applied*[ to] *Rule 8,...govern*[ing] *the pleading standard 'in all civil actions,' Rule 1, the case applies to antitrust and discrimination suits alike, see 550 U. S., at 555-556, and n. 14 P. 20*[.]" [highlighting and emphasis added]

---

FOOTNOTE 1: Source: "https:// www.spiegelmcd.com/files/tll_imla_twombly.pdf."
FOOTNOTE 2: Source: " https://www.nysba.org/Sections/Labor_and_Employment/Labor_PDFs/ LaborMeetingsAssets/Whistleblower_Claims_Under_Dodd_Frank.html."



See also Matter of Iqbal, referencing Matter of Twombly (supra, at 553-554), "*the Court found it necessary first to discuss the antitrust principles implicated by the complaint*." [highlighting and emphasis added]  See also an *American Bankruptcy Institute Journal* internet publication,[3] entitled "*Supreme Court Announces New 'Plausibility' Standard for Rule 12(b)(6) Dismissal*[:] *Not Just Any 'Conceivable' Set of Facts Will Do*" (by Mr. Patrick A. Jackson, Contributing Editor, "Vol. XXVI, No. 6, July/August 2007):

> "*the Court held that the complaint  must contain…* [']*a reasonable expectation that discovery will reveal evidence of an illegal agreement*[*]* ('Id. at 1965'),]… especially so as in light of the potentially enormous expense of discovery in such a large antitrust case*[.]"

See also a *Michigan Law Review* publication,[4] entitled "*Plus Factors and Agreement in Antitrust Law*" (by Mr. William E. Kovacic, et al., "*110 MICH. L. REV. 393 (2011)*"):

> "*In antitrust decisions about allegations of collusive pricing,… describe*[d] *as 'conscious parallelism*[,]*'… courts permit the fact of agreement to be established by circumstantial evidence*[ ('*In In re Text Messaging Antitrust Litigation, No. 10-8037, 2010 U.S. App. LEXIS 26299, at *16 (7th Cir. Dec. 29, 2010), Judge Richard Posner observed, 'Direct evidence of conspiracy is not a sine qua non …. Circumstantial evidence can establish an antitrust conspiracy.*" [highlighting and emphasis added])]" [highlighting and emphasis added]

See also a *Federation of Defense & Corporate Counsel* publication, entitled "*EXPANSION OF PRE SUIT DISCOVERY IN FEDERAL COURTS: PREPARING FOR THE BRAVE NEW WORLD*" ("*Aldous Huxley, Brave New World (First Perennial Classics ed., Harper Collins 1998 (1932)*," by Sidney J. Hardy and Heather M. Nagel, "*Winter Meeting*" 2011), citing Matter of Conley:

> "*Rule 27 was first implemented in 1938… [and] created to perpetuate evidence*[,]*… to preserve evidence*[,]*… if the court'is satisfied that perpetuating the testimony may prevent a failure or delay of justice…' Fed. R. Civ. P. 27(a)(3)…*

> "*Congress realized the discrepancy and amended Rule 27 in 1946*[,]*… allow*[ing] *individuals to petition the court to obtain pre-suit discovery to perpetuate testimony… [and] preserve evidence under Rules 34 and 35 by inspecting tangible evidence…*

> "***The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim***[;]*… a complaint only needs to provide the grounds upon which it rests.*" [highlighting and emphasis added]

See also *ERICKSON v. PARDUS*, 127 S. Ct. 2197 (2007)).  See also Twombly's "Plausibility" Standard for Complaints:

> "***Twombly arose out of a class action Sherman Act complaint alleging a conspiracy in restraint of trade***[ ('*15 U.S.C. § 1 (2000 & Supp. V 2006)*')]…

> "*The Court began with a recitation of prior antitrust precedent **holding that** parallel behavior **by competitors**, even conscious parallelism, **was**, without more, insufficient evidence to infer an unlawful agreement **among those competitors**[ (Matter of Twombly '127 S. Ct. at 1964 (citing and quoting Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1954)*[.]*')]…*

> "*More fact-specific allegations about the agreement will likely be required. **Because**… the facts concerning any such agreement would, by their nature, be 'largely in the hands of the alleged conspirators'…*

> "*Indeed, the Court's holding on the first Twombly conspiracy theory **could be viewed as***

FOOTNOTE 3: Source: "http://www.youngconaway.com/files/Publication/7bb965e3.../practice%207-07.pdf."
   Comment : See also an April 2008 Young Lawyers Journal publication, entitled "A New Federal Pleading Standard?," by Daniel Patrick Jackson.
   Source: " https://www.vedderprice.com/-/media/files/vedder-thinking/publications/2008/04/a-new-federal-pleading/files/00d1acb44e0a4e8bb7006f9b4fe44421_document/fileattachment/00d1acb44e0a4e8bb7006f9b4fe 44421_document.pdf."
FOOTNOTE 4: Source: "https://repository.law.umich.edu/cgi/viewcontent.cgi?article=1118&context=mlr."



*COMPLAINT*
*Southern District Court of the State of New York*

FITTED SOLE
PRODUCTIONS

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*

19

*little more than a... 'parallelism plus' requirement for antitrust conspiracy claims...*

"*Erickson held that a pro se prisoner's conclusory allegation... was sufficient to satisfy the new 'plausibility' stan*[dard ('*Id. at 2200*).] *The Court cited both Twombly and the liberal pleading standards set forth by Rule 8(a)(2)' to support this result* ('*Id.*').]... *Perhaps more troubling, especially for municipal attorneys, is the cynical possibility that the new Twombly standard is intended primarily to protect large corporations from discovery burdens in plaintiff class actions, as opposed to governmental defendants facing civil rights claims...*

"*Indeed, the standard is all but an engraved invitation to judicial activism– that courts can decide the 'plausibility' of a complaint at the outset, based on little more than the judge's subjective assessment of its likely merit, as supplemented by the arguments of counsel, and unhinged from any factual record at all...*

"*One would expect (or at least hope) that torts, contract breaches, and civil violations... are the exception rather than the rule in corporate behavior; therefore,... [A]ny plaintiff should draft its complaint with Twombly in mind.*" [highlighting and emphasis added]

See also a *Federal Court Law Review* publication,[5] entitled "*Tightening Twiqbal: Why Plausibility Must Be Confined to the Complaint*" ("*9 Fed. Ct. L. Rev. 79 (Spring 2016)*," by Mr. Justin Rand), citing Matter of Twombly:

*The Court of Appeals for the Second Circuit... [found] the District Court's requirement of 'plus factors' for Sherman Antitrust Act claims to be reversible error* ('[s]*ee Twombly v. Bell Atl. Corp., 425 F.3d 99, 114 (2005) ('But plus factors are not required to be pleaded to permit an antitrust claim based on parallel conduct to survive dismissal.')*)]... *But the Supreme Court reversed the judgment of the Second Circuit in an opinion that is both infamous and controversial*[ ('*Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)*')]...

"*Justice Souter laid the seeds for a new era of pleading practices. Stating a claim under section 1, he wrote, would require a complaint 'with enough factual matter . . . to suggest that an agreement was made*[' ('*Id. at 556*).] [highlighting and emphasis added]

See also a *Fordham Law Review* ("*60 Fordham L. Rev. 257 (1991)*") publication,[6] entitled "*Sanctions, Symmetry, and Safe Harbors: Limiting Misapplication of Rule 11 by Harmonizing It with Pre-Verdict Dismissal Devices*" (by Mr. Jeffrey W. Stempel, 1991):

"[I]*n Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*[ '*475 U.S. 574 (1986),*'] <u>*the Court held that summary judgment could be granted in a complex antitrust case*</u>[.]" [highlighting and emphasis added]

See also *THAI LAO LIGNITE (THAILAND) CO., LTD., ETAL. v. GOVERNMENT OF THE LAO PEOPLE'S* ("Matter of Thai Lao"), No. 10 Civ. 5256 (KMW):

"*A court may also impose sanctions on a party, its counsel, or both, for other misconduct in discovery under its inherent power to manage its own affairs. DLC Mgmt Corp. v. Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998)...*

"['*See Cine Forty-Second Street Theatre Corp., 602 F.2d at 1066 & n.8 (upholding severe Rule 37 sanctions upon a showing of gross negligence only)*]...

"['*Pursuant to its inherent power, a court may impose a wide range of sanctions against a party or its counsel for any abusive litigation practice undertaken in bad faith. See, e.g., Penthouse Int'l Ltd. v. Playboy Enters., 663 F.2d 371, 386 (2d Cir. 1981).*']" [highlighting and emphasis added]

See also Matter of Iqbal (at 678), citing Matter of Twombly, "[ ]*a court must proceed 'on the assumption that all the allegations in the complaint are true (even if doubtful in fact)*[.']"

FOOTNOTE 5: Source: "http://www.fclr.org/fclr/articles/pdf/RandVol9Iss2FinalPublication.pdf."
FOOTNOTE 6: Source: "http://ir.lawnet.fordham.edu/flr/vol60/iss2/2."



*COMPLAINT*
*Southern District Court of the State of New York*



FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*   20

## III.A.    PRAYER FOR RELIEF
### III.A.1.    CLAIMS AGAINST THE UNITED STATES

1. Relief is sought as is through injunction (see *WINTER v. NATURAL RES. DEF. COUNCIL, INC.*, 555 U.S. 7122 (2008), "*an extraordinary remedy, that may only be awarded upon a clear showing that the plaintiff is entitled*[.]"), under the U.S. Constitution and upon waiver of Official and State Immunity (U.S. Const. Am. 11; 12 CFR § 747.805; Fed. R. App. P. 15, 35; 5 U.S.C. Ch. 7); 28 U.S.C. §1331. See *TRUE THE VOTE, INC. v. I.R.S., ET AL.*, 13cv00734(RBW)(D.C. Dist. Ct.), "*United States is immune from suit except to the extent that Congress has waived the immunity by specific statute. Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981)*"), where, upon a plea of nolo contendere (Fed. R. Crim. P. 11(a)(1), (a)(3)), and as an alternative to severe repercussions, defendants are provided the option of agreeing to a settlement for performing community service and partaking in a financial investment opportunity (a semi-safe harbor agreement, under the economic benefit doctrine, enforced under: *Alternative Dispute Resolution Act of 1998*, 28 U.S.C. 651-658), eliminating any damage to their careers as federal agents.  See **PART III.G.** for PLAINTIFFs' proposed settlement.  See also *HUDSON v. UNITED STATES*, 272 U.S. 451, "[i]*t is the contention of petitioners that the plea in effect is conditioned upon the imposition of a lighter penalty*[.]" See also *ALDRICH v. YOUNG*, No. 13-10466(DPW).  See also §9.2.B of the Fed. Prac. Man.:

   "*plaintiffs may have suggestions for relief that* [are] *more practical than what a court is willing to order*‼ *a deferential court may be reluctant to enter necessary orders over defendants' objection... [A] negotiated settlement protects them from the uncertainty inherent in a judicially crafted remedial order.*"

2. For claims against **SECRETARY STEVEN TERNER MNUCHIN**, of the **UNITED STATES DEPT. OF TREAS.**, in his official capacity over **COMMISSIONER CHARLES P. RETTIG**, **JOHN DOE (1) (DAVID MOESER)** and **JOHN DOE (2) (FRANK BARLO)** of the I.R.S. and **COMMISSIONER ROYCE B. MIN**, **N.Y.S. COMMISSIONER RAYMOND S. EGAN** and **JANE DOE (1) (MS. PARKER)** of the S.S.A. (under Official Immunity; U.S. Const. Am. 11; 26 U.S.C. §§7801(a)(1), 7803(a)(2)(A); 42 U.S.C. 902(a)(7)), compensatory and punitive damages are sought in an AMOUNT no less than TEN (10) BILLION DOLLARS; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1 (free speech/offense advocacy/establishment), 4 (search/seizure), 5 (due process), 8 (cruel and unusual punishment/excessive fine), 10 (recordkeeping), and 14 §1 (privileges and immunities/due process/equal protection), and relative to claims of:

   a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

   b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative **qui tam proceedings** (18 U.S.C. §§1345, 2413, 2415; 2521; 28 U.S.C. §2201; 42 U.S.C. §233; 26 C.F.R. §301.7401-1(a); as separate trials under Fed. R. Civ. P. 42(b), including Fed. R. Crim. P. 5.1(28 U.S.C. §515), *Antitrust Civil Process Act of 1962* (28 C.F.R. Part 49), 15 U.S.C. Ch. 34, the *Victim Assistance Program* (under 28 C.F.R. Part 94, Subpart B and 42 U.S.C. §10603c) and the *Administrative Procedure Act of 1946*; further enforced under: 5 C.F.R. Ch. 1, 3 (Subch. A), 4, 8, 16, 98 and §§735.103, 2600.101, 2641.103 (including opinions from local agencies of the State of New York, such as CPLR §808(2) and LEG §80(7)(j); and ethical violations of EXC §94; 19 NYCRR Ch. 20 (highlighting 19 NYCRR §941.1), §§3.3, 17.8, 17.9 of the *New York State Rules of the Board of Regents*, EDN §6510 and the *Public Integrity Reform Act of 2011*), 2641.703, 2638.603; 12 C.F.R. Part

 

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 21 of 72    *COMPLAINT*
*Southern District Court of the State of New York*

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    21

747, Part 790; 16 C.F.R. Ch. 1 (15 U.S.C. §58); 28 C.F.R. Part 0, Part 94, Ch. 1, 6, 7, 9, 11 and §§45.11(c), 45.12 (28 U.S.C. §§1, 509B, 530B), 50.3, 50.6, 77.1(a), 77.3, 331, 335; 42 C.F.R. Part 1008 (including 39 C.F.R. Part 230); 45 C.F.R. Ch. 8; 5 U.S.C. §§554, 556, 559, 601; *Judicial Improvements and Access to Justice Act* (P. L. 100-702, §§104(a), 202; *Judicial Improvements Act of 1990*; 47 U.S.C. §229; *Intelligence Reform & Terrorism Prevention Act of 2004*; and other applicable provisions of law. See *Civil Justice Reform Act of 1990* P.L. 101-650, §6, Dec. 1, 1990, 104 Stat 5089, "*increasing volume and complexity of civil and criminal cases implies increasingly heavy workload burdens*[.]" (18 U.S.C. §1961(1)(A), (4) PEN §460.20(1));

   c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"); associated to an sought after class action suit for "Domestic Housing Terrorism" (a new sought after provision of law to amend civil rights statutes, specifically 42 U.S.C. §2000a), where such arises from claims against the financial institutions of the LINDA WILLIAMS BENEFICIAL TRUST illegally reinvesting within the PCV/ST trust, TRUST2007-C30, in a claimed conspired scheme to eliminate rent stabilized and elderly tenants and their tax exemption status to raise dwelling units to market-rate prices; 28 U.S.C. §1330, Fed. R. Civ. P. 23; 28 U.S.C. §1453. See *Class Action Fairness Act 2005*. See also a forthcoming "*Petition For Class Action Remedy: Deprived Economic Status (42 U.S.C. §§1981, 1985(3), 2000a)*" ("D.E.S. CLASS ACTION"); and

   d. additional claims against the I.R.S. and S.S.A. for tax fraud, or evasion, under U.S. Const. Am. 1, 4, 5, 10, 14 1 and 16, related to dual taxation of the *US/CAN Totalization Agreement* of the *Canada-U.S. Treaty* and non-transference of payments for PLAINTIFFs' contributions to Canada's social insurance of Québec to his individual U.S. taxes.

3. For claims against COMMISSIONER CHARLES P. RETTIG, of the UNITED STATES DEPT. I.R.S., in his official capacity over JOHN DOE (1) (DAVID MOESER), JOHN DOE (2) (FRANK BARLO) and the I.R.S.'s refund division (under Official Immunity; U.S. Const. Am. 11), compensatory and punitive damages are sought in an AMOUNT no less than ONE-HUNDRED (100) MILLION DOLLARS; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1, 16, and relative to claims of:

   a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

   b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative qui tam proceedings, as separate trials (referenced above. *Id.* ¶2(b));

   c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"). See D.E.S. CLASS ACTION; and

   d. tax fraud claims (under U.S. Const. Am. 16 and 26 USC Ch. 75), for claims involving the unconstitutional taking (U.S. Const. Am. 5) of PLAINTIFFs' 2010 tax refunds (the highest grossing year of his life) as an excessive fine (U.S. Const. Am. 8), after allegedly providing the IRS a letter showing good cause for filing late, as such was after the claimed illegal eviction from PCV/ST, allegedly seizing all W-2 tax documents from DECEDENTS' dwelling unit, which allegedly took nearly a year for PLAINTIFF to replace (prior to filing late) while living in impoverishment.

4. For claims against JOHN DOE (1) and JOHN DOE (2), of the UNITED STATES DEPT. I.R.S., in his individual capacity (under Official Immunity; U.S. Const. Am. 11), compensatory and punitive

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 22 of 72    *COMPLAINT*
Southern District Court of the State of New York

**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    22



damages are sought in an AMOUNT no less than THREE-HUNDRED (300) THOUSAND DOLLARS each; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1, 16 (as well as other provisions), and relative to claims of:

a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative qui tam proceedings, as separate trials (referenced above. *Id.* ¶2(b));

c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"). See D.E.S. CLASS ACTION; and

d. 18 U.S.C. §1001(a) claims, which allegedly seized a copy of the testamentary instrument to the LINDA WILLIAMS BENEFICIAL TRUST, a copy of PLAINTIFFs' driver's license and a copy of **DECEDENTs'** death certificate without providing the evidence of tax filing for the trust.

5. For claims against **COMMISSIONER ROYCE B. MIN**, of the **UNITED STATES DEPT. S.S.A.**, in his official capacity over **N.Y.S. COMMISSIONER RAYMOND S. EGAN** and **JANE DOE (1) (MS. PARKER)** (under Official and State Immunity; U.S. Const. Am. 11), compensatory and punitive damages are sought in an AMOUNT no less than ONE-HUNDRED (100) MILLION DOLLARS; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1, and relative to claims of:

a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative qui tam proceedings, as separate trials (referenced above. *Id.* ¶2(b)); and

c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"). See D.E.S. CLASS ACTION.

6. For claims against **N.Y.S. COMMISSIONER RAYMOND S. EGAN**, of the **UNITED STATES DEPT. S.S.A.**, in his official capacity over **JANE DOE (1) (MS. PARKER)** and the S.S.A.'s refund division (under State Immunity; U.S. Const. Am. 11), compensatory and punitive damages are sought in an AMOUNT no less than ONE-HUNDRED (100) MILLION DOLLARS; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1, and relative to claims of:

a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative qui tam proceedings, as separate trials (referenced above. *Id.* ¶2(b));

c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"). See D.E.S. CLASS ACTION; and

 

Case 1:19-cv-11547-CM   Document 2   Filed 12/13/19   Page 23 of 72

*COMPLAINT*
*Southern District Court of the State of New York*

FITTED SOLE
PRODUCTIONS

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.
(Docket - TBD) (Dated December 13, 2019)* 23

d. safeguarding of information (42 U.S.C. §1307(a), (b)) against consumer fraud (under *Dodd-Frank Wall Street Reform and Consumer Protection Act*, *Consumer Financial Protection Act of 2010* and *Right to Financial Privacy Act of 1978*), when, as claimed, **JANE DOE (1)** illegally ordered the copying of PLAINTIFFs' stamped SSA-1694 form, containing the LINDA WILLIAMS BENEFICIAL TRUST's EIN, after allegedly denying its filing.

7. For claims against **JANE DOE (1) (MS. PARKER)**, of the **NEW YORK STATE DEPT. S.S.A.**, in his official capacity over **JANE DOE (1) (MS. PARKER)** and the S.S.A.'s refund division (under State Immunity; U.S. Const. Am. 11), compensatory and punitive damages are sought in an AMOUNT no less than THREE-HUNDRED (300) THOUSAND DOLLARS; enforced under the *Administrative Procedure Act of 1946*, *Ethics In Government Act of 1978* and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1, and relative to claims of:

a. aiding and abetting, as an accessory (18 U.S.C. §§2, 3, 241, 371), of antitrust (as a corporate official for various claims. 15 U.S.C. §2), racketeering (18 U.S.C. §1961, et seq.), economic espionage (18 U.S.C. §1831, et seq.), corruption of enterprises (PEN Art. 460; 18 U.S.C. §§1962(c), (d), 1964(4)) and subversion claims (under U.S. Const. Am. 13 §1);

b. treasonous and rebellious strike against the U.S. Government (under U.S. Const. Art. 3 §3, U.S. Const. Am. 14 §4 and 5 U.S.C. §7311(1), (3), (4)); enforced through administrative qui tam proceedings, as separate trials (referenced above. *Id.* ¶2(b));

c. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*"). See D.E.S. CLASS ACTION; and

d. falsifying information (18 U.S.C. §1001(a), (c)(1), 1015(d) ("*knowingly makes any false… attestation*"); 42 U.S.C. §1307(a), (b)), as a conspired retaliatory and discriminatory act (ADC 14-151(e); 18 U.S.C. §§241, 371, 373, 1349; 42 U.S.C. §§1983, 1987; 44 U.S.C. §§3314, 3507(e)(3)(B)) of malicious deterrence (42 U.S.C. §1320a-8b), when, as claimed, **JANE DOE (1)** illegally ordered the copying of PLAINTIFFs' stamped SSA-1694 form (42 U.S.C. §904(d); 44 U.S.C. §§3301(a)(2), 3510(B)(2)), containing the LINDA WILLIAMS BENEFICIAL TRUST's EIN (5 U.S.C. §§552(b)(7), (i)(I), 5 U.S.C §552a; 18 U.S.C. §§1015(d), 1905; 26 U.S.C. §7213(a)(1); 20 C.F.R. Ch. 3 Part 401, §422.112; 26 C.F.R. §§31.6011(b)-1(a)(iii), 301.6109-1(b)(1), 301.7701-12), 7206(1) to (2), 7207, 7209, 7212(a), 7214(a)(1), (a)(3) to (a)(7), 7271), after allegedly denying its filing; thereby threatening the security of assets within the trust, PLAINTIFFs' life and nation (5 U.S.C. §552a(l)(1) ("*may affect substantial economies*"); 44 U.S.C. §§3506(b)(1)(C), (h)(2), 3512; 49 U.S.C. §30305(b)(9)). See 44 U.S.C. §3507(j)(1)(B)(iii), "*use*[d in opposition] *of normal clearance procedures*[,…having the] *reasonably like*[lihood] *to prevent or disrupt the collection of*[ personal and confidential financial]" See also 50 U.S.C. §3003(5)(b)(i), "*intelligence… gathered within… the* [UNITED STATES,… which may] *threat*[en]… *the United States, its people, property, or interests*[.]" See also *ROHRBOUGH v. HARRIS, DISTRICT OF COLORADO*, D.C. No. 1:00-cv-808(LTB)(PAC) ("Matter of Harris"), "*records of the United States Government may not be alienated.*"

### III.A.2. CLAIMS AGAINST MR. AVROM R. VANN OF AVROM R. VANN, PC

8. For claims against **MR. AVROM R. VANN**, of **AVROM R. VANN, PC**, <u>sanctions are sought</u> (under State Immunity of U.S. Const. Am. 11, as a third-party contract entity of the U.S. Department of Justice, Judicial Conference and *New York State Bar Association*. Fed. R. Civ. P. 11(c), 37), where PLAINTIFF seeks **MR. VANN's** <u>disbarment</u> (*IN RE ADDAMS*, 579 A.2d 190 (D.C. 1990) (en banc)) for claims (under: U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1; DR §9-102; E.P.T.L. §§11-1.1(b)(10), 11-1.8(a), 11-2.1(g), 11-2.3 (*Prudent Investor Act*), Art. 11-A (namely §§11-A-4.2, 11-A-4.3, 11-A-4.7, 11-A-4.14, 11-A Part 5), 11-4.7(c) & (d), 13 Part 1) of





allegedly depriving PLAINTIFF from acquiring the issuance of assets from the LINDA WILLIAMS BENEFICIAL TRUST, upon reaching his custodial age of "*thir*[*t*]*y*" (Ex. 3, *Id.* at 3.2), for a ten month period, prior to releasing the testamentary instrument of the trust to **DECEDENTs'** husband (evidenced within **PART III.D.4**, *Id.* at ¶81). See E.P.T.L. 7-2.2, "[*w*]*hen the purpose for which* [the] *trust is created ceases, the estate of the trustee also ceases.*" See also *In re LUNA*, F.3d 1192, 40 F.P.D. 4ᵗʰ Ed. 23 (C.A. Fed (Dist.Col.) 2001, "'[*c*]*hose of action,' which includes the right to bring an action to recover a debt, money, or thing, is a future interest, and, like all property interests, it is transferable. Restatement (First) of Property § 163 comment.*"

    a. ADDITIONAL RELIEF IS SOUGHT for
        i. Civil and Criminal forfeiture (Fed. R. Crim. P.32.2; Fed. R. Civ. P. Rule G) for all financial assets, property, in rem, and ownership (BSC Art. 11) of AVROM R. VANN, PC;
        ii. AMOUNTS no less than FIVE-HUNDRED (500) MILLION DOLLARS; and
        iii. any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST, including those enforced under the *Clayton Act* and *Sherman Antitrust Act* (highlighting 15 U.S.C. §2; 28 U.S.C. §3002(15)(A), "*federal corporation*").
    b. As, an alternative to the satisfying of relief amounts stated within subdivisions (a)(i) and (a)(ii) of this paragraph, **MR. VANN** is offered a settlement option for an investment opportunity (see **PART III.E** for PLAINTIFFs' proposed settlement).

### III.A.3.   CLAIMS AGAINST THE FINANCIAL INSTITUTIONS OF THE *LINDA WILLIAMS BENEFICIAL TRUST*

9. For claims against PERSHING, LLC (B.N.Y.), UBS AG and FMR, LLC, each in AMOUNTS no less than ONE (1) TRILLION DOLLARS and any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST.
    a. Furthermore, AMOUNTS in no less than ONE (1) TRILLION DOLLARS are sought for any enjoining financial institution which may become known, upon investigation, to have illegally reinvested the assets of the LINDA WILLIAMS BENEFICIAL TRUST, in order to advance any scheme in connection to PLAINTIFFs' subversion claim.

### III.A.4.   CLAIMS AGAINST BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL & THE FINANCIAL INSTITUTIONS OF THE WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30

10. For claims against WACHOVIA BANK, N.A., PERSHING SQUARE HOLDINGS GROUP, LLC and CW CAPITAL ASSET MGMT., LLC (WALKER & DUNLOP CAPITAL, LLC), each in AMOUNTS no less than FIVE (5) TRILLION DOLLARS and any securitized amounts of the LINDA WILLIAMS BENEFICIAL TRUST.
    a. Furthermore, AMOUNTS in no less than ONE (1) TRILLION DOLLARS are sought for any enjoining financial institution which may become known, upon investigation, to have illegally reinvested the assets of the WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30, in order to advance any scheme in connection to PLAINTIFFs' subversion claim.

### III.B.   BACKGROUND
### III.B.1.   UNITED STATES ANTITRUST CLAIMS
### III.B.1.a.   ANTITRUST CLAIMS AGAINST THE INTERNAL REVENUE SERVICE

11. As asserted within the filings of *WILLIAMS v. UNITED STATES, ET AL.*, 15-cv-5114(LAP)(SDNY), 16-189cv(ALK)(DJ)(BDP), 137 U.S. 1611(2017)(Index No. 16M111)(U.S. S.Ct., Mar. 15, 2017) and *WILLIAMS v. UNITED STATES, ET AL.*, 18-12064(LLS)(SDNY), <u>during the month of September, of the year 2013</u> (the exact date unknown, due to evidence of PLAINTIFFs' evidence allegedly stolen from his personal belongings; see DISCLAIMER #1), <u>while temporarily staying with PLAINTIFFs' friend, **MR. MICHAEL WHITNEY**</u> (located at 50 Granite St Brooklyn, N.Y. 11207), in anticipation of probate for **DECEDENTs'** estate within the

**Page 24**



**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY

SURROGATE COURT FOR THE COUNTY OF NEW YORK ("S.C.N.Y.") (attempting to compel production of a *copy* of DECEDENTs' *Last Will & Testament* from MR. AVROM R. VANN (AVROM R. VANN, PC; see Appendix C, File No. 2013-3538(SCNY)) and after having allegedly performed various personal investigations into the *Employer Identification Number* ("EIN") and IRA of the LINDA WILLIAMS BENEFICIAL TRUST through DECEDENTs' utilized financial institutions of U.B.S., PERSHING and F.M.R.), <u>PLAINTIFF</u> allegedly called the <u>I.R.S.</u> <u>seeking to obtain tax related documents of the LINDA WILLIAMS BENEFICIAL TRUST</u>. See Exhibit 7, PLAINTIFFs' notes from his phone conversations with I.R.S. AGENTS JOHN DOE (1) and JOHN DOE (2). See also DISCLAIMER #1. See also Exhibit 8, <u>a fax from MR.</u> <u>WHITNEY's fax machine</u> (tel. no. "[xxxxxx]*2587*" [emphasis added]) to BANK OF AMERICA's "*ENTERPRISE ESTATE UNIT*" (at fax no. "*(*[xxx]*)* [xxx]-*9046*"), which <u>provided for the</u> <u>registering of his father</u>, MR. WILLIS EUGENE WILLIAMS, JR. (DECEDENTs' husband) <u>as</u> <u>executor</u> of DECEDENTs' estate (Exhibit 9, the "*Estate of Linda P. Williams*") and himself as a beneficiary to the estate (related to a real property asset located at 40 Seneca Trail, Albrightsville, PA 18210) and account holders. See also "*MEMORANDUM OPINION*[7] of *CRYER v. COMMISSIONER OF REVENUE SERVICES* ("Matter of Cryer"), Docket No. 8118-09 (U.S. T.C., 2013), "*La. Rev. Stat. Ann.sec. 47:161A (2001),...* [']*items of gross income*\* \* \* *from whatever source received* \* \* \* *shall be included in the taxpayer's return and the amount of the tax shall be computed upon the entire income*[.]'"

   a. As highlighted, one of the personal investigations into the EIN and IRA of the LINDA WILLIAMS BENEFICIAL TRUST was upon an alleged visitation to PERSHING.
      i. During the months of October to November, of the year 2012 (the exact date unknown, due to evidence of PLAINTIFFs' *New Jersey Transit*, "NJT," train ticket being stolen from his personal belongings; see DISCLAIMER #1), PLAINTIFF recalls himself sitting at a Starbucks coffeehouse, nearby the NJT station of Hoboken, NJ, when they opened.
        (a) It began to thunderstorm, whereby PLAINTIFF trenched through the rain, with DECEDENTs' green umbrella, carrying three large bags across his upper body.
        (b) PLAINTIFF allegedly arrived at One Pershing Plaza (verified upon investigation) and sat in their vastly open lobby (filled with plants) awaiting a representative of PERSHING to greet him.
        (c) When being greeted by a senior broker (JOHN DOE (3)) and allegedly providing the older Caucasian gentleman the EIN to the LINDA WILLIAMS BENEFICIAL TRUST and proof of the testamentary instrument, PLAINTIFF was allegedly told the EIN was under PERSHING's ownership; which was when PLAINTIFF immediately sought the services of government agencies to acquire proof of the EIN's financial history.

12. When PLAINTIFF allegedly called the I.R.S., he spoke to I.R.S. AGENT JOHN DOE (2) (FRANK BARLO, ID No. "*0195670*," in "*Covington, Ky.*;" tel. no. "[xxx-xxx]-*4416*." Ex. 6, *Id.* at 6.2), who allegedly informed PLAINTIFF to fax in: (i) a faxed copy of "*1ˢᵗ pg of Trust*"; and (ii) "*notation of* [him] *as Beneficiary.*"
   a. As alleged, to the best PLAINTIFF knowledge, the conversation with was either abruptly cut off, prior to faxing in proof of the trust and personal identification of himself, or PLAINTIFF stated he would call back with the information.
   b. Despite PLAINTIFF not faxing in proof of the LINDA WILLIAMS BENEFICIAL TRUST, the conversation with JOHN DOE (2), having a possible notation of PLAINTIFFs' intent to acquire tax information concerning DECEDENT's tax filings; including her EIN number) and the I.R.S. having proof of MR. WHITNEY's telephone number; provides the appearance of neglect and motive for any deceptive scheme (under U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1; 18 U.S.C. §§2, 3, 241, 286, 371, 793, 2232; 42 U.S.C. §1986) to deter PLAINTIFF from

---

*FOOTNOTE 7: Source: "https://www.ustaxcourt.gov/UstcDockInq/DocumentViewer.aspx?IndexID=5975532."*

*COMPLAINT*
*Southern District Court of the State of New York*



**FITTED SOLE**
PRODUCTIONS

FITTED    FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 26

acquiring information relating to the trust.  See a *U.S. National Library of Medicine National Institutes of Health* internet publication,[8] entitled "*The limited use of inferred negligence in medical cases*"[9] ("Inferred Negligence," by Mr. Russell G. Thornton, JD) ("*Proc (Bayl Univ Med Cent). 2002 Apr; 15(2): 228-230*," No. "*PMC1276519*"), stating:

"*you may infer **negligence** by a party but are not compelled to do so if you find that 1) **the character of the occurrence is such that it would ordinarily not happen** in the absence of negligence and 2) **the instrumentality causing the occurrence was under the management and control of the party** at the time the negligence,...[*' (citing '*Texas Pattern Jury Charges, Malpractice, Premises and Products, PJC, Section 51.9 (2000)*']).

"*While res ipsa loquitur eliminates the need for expert testimony on the* [breached ]*standard of care*[,]... *it does not eliminate the claimant's need to establish causation (*'[s]*ee Roark v. Allen, 663 S.W.2d 804, 811 (Tex. 1982)*']). As discussed in previous articles, causation must be shown through expert testimony. Additionally, while the likelihood of other potential causes of the injury does not have to be completely ruled out, it must be* [']*so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door*[' (see '*Porterfield v. Briengar, 719 S.W.2d 558, 559 (Tex. 1986) (citing Mobil Chemical Co. v. Bell, 517 S.W.2d 245, 251 [Tex. 1974]*']). Thus,... *the claimant must still provide evidence that establishes the factual requirements already discussed, as well as proximate cause (*see '*Rayner v. John Buist Chester Hospital, 526 S.W.2d 637, 639 (Tex. Civ. App.– Waco 1975, writ ref'd nre*')]')." [highlighting and emphasis added]

13. After the telephone conversation with JOHN DOE (2) was over, PLAINTIFF immediately called the I.R.S. again.

   a. PLAINTIFF allegedly spoke to I.R.S. AGENT JOHN DOE (1) (DAVID MOESER, ID No. "*0196323*;" tel. no. "[xxx-xxx]-*4933*." Ex. 9, *Id.* at 1), claimed to have unconstitutionally acquired a faxed copy of (fax no. "[xxx-xxx]-*7139*." Ex. 9, *Id.* at 1): (i) "*proof of the Trust*" (the first page of the LINDA WILLIAMS BENEFICIAL TRUST's testamentary instrument); (ii) PLAINTIFFs' driver's license; and (iii) DECEDENT's death certificate.
   As claimed, after the above information was faxed, PLAINTIFF was allegedly told by JOHN DOE (1) there were no tax filings within the I.R.S.'s database; whereby PLAINTIFF specifically provided the agent verbal proof of the LINDA WILLIAMS BENEFICIAL TRUST's tax filings, consisting of: (i) a U.S. TREAS. "*SS-4*" form filing (Appendix D 12; No. "*CP 575 B*," dated "*07-07-2000*") and notice of an "*assigned* [ ] *EIN*" ("[xx]-[xxx]*8899*") (ii) an I.R.S. "*W-9*" form filing (Appendix E; dated "*7/24/00*," under the "*Business name*" of "*Linda & Eugene Williams Ttees*"); and (iii) a CORRESPONDENT SERVICES CORPORATION (now FMR, LLC) "*TRUST ERISA PLAN TRUSTEE CERTIFICATION*" form filing for the "*LINDA WILLIAMS BEN. TRUST*" (Exhibit 10; dated "*7/24/00*").  See the "*FINDINGS*" section of 5 U.S.C. §552 (P. L. 110-175, §2(1)(C), (6) Dec. 31, 2007, 121 Stat. 2524), citing "*Justice Black...* [in] *Barr v. Matteo* [ ]*360 U.S. 564 (1959)*[, stating:

"[']*effective functioning of a free government like ours depends...* [upon] *the widest possible understanding of the quality of government service rendered by... employees*['... and] *to ensure that the Government remains open and accessible to the American people*[,]... **based not upon the 'need to know' but upon the fundamental 'right to know.'**" [emphasis added]

See also ECF Rules Rule 8.3 ("[f]*iling Users are obligated to immediately bring to the attention of the court any unauthorized filings.*"), 21.4 ("[c]**aution should be exercised when filing documents that contain...** *a driver's license number*." [highlighting and emphasis added])

---

FOOTNOTE 8: Source: "*https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1276519.*"



FITTED    FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* 27



See also Matter of Harris "*44 U.S.C. § 3314*[ ] states that '*procedures… are exclusive, and records of the United States Government may not be alienated*[.]' See also *Federal Driver's Privacy & Protection Act* (18 U.S.C. §2721, et seq.). See also §7 of the *Privacy Act of 1974*. See also §205(c) of the *Social Security Act of 1935*, P.L. 74-271, Aug. 14, 1935, 49 Stat. 620, as amended.

14. The **I.R.S.'s JOHN DOE (1)** is claimed to have unconstitutionally received a copy of the LINDA WILLIAMS BENEFICIAL TRUST's testamentary instrument and personally identifying documents in opposition of: 5 U.S.C. §552b(c)(7); 18 U.S.C. §§371, 373(a), 1001(a); 28 U.S.C. §602(d); U.S. Const. Am. 1, 4, 5 (Takings Clause), 8, 10, and 14 §1; despite appearing as a harmless error (Fed. R. Civ. P. 61). See *UNITED STATESs v. BRAMBLETT,* 348 U.S. 503, 508, 509(1955), "*'department' and 'agency' in 18 U.S.C. 6.*" See also a *Congressional Research Service* internet publication, entitled "*False Statements and Perjury: An Overview of Federal Criminal Law*" (by Charles Doyle, dated May 11, 2018):

"*Section 1001's false statement element is in fact <u>three alternative elements</u> that encompass concealment, false statements and false writings.*

"*Subsection 1001(a)(1)(concealment) applies to anyone who 'falsifies, conceals, or covers up by any trick, scheme, or device a material fact.' Although the requirement does not appear on the face of the statute, <u>prosecutions under Subsection 1001(a)(1) for concealment must also prove the existence of a duty or legal obligation not to conceal</u>*(' *United States v. White Eagle, 721 F.3d 1108, 1116-18 (9th Cir. 2013) ("[A] conviction under § <u>1001(a)(1) is proper where a statute or government regulation requires the defendant to disclose specific information</u> to a particular person or entity"); United States v. Safavian, 528 F.3d 957, 964 (D.C. Cir. 2008) ("As Safavian argues and as the government agrees, <u>there must be a legal duty</u> in order for there to be a concealment offense in violation of §1001(a)(1)"); United States v. Stewart, 433 F.3d 273, 318-19 (2d Cir. 2006); United States v. Moore, 446 F.3d 671, 678-79 (7th Cir. 2006); United States v. Gibson, 409 F.3d 325, 333 (6th Cir. 2005)*)] *A federal employee's general ethical obligation to 'disclose waste, fraud, abuse, and corruption to appropriate authorities,' however, will 'not support a conviction under § 1001(a)(1)*' (' *White Eagle, 721 F.3d at 1116-18 (quoting 5 C.F.R. § 2635.101(b)(11)) and citing Safavian, 529 F.3d at 964*')]

"*Subsection 1001(a)(2)(false statements) applies to anyone who 'makes any material false, fictitious, or fraudulent statement or representation.' Conviction requires that the defendant knew that his statement or documentation was false, that is, it was not true*[ (' *United States v. Stacks, 821 F.3d 1038, 1044 (8th Cir. 2016) ('To establish a violation of 18 U.S.C. § <u>1001[(a)(2)]</u>, the government <u>must prove that</u>' (1) the <u>defendant made a statement</u>; (2) the statement was <u>false, fictitious, or fraudulent</u> … A statement is 'false' <u>if it contains 'factual misrepresentations</u>.''); United States v. Rahman, 805 F.3d 822, 836 (7th Cir. 2015); United States v. Castro, 704 F.3d 125, 139 (3d Cir. 2013).United States v. Good, 326 F.3d 589, 592 (4th Cir. 2003) ('The principle articulated in Bronston holds true for convictions under Section 1001 … We cannot uphold a conviction … <u>where the alleged statement forming the basis of a violation of Section 1001 is true on its face</u>.'*).] *It follows that a defendant's response to a question that is so fundamentally ambiguous cannot provide the basis for a conviction under Subsection 1001(a)(2)*(' *United States v. Schulte, 741 F.3d 1141, 1150 (10th Cir. 2014) ('[A] fundamental ambiguity cannot be the basis for a false statement conviction because a person cannot knowingly give a false reply to a question that defies interpretation despite its context.'); United States v. Hatch, 434 F.3d 1, 4-5 (1st Cir. 2006); United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003); United States v. Good, 326 F.3d 589, 592 (4th Cir. 2003)*').]"

a. Despite PLAINTIFFs' personal property (namely evidence) being claimed stolen by **N.Y.P.D.'s**

FITTED SOLE
PRODUCTIONS

FITTED    FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*



28

**20TH PRECINCT** (see DISCLAIMER #1), as such allegedly contained proof of the fax to the I.R.S. of the first page of the LINDA WILLIAMS BENEFICIAL TRUST's testamentary instrument, claims are enforced against the I.R.S. and **JOHN DOE (1)** due to having proof of identifications and fax numbers to the I.R.S.' "*Business*" department (Ex. 6, *Id.* at 1).

15. As previously stated, PLAINTIFF performed numerous investigations into the assets of the LINDA WILLIAMS BENEFICIAL TRUST, where, in the beginning of the year 2013, he contacted various **UNITED STATES** Government agencies; specifically the *Federal Deposit & Insurance Corporation* ("F.D.I.C.").

   a. On April 22, 2013, upon providing an email to F.D.I.C.'s secure website (Exhibit 11), containing identifying information of the LINDA WILLIAMS BENEFICIAL TRUST, PLAINTIFF received a response (dated "*April 26, 2013*;" App. A), stating they:
   > "*received your*[, his,] *concerns about a certificate of ownership that you*[, he,] *made in 1987 with the Microsoft Corporation.*" [highlighting and emphasis added]

16. After I.R.S. **AGENT JOHN DOE (1)** (as claimed) unconstitutionally acquired PLAINTIFFs' testamentary instrument and personally identification, he, as alleged, immediately called the **U.S. TREAS.'s** *Financial Management Services* department ("*fin. mg. service*[s]." Ex. 9, *Id.* at 1) and spoke to a man who stated the department consisted solely of himself in a corner office, whom allegedly confirmed PLAINTIFFs' F.D.I.C. response of having assets of Microsoft Corp. associated to the EIN of the LINDA WILLIAMS BENEFICIAL TRUST.

17. As previously mentioned, this S.S.A. matter is additionally sought as a **qui tam action** on behalf of the **UNITED STATES**.

### III.B.1.a.i  ANTITRUST CLAIMS AGAINST THE INTERNAL REVENUE SERVICE: ABRUPT RESIGNATION OF THE SECRETARY IN 2012

18. In an additional matter, which allegedly provide conclusive determination for antitrust, racketeering, economic espionage, corruption of enterprises and unconstitutional eviction claims being malicious, is an event which occurred in the year 2013, **shortly after** PLAINTIFF **mailed a letter** to the I.R.S. (Exhibit 12, "I.R.S. LETTER," accompanied with its postal receipt) providing "good cause" for why his 2010 taxes were filed one year out of the three-year period for filing an appropriate tax return (as was allegedly specified by the I.R.S. to do on their website, "*write a letter*") (due to the claimed illegal eviction from PCV/ST forcing PLAINTIFF to replace, within a year-long period, all claimed stolen tax documents from the dwelling unit), where the interim Commissioner, **MR. STEVEN T. MILLER**, consequently, ignored the letter; as such is reasonable cause to investigate financial institutions utilizing enterprise corruption to influence a **UNITED STATES** agency. See a *New York Times* news article,[9] entitled "*I.R.S. Commissioner Will Step Down in November*" (by David Kocieniewski, dated "*October 10, 2012*"), "[t]*he I.R.S. Commissioner... announced Wednesday that he will leave his post next month,... Nov. 9. Steven* [T.] *Miller, a deputy commissioner, will step in until a new commissioner is sworn in.*'"

   a. Additionally noted, the I.R.S. LETTER, references: (i) the name of the testamentary instrument and EIN, (ii) events surrounding the eviction, and (iii) other historical attributes of PLAINTIFFs' foreign and domestic tax filings.

   b. The resignation is sought for investigation into such being directly associated to the I.R.S. LETTER and multiple years of PLAINTIFFs' alleged amended tax returns; allegedly communicated to him through his assigned Tax Advocate, yet not filed by him.

   c. It is further highlighted, affiliations of the I.R.S. Commissioner's resignation are sought for investigation into being directly connected to the claimed illegal eviction (*ST OWNER LP v. EUGENE WILLIAMS*, Index No. 52069/12(Chan)(JHS)(NYHC)), wherein, allegedly, prior to PLAINTIFFs' eviction, when providing proof of succession rights (9 NYCRR §2522.8) for



rent stabilization to **MR. GREGORY J. CLAUDE** (a legal representative for CWCAM and **BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL**), who, as claimed, unlawfully acquired a copy of a personally addressed I.R.S. letter (identifying numbers blackened out) after **MR. CLAUDE** allegedly demanded PLAINTIFF provide additional proof (such as a letter "*addressed from the government*," verbatim) in violation of national origin (42 U.S.C. §§1985, 1986, 1987, 2000a，2000e).

## III.B.2.   OBSTRUCTION & TAKING CLAIMS AGAINST THE INTERNAL REVENUE SERVICE (2010 INDIVIDUAL TAXES)

"*Justice Cardozo... caution*[ed] *that '[t]o define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards [approaching futility].'*['*Gully v. First National Bank in Meridian, 299 U.S. 109, 117 (1936)*] '*How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books...* **To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.** *The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. . . . A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto*[.' '*Id., 112-113. Compare Wheeldin v. Wheeler, 373 U.S. 647 (1963), with Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See also J. I. Case Co. v. Borak, 377 U.S. 426 (1964): Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921)*']...

"*In Tennessee v. Davis,*[ '*100 U.S. 257 (1880),*']*... the Court invoked the right of the National Government to defend itself against state harassment and restraint.* *The power to provide for removal was discerned in the necessary and proper clause* *authorization to Congress to pass laws to carry into execution the powers vested in any other department or officer, here the judiciary.*[ '*Id., 263-264.*'] *The judicial power of the United States, said the Court, embraces alike civil and criminal cases arising under the Constitution and laws*[,... which] '*is not merely one where a party comes into court to demand something conferred upon him by the Constitution or by a law or treaty... Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defence of the party, in whole or in part, by whom they are asserted*[']...

"'*The constitutional right of Congress to authorize the removal before trial of civil cases arising under the laws of the United States has long since passed beyond doubt. It was exercised almost contemporaneously with the adoption of the Constitution, and the power has been in constant use ever since. The Judiciary Act of September 24, 1789, was passed by the first Congress, many members of which had assisted in framing the Constitution; and though some doubts were soon after suggested whether cases could be removed from State courts before trial, those doubts soon disappeared.*'['*Id., 264-265.*']" [emphasis added]

- A *Constitution.findlaw.com* publication,[10] entitled "*Annotation 14 - Article III*[:] *JURISDICTION OF SUPREME COURT AND INFERIOR FEDERAL COURTS*"

FOOTNOTE 9: Source: "*http://mobile.nytimes.com/2012/10/11/business/douglas-shulman-head-of-the-internal-revenue-service-to-step-down.html.*"
FOOTNOTE 10: Source: "*http://constitution.findlaw.com/article3/annotation14.html#f677.*"

**FITTED SOLE** PRODUCTIONS   FITTED FABLES A PUBLISHING COMPANY   *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*   | 30



*"Due process of law is a constitutional guarantee that prevents governments from impacting citizens in an abusive way.  In its modern form, due process includes both procedural standards that courts must uphold in order to protect peoples' personal liberty and a range of liberty interests that statutes and regulations must not infringe."*

- *"Magna Carta: Muse and Mentor Due Process of Law"*[11]
  (*"A LIBRARY OF CONGRESS EXHIBITION: November 6, 2014–January 19, 2015"*)


*"The Second Circuit... [found] that the statute covers any corrupt act or omission that obstructs or impedes any activity under the Tax Code. In this case, lying and destroying records - both willful - fit the bill...*

*"[Petitioner ]argu[ed] that the Second Circuit's interpretation meant that any action which made the IRS' ability to assess and collect taxes more difficult could be the basis of a felony obstruction charge if alleged by a prosecutor to be 'corrupt[,'... writing:] 'It is difficult,... to conceive of any act of tax evasion or tax fraud that could not also be charged as tax obstruction on the Second Circuit's reading['... A] number of amicus curiae briefs were filed in support of Marinello, including those by The American College of Tax Counsel, New York Council of Defense Lawyers, and the Chamber of Commerce of the United States of America."*

- *"Obstruction Question To Be Decided As Criminal Tax Case Goes To Supreme Court"*[12] (by Ms./Mrs. Kelly Phillips Erb, December 6, 2015) (Forbes.com), referencing *MARINELLO v. UNITED STATES*, Docket No. 16-1144.

---

19. As alleged, due to the claimed illegal eviction from PCV/ST and allegedly having to replace stolen tax documents, PLAINTIFF acquired an extension for filing his returns; which allegedly provided the allotted additional time to locate and print all tax forms needed to complete filings required for the appropriate year; as such consisted of almost the entire collection of I.R.S. forms (most of which were printed through use of **MR. WHITNEYs'** printer and fax machine).
   a. As a side note, due to the amount of files obtained from the I.R.S.'s website, PLAINTIFF questions the security of the U.S. Government website, as such forms can corrupt ".*pdf*"[13]

FOOTNOTE 11: Source: *"https://www.loc.gov/exhibits/magna-carta-muse-and-mentor/due-process-of-law.html."*
FOOTNOTE 12: Source: *"https://www.forbes.com/sites/kellyphillipserb/2017/12/06/obstruction-question-to-be-decided-as-criminal-tax-case-goes-to-supreme-court/#1ed2a25972a7."*
FOOTNOTE 13: See a Null-byte.wonderhowto.com internet publication, entitled *"How to Embed a Backdoor Connection in an Innocent-Looking PDF"* (by user "OCCUPYTHEWEB"):
  *"Nearly every computer has some version of Adobe Reader on it for reading PDFs…* [and] *alter an existing .pdf file that can then be posted to our website. When friends or others download it, it will open a listener (a rootkit) on their system and give us total control of their computer remotely."*
  Source: *"https://null-byte.wonderhowto.com/how-to/hack-like-pro-embed-backdoor-connection-innocent-looking-pdf-0140942*
Comment 1: See a F-Secure Labs Threat Report (H1-2012) internet publication:
  *"rudimentary drive-by downloads or phishing runs that typically depend only on social engineering tricks to infect a machine (essentially, by duping the user into  voluntarily downloading a malicious file), may now also attempt to exploit vulnerabilities on the user's machine at the same time, increasing the effectiveness of the attack and potentially gaining more victims."*
  Source: *"https://www.f-secure.com/documents/996508/1030743/Threat_Report_H1_2012.pdf."*
Comment 2 : See New York Times internet news article, entitled *"Cyberattack Exposes I.R.S. Tax Returns"* (by Ms./Mrs. Jada F. Smith, dated May 26, 2015):





documents (through hidden files in images or otherwise attached) and, in turn, intrude upon the security of personal computers (which may infiltrate through software known as "*malware*," malicious software, a virus worm collecting personal information); as such an attack, as previously claimed in *WILLIAMS v. UNITED STATES, ET AL.,* 15cv5114(LAP) (SDNY) and *WILLIAMS v. UNITED STATES, ET AL.,* 18cv21064(LLS)(SDNY), was claimed evidenced within PLAINTIFFs' **GOOGLE, INC G-MAIL** account, *Facebook.com* account, and other events pertaining to use of open internet access, foreign and domestic.

b. Additionally, through PLAINTIFFs' personal investigation, the **I.R.S.** has indeed experienced such types of malware breaches wherein "*criminals accessed tax information for more than 100,000 taxpayers*,"[14] and for which, due to likelihood of securitized assets in the IRA of the LINDA WILLIAMS BENEFICIAL TRUST containing a massive amount of equity (Microsoft assets. App. A), he fears such a malicious intrusion may have occurred, whereby such included the obtaining of filed documents associated to the EIN of the trust and **I.R.S.'s** "secured" emails. See an "*NBC.com*" news article, entitled "*IRS Breach Puts Spotlight on the Internet's 'Costco of Cybercrime'*"[14] [emphasis added] (by "*JULIANNE PEPITONE*", dated "*May 27, 2015*").

20. On October 15th, 2013, relatively the week after PLAINTIFFs' departure after three months from **MR. WHITNEYs'** apartment, and, consequently, the last day to file extended tax returns, he sent (by certified mail) all tax returns and accompanying forms of all states of the U.S. and territories of Canada for the tax years of 2003 to 2012.

   a. As mentionable, other forms utilized by PLAINTIFF, which were mailed to the **I.R.S.,** allegedly consisted of the LINDA WILLIAMS BENEFICIAL TRUST inquiries (Form 4506-T) and the use of Form 4506 to obtain historical records.

     i. As reiterated, the utilized forms, which made inquiry into the LINDA WILLIAMS BENEFICIAL TRUST, contained the confidentially sensitive EIN to the trust's account, for which PLAINTIFF is concerned such disclosure of information may have been used inappropriately, and led to identity theft and/or antitrust offenses.

21. Shortly after mailing PLAINTIFFs' returns, he began receiving payments from the government agencies of Canada and the **UNITED STATES.**

   a. As highlighted, PLAINTIFFs' Canadian tax refunds from both CRA and Revenue Quebec

---

"*Using Social Security numbers, birth dates, street addresses and other personal information obtained elsewhere, the criminals completed a multistep authentication process and requested the tax returns and other filings, the I.R.S. said. Information from those forms was used to file fraudulent returns, the I.R.S. said, and the agency sent nearly $50 million in refunds before it detected the scheme...*

"*'Eighty percent of the identity theft we're dealing with and refund fraud is related to organized crime here and around the world,' Mr. Koskinen said at a news conference on Tuesday. 'These are extremely sophisticated criminals with access to a tremendous amount of data.'*

"*The I.R.S. said the attackers exploited data, like email addresses and passwords gleaned from other breaches, to answer basic authentication questions about subjects like birth dates or the names of family members...*

"*Eric Chiu, a security expert who is the president of HyTrust, a cloud computing security company[ stated, 'a]ttackers are on the hunt for our personal and financial information using data stolen from other breaches to gain a larger amount of information on those same individuals.*"

See also a George Washington University Project Report October 2016 internet publication, entitled "Into the Gray Zone The Private Sector and ActiveDefense Against Cyber Threats" (by Center For Cyber & Homeland Security):

"*[w]ith recent breaches at the Internal Revenue Service, the Office of Personnel Management, and various state agencies, it is clear that government [orga]nizations at all levels are also targets of cyber threat actors[ ('World's Biggest Data Breaches: Selected Losses Greater than 30,000 Records,' Information is Beautiful, October 15th, 2016 http://www.informationisbeautiful.net/visualizations/worlds-biggest-data-breaches-hacks/).]*"

FOOTNOTE 14: Source: "http://www.nbcnews.com/tech/security/irs-hack-hackers-buy-info-costcos-cybercrime-experts-say-n365366."

*COMPLAINT*
*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS.    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 32



were the first to respond with tax refunded check amounts, where, more importantly, such refunds specifically included amounts from the year 2010.

22. It was immediately after acquisition of PLAINTIFFs' first refunded checks (amounting to roughly Five to Six-Thousand Dollars) when he began seeking housing accommodations, which, as claimed, led to an event of civil rights offenses against the federally assisted housing company of **BREAKING GROUND** (originally **COMMON GROUND**).

23. Accumulatively, PLAINTIFF received tax refunds in the estimated amount of Eleven to Twelve-Thousand Dollars, which, as aforementioned claimed, illegally excluded the amount denied by the I.R.S. for his 2010 tax return.

24. Alternatively, if PLAINTIFFs' 2010 tax refunds had been acquired from the I.R.S., such would have provided him with roughly Twenty-Thousand Dollars (enough to put a down payment upon a residence, for a first time home buyer), which, as allegedly spoken of during the private meeting with PCV/ST representatives **MR. ADAM ROSE** (of *Rose Associates, Inc.*, management, at the time, of PCV/ST) and **MR. CLAUDE**, would have provided payment for any back due rent in further prevention of an eviction (aside from the rental insurance policy with **STATE FARM**; claimed unconstitutionally terminated, in violation of ISC §3420(a)(1)).

   a. Furthermore, during the first and second responding trials of *ST OWNER, LP v. WILLIAMS*, 52069/12(Chan)(JHS)(NYHC) in the **NEW YORK COUNTY HOUSING COURT** ("**N.Y.H.C.**"), **HON STANLEY** allegedly <u>hinted</u> at the eviction being "illegal," and in light of his final request to obtain any form of payment for back due rent (now that, according to **HON STANLEYs'** judgment, PLAINTIFF was immediately liable), the formation of an escrow account (similar to the agreement made with **MR. WILLIAMS, JR.**) could have been reestablished, where PLAINTIFFs' received tax refund amounts, or other income, could have satisfied any back-due amounts.

25. On December 16, 2010, PLAINTIFF allegedly received a letter from the I.R.S. requesting further information concerning his "*1040 filing*" ("*filed 1040*"). See DISCLAIMER #1.

   a. The letter, aside from its alleged ambiguity, may have been sent in directed relation to PLAINTIFFs' filed extension with the I.R.S. or some other matter, such as identity theft.

26. On November 21, 2013, PLAINTIFF received a letter from the I.R.S. (see DISCLAIMER #1), denying the refund of his 2010 requested tax returns, after he allegedly abided by procedures and mailed the I.R.S. LETTER; claimed in opposition of U.S. Const. Art. 1 §8 Cl. 2 and U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1. See a *Duke Law Journal* internet publication (Vol. 50:589),[15] entitled "*Intangible Property Under the Federal Mail Fraud Statute and the Takings Clause: A Case Study*" (by Mr. Michael J. Hostetler):

   "[t]*he determination of a property interest is thus one of the key factors in any takings claim. The Supreme Court made this task more abstract (and perhaps simpler for the claimant) by extending the meaning of property to include not only the actual tangible object but also 'the group of rights inhering in the citizen's relation to the physical thing*[' ('*United States v. General Motors, 323 U.S. 373, 378 (1945)*').] *These rights... include the* '*right to possess, use and dispose of*' *('Id.*')]*, as well as the* '*right to exclude*['* ('Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 433 (1982) (quoting Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979)*')'.] *As such, cases involving tangible objects seldom revolve around whether a property right is at stake*[ ('[i]*n these cases, the more general problems that courts face are whether the property was taken and whether compensation must be given*').] *Nevertheless, scholarship on the meaning of property in light of the Takings Clause has become a veritable cottage industry*[ ('[s]*ee, e.g., Jeanne L. Schroeder, Never Jam Today: On the Impossibility of*

_____

FOOTNOTE 15: Source: "https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1096&context=dlj."



*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    33

*Takings Jurisprudence, 84 GEO. L.J. 1531, 1531 (1996) ('[H]undreds of recent articles attempt[] to reconcile, critique, or condemn Supreme Court takings jurisprudence or to justify, reinterpret, or re-imagine the underlying theory of property.')).] Although some try to make sense out of the case law,[ ] the majority appear concerned with finding ways to limit (or expand) the definition of property in order to ease (or hinder) the way for more aggressive environmental legislation, wealth distribution[ ('[s]ee, e.g., Thomas W. Merrill, Compensation and the Interconnectedness of Property, 25 ECOLOGY L.Q. 327, 344-49 (1998)... On the other hand, Joseph Sax and Frank Michelman,... argue that the state's police powers permit the regulation of property and that our participation in society is an implicit acceptance that the police powers can be used to diminish the value of our property if used for the common good. Professor Michelman sees the common good as the redistribution of wealth to the poor, whereas Professor Sax's goal is to protect the environment'),] or the promotion of some other special interest.[ ]" [emphasis added] Id. at 596, 597.*

27. When attempting to clarify the denial, due to providing the letter showing good cause, PLAINTIFF contacted the I.R.S.'s *Tax Advocacy Department* in hopes of resolving any conflicting discrepancy and to claim his right to the claimed stolen 2010 tax refunds.

28. Shortly after contacting the I.R.S.'s *Tax Advocacy Department*, PLAINTIFF allegedly received a telephone call from an assigned tax advocate, named **MS./MRS. "Sandy Kent."**

29. PLAINTIFF allegedly relayed to **MS./MRS. KENT** the following concerns surrounding:
    a. the December 16, 2010 I.R.S. LETTER, inquiring into a filed Form 1040;
    b. the I.R.S.'s November 21, 2013 letter, denying 2010 tax refunds; and
    c. previously claimed unconstitutional tax levies (claimed committed by **NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE, "N.Y.S.D.T.F.;" J.P. MORGAN CHASE MANHATTAN BANK, "J.P. MORGAN,"** and the **NEW YORK STATE DEPARTMENT OF LABOR**; allegedly related to the use of PLAINTIFF unemployment benefit claims to satisfy his tax levy payments. See ), of years 2008 and 2011, placed upon banking accounts (**J.P. MORGAN CHASE MANHATTAN BANK**, previously named defendant within *WILLIAMS v. UNITED STATES, ET AL.,* 15cv5114(LAP) (SDNY) and *WILLIAMS v. UNITED STATES, ET AL.,* 18cv21064(LLS)(SDNY) (due to **J.P. SECURITIES** being the check clearing firm for the LINDA WILLIAMS BENEFICIAL TRUST; claimed as laching upon performing a death index search (under ISC §3240(d)(1); E.P.T.L. §5-1.1-a) with their insurance company to release checks to a different fiduciary, and TD Bank), for which, at the time, PLAINTIFF was unaware if such levies were placed by the I.R.S. or **N.Y.S.D.T.F.**. See a *Nbcnews.com* internet news article,[16] entitled "*JPMorgan warns 465,000 card users on data loss after hacker attack*" (by Mr. David Henry & Mr. Jim Finkle, dated December 5, 2013):
        "*JPMorgan Chase & Co. is warning some 465,000 holders of prepaid cash cards issued by the bank that their personal information may have been accessed by hackers who attacked its network in July*"

30. **MS./MRS. KENT** allegedly exclaimed she would make inquiry into all matters of concern, however, she also mentioned the only possibility of claiming 2010 tax refunds would be a resolution via the Tax Court or to hold PCV/ST accountable within a court of law for PLAINTIFFs' loss, where the awarded refund may be appropriated.
    a. Furthermore, PLAINTIFF allegedly acquired a detailing of **all** levied tax years by the I.R.S., primarily those previously paid by **DECEDENT**, however, the levies for the tax years of 2008 and 2011, were stipulated as not being executed through the I.R.S., whereby he deduced the **N.Y.S.D.T.F.** must have originated such claimed illegal dual taxation amounts.

---

FOOTNOTE 16: Source: "https://www.nbcnews.com/businessmain/jpmorgan-warns-465-000-card-users-data-loss-after-hacker-2D11701157."



**FITTED SOLE** PRODUCTIONS.   FITTED   FABLES — *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
A PUBLISHING COMPANY   *(Docket - TBD) (Dated December 13, 2019)*   34

   b. **MS./MRS. KENT** allegedly responded, via a letter, where she provided a summary of his inquiries (yet excluded any response to his 2010 tax letter or matters of the levies), however, **MS./MRS. KENT** did supply information concerning <u>amended tax returns</u> for the years 2003, 2004 and 2005, despite PLAINTIFF <u>alleging to have only amended the 2005 tax year on his own accord</u>, the incomplete tax return caused by **MR. CHARLES BUCCIER** of HRBlock.  

31. PLAINTIFF immediately made inquiry into the 2003 and 2004 amended years of filings, via a telephone conversation, where **MS./MRS. KENT** could not supply any further information, however, much to PLAINTIFFs' surprise, she provided information of other <u>amended tax returns</u> which were not contained within the I.R.S. Tax Advocate's letter, as such were for tax years 2011 and 2012.

   a. As alleged, PLAINTIFF demanded further explanation from **MS./MRS. KENT** regarding the 2011 and 2012 amended tax returns, whereby she stipulated there would be nothing more she could do and if he would like to pursue the matter, to then acquire a legal representative and file a complaint within the Tax Court.

32. To the best of PLAINTIFFs' knowledge, he contacted **N.Y.S.D.T.F.** to see if the amended tax return were executed by them, whom said they were not.

33. In light of such event, a thorough investigation is insisted upon to see if any State, associated to PLAINTIFFs' tax filings, amended his return without notifying him.

34. Approximately two years after PLAINTIFFs' filing of returns, he allegedly received notification from the taxing authority of **ILLINOIS REVENUE** (see DISCLAIMER #1) for being liable for past due taxes and surcharges, for the year 2010, which has now accumulated interest in an amount exceeding **Three-Thousand Dollars** (a claimed act of usury in opposition of: U.S. Const. Art. 1 §8 Cl. 2; U.S. Const. Am. 10 and 14 §1; 12 U.S.C. §86).

   a. Ironically, PLAINTIFF had allegedly already received a refund from the **ILL.REV.** prior to their request and is unaware as to why a tax refund would be granted without the extracting of debts owed to **ILL.REV.**, especially since he only worked in the State for less than a one year period. See a *Founders' Constitution* publication,[17] entitled "*William Blackstone, Commentaries 1:317*" (1765) (taken from the "*Commentaries on the Laws of England: A Facsimile of the First Edition of 1765--1769. Chicago: University of Chicago Press, 1979*"):
"[t]*he only advantage, that can result to a nation from public debts, is the encrease of circulation by multiplying the cash of the kingdom, and creating a new species of money, always ready to be employed in any beneficial undertaking, by means of it's transferrable quality; and yet productive of some profit, even when it lies idle and unemployed.*"

35. Correspondingly, PLAINTIFF was allegedly notified by the I.R.S. (see DISCLAIMER #1), <u>enforcing their authority</u> over debt to **ILL.REV.** ("*Taxing Us without our Consent.*" Declaration Of Independence), <u>demanding payment for back due taxes</u>; as such demand is claimed a discriminatory offense upon an individual of deprived monetary status, primarily in opposition of U.S. Const. Am. 8 and 14 §1. See *BFI, INC. v. KELCO DISPOSAL, INC.*, 492 U.S. 257 (1989):
"*The <u>Excessive Fines Clause of the Eighth Amendment</u>... <u>does not constrain such an award</u>* [of punitive damages ]*<u>when the government neither has</u>* prosecuted the action nor has any <u>right to recover</u> a share of the damages awarded. Pp. 492 U. S. 262-276.
"*(a) The primary concern which drove the Framers of the Eighth Amendment was <u>the potential for governmental abuse of 'prosecutorial' power</u>, not concern with the extent or purposes of civil damages...*
"*Given that the Amendment is addressed to bail, <u>fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments</u>. See, e. g., 32 U. S. 7 Pet. 568, 32 U. S. 573-574 (1833) ('The eighth amendment is addressed to courts of the United States exercising criminal jurisdiction');*

FOOTNOTE 17: Source: "*press-pubs.uchicago.edu/founders/documents/a1_8_2s1.html.*"

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 35 of 72 *COMPLAINT*
*Southern District Court of the State of New York*
**FITTED SOLE** PRODUCTIONS    FITTED FABLES  *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 35



*Fong Yue Ting v. United States, 149 U. S. 698, 149 U. S. 730 (1893)…*

"[T]*he word 'fine' was understood to mean a payment to a sovereign as punishment for some offense.* [('[a] *'fine signifieth a pecuniarie punishment for an offence, or a contempt committed against the king.'* 1 E. Coke, Institutes *126b. The second edition of Cunningham's Law-Dictionary, published in 1771, defined 'fines for offences' as 'amends, pecuniary punishment, or recompence for an offence committed against the King and his laws, or against the Lord of a manor.'* 2 T. Cunningham, A New and Complete Law-Dictionary(unpaginated). See also 1 T. Tomlins, Law-Dictionary 796-799 (1836) (same); 1 J.Bouvier, Law Dictionary 525 (4th ed. 1852) (same*)']* *Then, as now, fines were assessed in criminal, rather than in private civil, actions…*

" [T]*he original Constitution was criticized in the Massachusetts and Virginia Conventions for its failure to provide any protection for persons convicted of crimes*[']…"

"*Ingraham v. Wright, 430 U.S. at 430 U. S. 666 (footnote omitted). See… 32 U.S. Mayor and City Council of Baltimore, 7 Pet. 243, 32 U. S. 250 (1833) ('In [ ] every convention by which the constitution was adopted, amendments to guard against the abuse of power were recommended'); Weems v. United States, 217 U.S. at 217 U. S.372 (the 'predominant political impulse' of proponents of the Bill of Rights 'was distrust of power,… insisted on constitutional limitations against its abuse')…*

"[T]*o determine whether it is excessive under the Due Process Clause of the Fourteenth Amendment*[,]… **basic elements of fundamental fairness**… [must establish] **that the proceedings themselves were unfair**, or that the jury was biased or blinded by emotion or prejudice.*" [emphasis added]

36. The I.R.S.'s demand to enforce an excessive penalty (surcharges) of a State Government for the same 2010 tax year in which the I.R.S., themselves, denied PLAINTIFF a refund for, is claimed an act of obstructive usury (in opposition of: U.S. Const. Art. 1 §8 Cl. 2; U.S. Const. Am. 10, 11 (Fed. R. Civ. P. 11(c), 37), 14 §1; 12 U.S.C. §86; 26 U.S.C. §7212(a)), a forced taxation without supporting representation.  See a *Cornell University Law Review* internet publication,[18] entitled "*CRS Annotated Constitution*[:] *Tenth Amendment.*"

"*The* **Tenth Amendment** *was intended to confirm the understanding of the people at the time the Constitution was adopted, that* **powers not granted to the United States were reserved to the States or to the people**[ *('United States v. Sprague, 282 U.S. 716, 733 (1931)'…* ']*There is nothing in the history of its adoption to suggest that it was more than declaratory of the relationship between the national and state governments as it had been established by the Constitution before the amendment or that its purpose was other than* to allay fears that the new national government might seek to exercise powers not granted, and **that the states might not be able to exercise fully their reserved powers**[' *('United States v. Darby, 312 U.S. 100, 124 (1941)… [']The Amendment expressly declares the constitutional policy that* Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system.' *Fry v. United States, 421 U.S. 542, 547 n.7 (1975) . This policy was effectuated, at least for a time, in National League of Cities v. Usery, 426 U.S. 833 (1976)*)]… '*Interference with the power of the States was no constitutional criterion of the power of Congress.*" [highlighting and emphasis added]

See also a 1215.org internet publication,[19] entitled "*THE MURPHY COURT: HUMAN LIFE HAS NO VALUE*" ("The Murphy Court," by Phil Hart, 2008), referencing *MURPHY v. I.R.S., 460 F.3d 79 (D.C. Cir. 2006) rehearing 493 F.3d 170 (D.C.Cir. 2007)*:

" '*The Sixteenth Amendment simply does not authorize the Congress to tax as 'incomes'*

FOOTNOTE 18: Source: "https://www.law.cornell.edu/anncon/html/amdt10_user.html#amdt10_hd4."



*COMPLAINT*
*Southern District Court of the State of New York*

**FITTED SOLE** *PRODUCTIONS®*  |  FITTED FABLES *A PUBLISHING COMPANY*  |  *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  36

_every sort of revenue a taxpayer may receive_. As the Supreme Court noted long ago, the '_Congress cannot make a thing income which is not so in fact_." ~Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 114 (1925).

"_Congress derives its powers from the Constitution, as authorized by We the People. If Congress could change the meaning of words in the Constitution, then the whole principle of 'limited government' would fly out the window... 'The Government of the United States is a government of limited powers: 'Every law enacted by Congress must be based on one or more powers enumerated in the Constitution.'" ~United States v. Morrison, 529 U.S. 598,607 (2000)..._

"_Murphy's lawyers,... discovered that[,]... when the Sixteenth Amendment was purportedly ratified, awards for personal injury type damages were considered a 'return of capital' and an attempt to make the injured party 'whole.'_

"_Murphy's attorneys argued that her award... was a return of her 'human capital,'... stating) 'The government had the audacity to argue that non-wage compensatory damages for emotional distress and loss of reputation can be taxed as income because the economic value of human life is zero. The taxing of non-wage damages is_ [ ] _destructive and punishes whistleblowers and other civil rights plaintiffs for prevailing in their cases[']..._

"_The author of the Sixteenth Amendment, Senator Norris Brown (D- Nebraska),..._

[stated]: '_It is the theory of the friends of the income-tax proposition that [income from] property should be taxed and not individuals._' ~44 Congressional Record 1570 (1909)...

"'[I']ncome taxes... are_ [ ] _to be classified in the class of indirect taxes[']... ~Ramon Siaca, The Federal Income Tax Law of 1913: Construction of the Sixteenth Amendment, 1 Cornell Law Quarterly 298, 299 and 301 (1916)._"

See also "_Obstruction Question To Be Decided As Criminal Tax Case Goes To Supreme Court_,"[20] referencing MARINELLO v. UNITED STATES, No. 16-1144:

"[u]nder section 7212(a), it's a felony to obstruct the administration of tax laws. The question raised in Marinello is whether the statute requires that the defendant know that there is a pending... (IRS) action or proceeding when engaging in the allegedly obstructive conduct...

"Audits and investigations, the government claims, may be examples of 'due administration' but they are not the only functions that apply. The government argues that making it impossible for the IRS to do its job - including, the government claims, willfully destroying records so that IRS cannot determine any tax liability - is obstruction. 'Shredding documents or deleting computer files is not inherently wrongful conduct,' the government wrote in its brief, 'but it becomes wrongful if done with the requisite criminal intent[']...

"At sentencing, the court found that [there was an... ']obl*igation' to preserve records, report income, and pay taxes._"

37. As asserted, if the I.R.S. wished to demand payment for a year they withheld PLAINTIFFs' 2010 tax refund amount (nearly five to ten thousand dollars), they should have used the refunds to simply paid off surcharges of ILL.REV..

38. PLAINTIFF insists upon an investigation (commencing after or during an auditing process of personal finances) in order to fully verify any possible claim of the a I.R.S. having a conspired willful intent to acquire a payment of debts on behalf of a State government, while extracting funds for the same tax year (as such was an allegedly justifiable late filing) and whether or not such claimed illegal federal enforcement was associated to the IRA of the LINDA WILLIAMS BENEFICIAL TRUST and/or the financial institutions of PCV/ST (including that of **CAISSE DE DÉPÔT PLACEMENT DU QUÉBEC** , "**C.D.P.Q.**," and his employment with *Cirque du Soleil*).

---

FOOTNOTE 19: Source: "https://www.1215.org/lawnotes/work-in-progress/16th-amendment--life-0-value.rtf."
FOOTNOTE20: Source: "https://www.forbes.com/sites/kellyphillipserb/2017/12/06/obstruction-question-to-be-decided-as-criminal-tax-case-goes-to-supreme-court/#1ed2a25972a7."



*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    37

38. Immediately prior to PLAINTIFFs' eviction, he allegedly gathered all of his tax information concerning the last three years of employment and placed them all into one backpack (which he was unable to locate when partially searching through the boxes of his claimed stolen property from the eviction, prior to the property's loss (due to being unable to pay for the two rental units after the loss of UI benefits and monetary gift from **MR. RICHARD HYNES-ESPOSITO, ESQ.**), as such tax materials were specifically gathered to claim refunds for the highest grossing years of his life (under the employment of *Cirque du Soleil*, earning income from their Canadian headquarters and their U.S. offices in Las Vegas, NV).

    a. PLAINTIFF was allegedly in the midst of searching for an accountant who was proficient in Canadian taxes prior to his eviction and was unable to locate one, whereby he relied solely upon himself to learn how to file taxes and complete returns, while claiming UI benefits.

39. As aforementioned, prior to **DECEDENTs'** passing, PLAINTIFFs' tax returns were filed through her personally preferred accountant (whom, to the best of PLAINTIFFs' knowledge, was a member of her family; maiden name of Streger).

    a. PLAINTIFF reiterates, when **DECEDENTs'** accountant passed away, both himself and **DECEDENT**, in the year 2005, both utilized the services of *H&R Block, Inc.* ("HRBlock") as such was <u>offering taxpayer services for a limited timeframe at a normally vacant location on 14th Street between Avenues A & B</u> (directly adjacent from Building 449 of PCV/ST).

40. As mentionable, during PLAINTIFFs' stay with **MR. WHITNEY**, where he completed ten years of tax returns on a sofa, he specifically amended the above referenced 2005 tax filing executed by HRBlock, as such was due to missing information; a matter of discrepancy, due to HRBlock normally performing diligent searches for W-2 information prior to charging a fee for services.

### III.B.3.    ANTITRUST CLAIMS AGAINST THE SOCIAL SECURITY ADMINISTRATION

"*Request for Business Entity Taxpayer Information--0960-0731. **<u>Law firms</u>** or **<u>other business entities</u>** must complete <u>Form SSA-1694</u>[ ]... , **<u>if they wish to serve as appointed representatives</u>** and **<u>receive direct payment of fees</u>** from SSA... SSA also uses the information <u>to allow business entities to designate individuals to serve as entity administrators</u> authorized <u>to perform certain administrative duties</u> on their behalf, such as providing <u>bank account</u> <u>information</u>, maintaining entity information, and updating individual affiliations.*" [highlighting and emphasis added]

    -   Federal Register, Volume 80 Issue 27 (Tuesday, February 10, 2015)

"*Departmental units are authorized to request financial records of any customer from a financial institution pursuant to a formal written request under the Act only if[... t]here is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry and will further that inquiry[.]*"

    -   28 C.F.R. §47.3(b)

### III.B.3.a.    ANTITRUST CLAIMS AGAINST THE SOCIAL SECURITY ADMINISTRATION: EMPLOYMENT IDENTIFICATION NUMBER OF THE LINDA WILLIAMS BENEFICIAL TRUST (FORM "*SSA-1694*")

41. Despite PLAINTIFFs' wasted attempts to acquire accounting information from financial institutions and authorities concerning the EIN of the IRA associated to the LINDA WILLIAMMS BENEFICIAL TRUST's testamentary instrument, he made further investigation of the EIN with the S.S.A. by use of their form "*SSA-1694*," entitled "*Request for Business Entity Taxpayer Information*," as such form, according to a recent federal register publication ("*Federal Register Volume 80, Number 27 (Tuesday, February 10, 2015)*"), specifically states such is utilized for

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 38 of 72

*COMPLAINT*
*Southern District Court of the State of New York*


FITTED FABLES
A PUBLISHING COMPANY
*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 38

"[l]*aw firms or other business entities*[,]" [highlighting and emphasis added] wherein any contestation to an inquiry into the EIN of a "*business entity*" would, hence, be an illegality.

42. On the morning of September 23, 2013, PLAINTIFF visited the Manhattan, N.Y. offices of the S.S.A., located at 123 William Street New York, NY 10038, to file form SSA-1694 (Appendix F).

   a. PLAINTIFFs' acquired ticket receipt stub number from his visit to the S.S.A. (see App. F, *Id.* at 2), which also contains his handwritten notes of S.S.A. employee information, taken during the event; as such act of note-taking may be made prima facie through acquisition of electronically recorded materials of the S.S.A. Manhattan office.

43. After waiting to be seen in the lobby of the S.S.A. offices, PLAINTIFF walked to a window clerk,  who, when being presented with his filled out SSA-1694 form, refused its filing, stating she had never seen the form before.

44. PLAINTIFF then insisted the clerk, a woman allegedly named "*Ms. Ryan*," [highlighting and emphasis added] (her identity, evidenced within the above referenced handwritten notes of App. F, *Id.* at 1), to check the S.S.A. website for herself to view the form's validity.

   a. When MS. RYAN returned, she allegedly confirmed the form's existence, yet still refused.

45. After negotiating the validity of the form's existence as a viable S.S.A. filing, MS. RYAN <u>stamped the form before attempting to process it into the S.S.A.'s computer databases</u> (see App. F, *Id.* at 1), despite expressing her desire to verify its filing with her supervisor, a manager named "*MS. PARKER*" (JANE DOE (1)) (see App. F, *Id.* at 2). See 42 U.S.C. §904, "[j]*udicial notice shall be taken of such seal.*"

   a. As mentionable, both government employees allegedly refused to divulge their first names to PLAINTIFF, yet were allegedly provided by another employee of the NEW YORK S.S.A...

46. To the best of PLAINTIFF knowledge, either after the exhibited form was stamped or after the additional verification of the form was had (detailed in the following paragraph), **a copy of the form was made** within the offices of the S.S.A..

   a. It is highlighted, photocopier machines automatically retain information and the ability to either preview or reprint photocopied documents, as such retaining of PLAINTIFFs' EIN information would be compromised if such access to the printers memory storage was had. See a *Bizfluent.com* internet publication, entitled "*The Advantages and Disadvantages of Photocopiers*" (by Ms./Mrs. Elizabeth Mott, dated September 26, 2017):

      "[a] *copier that stores document information for instant recall and output, and that faxes and emails what you duplicate, uses an internal hard drive to retain page scans for short- or long-term retrieval. That data storage spells convenience for office functions, but it can subject sensitive information to the risk of accidental or deliberate misuse.*"

47. In light of the claimed compromising of information for the EIN, which may be utilized with additionally unauthorized disclosure of information within the judicial filings of S.C.N.Y. (within File No. 2013-3538(SCNY), sought for probate oversight), which threatens not only PLAINTIFFs' safety ("*retaliation or discrimination*"). 44 U.S.C. §3507(e)(3)(B)), but also safety of national security for the U.S. Government (44 U.S.C. §3512, especially in light of claims involving economic espionage and antitrust offenses), upon acceptance of waiver of sovereign immunity (U.S. Const. Am. 11; Fed. R. Civ. P. 11(c), 37), the S.S.A. is charged with a recordkeeping offense (U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1), for failure to "*protect*[ the]...

*privacy and security*" (44 U.S.C. §3506(b)(1)(C)) of the EIN of the IRA of LINDA WILLIAMS BENEFICIAL TRUST (when "*assum*[ing] *responsibility and accountability for information technology investments*[.]" 44 U.S.C. §3506(h)(2)) and associated claimed offenses. See *UNITED STATES v. MILLER*, 425 U.S. 436, 440 (1976):

    "In Hoffa v. United States, 385 U. S. 293, 385 U. S. 301-302 (1966), the Court said that 'no interest legitimately protected by the Fourth Amendment' is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy,

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 39 of 72

*COMPLAINT*

*Southern District Court of the State of New York*



FITTED SOLE
PRODUCTIONS..    FITTED  FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    39

into 'the security a man relies upon when he places himself or his property within a constitutionally protected area[.]'"

See also a Justia.com internet publication,[22] entitled "*Supremacy Clause Versus the Tenth Amendment,*" referencing the dissent of "*Fry v. United States,*[ '*421 U.S. 542 (1975),*," where: "*Justice Rehnquist propounded a doctrine that was to obtain majority approval in League of Cities*[ ('*individual asserting a constitutional limit on delegated powers and a state asserting the same thing, but is rather between an individual asserting a lack of authority and a state asserting a lack of authority; this equivalence is evident on the face of the Tenth Amendment, which states that the powers not delegated to the United States 'are reserved to the States respectively, or to the people.' (emphasis supplied). The states are thereby accorded no greater interest in restraining the exercise of nondelegated power than are the people. See Massachusetts v. Mellon, 262 U.S. 447 (1923)*),] in which he wrote for the Court: "[T]here are attributes of sovereignty attaching to every state government which may not be impaired by Congress, not because Congress may lack an affirmative grant of legislative authority to reach the matter, but because the Constitution prohibits it from exercising the authority in that manner.*"

48. As alleged, **MS. PARKER** also performed the same inquiry into the validity of SSA-1694, being unfamiliar with the form's usage, and when she returned, she denied filing of the form, stating such was **solely** used to designate "*attorney fees*" (allegedly verbatim; as such is claimed a fraudulent falsifying statement, primarily under U.S. Const. Am. 1, 5 and 14 §1. 18 U.S.C. §1001(a), (c)(1) and 18 U.S.C. §1015(d), "*knowingly makes any false... attestation,*" including under: 5 C.F.R. §§3801.105, 2641.301(e)(4)(i)(E), 2635.902(y); 20 C.F.R. §§402.145(a), (b), 402.195(c), 422.108; 18 U.S.C. §§1341, 3101, 3301(a)(2), 3510(B)(2); 26 U.S.C. §7269; 42 U.S.C. §§1306(b), 1307(a), 1320a-8a(a); 44 U.S.C. §§3101, 3105, 3557(2); 49 U.S.C. §§30301, 30305(b)(9) (due to this matter associated to the LINDA WILLIAMS BENEFICIAL TRUST and a concern for national security). See a *Lawfareblog.com* publication,[23] entitled "*THE RUSSIA CONNECTION*[;]... *The Law of Lying: Perjury, False Statements, and Obstruction*" (by Ms./Mrs. Helen Klein Murillo, dated March 22, 2017), "*United States v. Bramblett,*[ 348 U.S. 503(1955),... includes] '*any department or agency*[.]'"

a. Furthermore, the claimed intentional lache to file a government issued form is additionally claimed to have been a conspired act (under 18 U.S.C. §§241, 371), specifically in light of claims against the **I.R.S.** (a closely related government agency, in terms of seeking taxpayer information by way of a social security number) for the illegal acquisition of confidentially identifying documents and the first page to the LINDA WILLIAMS BENEFICIAL TRUST's testamentary instrument, perpetrated in order to defraud and induce malicious deterrence (42 U.S.C. §1320a-8b), so as to "*elicit information*" (42 U.S.C. §1307(a), (b)) and prevent PLAINTIFF from acquiring financial and business related information to the IRA of the trust, as such as allegedly perpetrated primarily in aid of local government agencies, officers and officials (specifically connected to the claimed illegal reinvesting of the IRA's securitized assets and/or any organized planning to incorporate green bonds into the affordable housing market: i.e., the use of *Sustainable Neighborhood Bonds* within the sale of PCV/ST) from assembling securitized information for tax filings and/or providing the local surrogate court a proper value of **DECEDENTS'** estate for probate (see 26 C.F.R. §301.6901-1(a), "[m]*ethod of collection,*" where acquiring form SSA-1694's EIN information for Trust LPSW would have provided proper taxpayer information to file an estate tax return for the "*transfer*[ ] *of property.*").

FOOTNOTE21: Source: "https://bizfluent.com/info-8621221-advantages-disadvantages-photocopier.html."
FOOTNOTE 22: Source: " https://law.justia.com/constitution/us/article-6/06-supremacy-clause-versus-tenth-amendment.html."
FOOTNOTE23: Source: " https://www.lawfareblog.com/law-lying-perjury-false-statements-and-obstruction."

**FITTED SOLE**
PRODUCTIONS

FITTED   FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*   40



49. **MS. PARKER** allegedly told PLAINTIFF that if he indeed wanted to pursue the matter, to then mail the form to **S.S.A.'s** main headquarters; claimed a malicious discriminatory obstruction of due processes (a deprivation of PLAINTIFFs' constitutional rights to personal property as a U.S. citizen with deprived monetary assets; discriminatory national origin. 42 U.S.C. §1987), under: U.S. Const. Art. 1 §10, 6 §3 (through the *Administrative Procedure Act*); U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1; 5 C.F.R. 2635.101(a); and 42 U.S.C. §§904(a), 1983. See "*Natural Rights, Natural Liberty and Natural Law: An Inquiry Into the Causes of Social Maladjustments - The Rational, Just and Adequate Remedy*"[24] ("Natural Rights," by Mr. Frank Q. Stuart):

"[n]*o person has any natural right wantonly to hurt or injure another.* **The object of government is to prevent and redress** [in]**juries of this sort; for, in a state of nature, without the superior restraining power of government, the strong would viciously** [im]**pose upon the weak.**"[emphasis added]

a. It is stated, such violation of duties are in direct coordination with the superior authority of **COMMISSIONER ANDREW M. SAUL** and regional **COMMISSIONER RAYMOND S. EGAN** (named in their official capacities under 42 U.S.C. §§902(a)(4), (a)(5), 904, 913), including **SEC. STEVEN TERNER MNUCHIN** (of the **U.S. TREAS. 26 U.S.C. §7801(a)(1))** and (26 U.S.C. §7803(a)(2)(A)).

b. It is stipulated, the information contained within PLAINTIFFs' filing of form SSA-1694 may be "*use*[d in opposition] *of normal clearance procedures*[,... having the] *reasonably like*[lihood] *to prevent or disrupt the collection of*[ personal and confidential financial] *information*" (44 U.S.C. §3507(j)(1)(B)(iii)) or utilized such in association with corresponding claims of identity theft (mentioned throughout previously filed complaints. 18 U.S.C. §1546(a)). 18 U.S.C. §§1015(d) ("*knowingly makes any false... execution*"), 1905 ("*by reason of any examination*"), 7213a(a)(1)(A) ("[u]*nauthorized inspection of... return information*"), wherein SSA-1694 is a "[r]*equirement to furnish... [an] identifying number as required by the forms and the accompanying instructions*" (26 CFR §301.6109-1(b)(1)) and was an "[u]*nlawful disclosure of information... [by] any officer or employee of the* [UNITED STATES]" (26 U.S.C. §7213(a)(1)) has the strong likelihood of causing a violation of national security, due to corresponding antitrust claims under the *FOIA* (5 U.S.C. §552(b)(7), (i)(I) ("*obtains any record... under false pretenses*")) and the *Privacy Act* (5 U.S.C. §552a (namely under subdivision (l)(1), "*may affect substantial economies*") and 20 C.F.R. Ch. 3 Part 401). 20 C.F.R. §402.15. See 50 U.S.C. §3003(5)(b)(i), "*intelligence... gathered within... the* [UNITED STATES,... which may] *threat*[en]... *the United States, its people, property, or interests*[.]" See 44 U.S.C. §3301(a)(2), defining "*recorded Information*" as "*all traditional forms of records,... including information... manipulated*[ or] *communicated*[.]" See also 44 U.S.C. §3510(B)(2), "**officers and employees of the agency to which the information is released**,... [are] *subject to the same provisions of law, including penalties, relating to the unlawful disclosure of information*[.]" [emphasis added] See also *ROHRBOUGH v. HARRIS*, "*DISTRICT OF COLORADO (D.C. NO. 1:00-CV-808-LTB-PAC)*," wherein it is the duty "*to 'make and preserve' records*," as such claimed fraud "*contradic*[s] *the express language of 44 U.S.C. § 3314, which states that '[t]he procedures... are exclusive, and* **records of the United States Government may not be alienated**[.]'" [emphasis added]

c. Subsequently, the claimed deterrence by the two S.S.A. personnel and further provided option to mail in the form the S.S.A. headquarters (*Id.* at ¶49), after having acquired knowledge of PLAINTIFFs' deprived financial situation, are enforced as being grounds to claim additional offenses for civil rights violations, via puffery (under U.S. Const. Am. 1); in coordination with claims of discriminatory bias-based profiling of a local federal agency (under ADC §14-151(e) and 42 U.S.C. §§1983 (as amended, 42 U.S.C. §2000a), 1987),

---

FOOTNOTE 24: Source: "*https://books.google.com/books?id=dbtaRJs-JNUC.*"



whereby the overall claimed conspired act by two **S.S.A.** personnel (primarily **MS. PARKER**) is further claimed a malicious attempt to keep him in a deprived socioeconomic state by not granting government assistance for a clearly defined request for information concerning a financial business entity's EIN.

50. PLAINTIFF, as alleged, once again implored **MS. PARKER** to file the form instead of mailing it in (seeing that such information, after being denied by the **I.R.S.** and financial institutions, could be utilized as a supplement for someone else to file for probate within **S.C.N.Y.**), allegedly explaining his restrictive situation of being deprived of funds while living on the street, where any availability to mail the form would be an impossibility; as such request went denied.

   a. In light of **MS. PARKER** personally inspecting form SSA-1694, <u>where such received a</u> <u>stamped approval</u>, such is claimed axiomatic of her and the **MS. RYAN** clearly having knowledge of its original intent; lest the two **S.S.A.** representatives were unable to comprehend the form's written content.

      i. So as not to appear as though PLAINTIFF is belittling the two representatives and their blatant refusal to comprehend the English language, he claims such event was a conspired act (under 18 U.S.C. §§371, 373, 1349) to deprive him of acquiring personal knowledge of confidential financial information obtained from filing the form, in aid (18 U.S.C. §2) of sustaining his current state of homelessness (subversion, whether or not the matter was made known to the two **S.S.A.** personnel prior to), wherein **MS. PARKER** had allegedly previously obtained knowledge of PLAINTIFF being displaced and financially incapable of mailing the form to the **S.S.A.** main offices.

      ii. In light of such claimed conspired maliciousness, **MS. PARKER** is additionally sought for inclusion as a defendant in her individual capacity (coinciding authoritative responsibilities of her superiors), thereby waiving any rights to immunity under U.S. Const. Am. 11 (as such may be acknowledged sua sponte of the court or by motion of PLAINTIFF). See 18 U.S.C. §373:

         "[i]*t is not a defense... that the person solicited could not be convicted of the crime because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution.*"

         A. The questionable act of hearsay to deny PLAINTIFF the opportunity to file form SSA-1694 (App. F, sought for investigation) is insisted as being sought for validation as a prima facie criminally conspired act, based solely upon the alleged denied form being officially stamped; as such was an "*approve*[d]" "[s]*eal of office*" which must be retained for filing, under 42 U.S.C. §904(d), and liable to penalties under 26 U.S.C. §§6803(b), 6804 7208 (due to form SSA-1694 specifically tailored to the disclosure of an EIN (20 C.F.R. §422.112; 26 C.F.R. §§31.6011(b)-1(a)(iii), 301.7701-12), 7209, 7206(1) to (2), 7214(a)(1), (a)(3) to (a)(7), 7207, 7212(a), and 7271.

         B. It is advised, to acquire further evidence (Fed. R. Civ. P. 16), sua sponte, so as to confirm (through investigation and acquisition of electronically recorded information of surveillance videos) **MS. RYAN** stamping PLAINTIFFs' form prior to **MS. PARKER** allegedly confirming the form's existence on the S.S.A.'s official website.

51. Prior to his departure, as alleged, PLAINTIFF further questioned **MS. PARKER** of where she acquired information regarding the form's designation of being used solely for legal fees and if such office was different from the location, to then provide him the address so he may personally visit such offices to resolve this issue, whereby he was allegedly told it was their "*T2 Systems*" of their "*Alpha Access Records*."

52. As previously mentioned, this **S.S.A.** matter is additionally sought as a **qui tam action** on behalf of the **UNITED STATES** (18 U.S.C. §§1345; 2413, 2415; 26 C.F.R. §301.7401-1(a); 42 U.S.C. §233) to provide preliminary judgment of initial damage awards; wherein future intervention (18





U.S.C. §2403; 26 C.F.R. §301.7424-2 and 42 U.S.C., due to **MS. PARKER** charged in her individual capacity) and administrative proceedings (26 C.F.R. §301.7430-3 and 42 U.S.C. §401, et seq.) may commence upon scheduling upon the calendar.

   a. In order to obtain a full assessment of illegalities, intervention is sought by government personnel within preliminary appeal conferences, where the *Social Security Advisory Board* (42 U.S.C. §903), *National Commission on Social Security* (42 U.S.C. 907a), an "*assigned*" representative of the Commissioner (42 U.S.C. §902(a)(7)) and the *United States Commission on Civil Rights* (45 C.F.R. §701.2) are sought for their attendance, opinion, and to schedule forthcoming administrative hearings (contingent, of course, upon the acceptance of the Alternative Dispute Resolution Proposal; see ¶1).

53. In light of such claimed deterrence by government personnel, an auditing of the U.S. Government, and its treasury, is additionally sought (primarily for investigative purposes (26 U.S.C. §7517), for the furnishing of a statement in explanation of any estate or gift valuation), as such concerns not only the assets associated to the IRA of the LINDA WILLIAMS BENEFICIAL TRUST, but of any other beneficial assets within her estate and other general trust accounts (such as those connected to his social security).

54. Attempting to comprehend why the S.S.A. would refuse a "[b]*usiness*" form (specifically allocating a section for an EIN, as evidenced in the 2015 *Federal Register* S.S.A. publication of Vol. 80, No. 27), it is insisted the Court see the two employees as having known usage of the form was not solely associated to legal entities, despite providing such as an excuse for their confusion to deny the seeking of business information for the trust's EIN; as such is insisted as being seen as an influential factor, if not catalyst, for amending the form's parameters.

   a. Furthermore, although "*there* [wa]*s an appropriate written request from an authorized government authority*[ ]" (as stated within *The Right to Financial Privacy Act*), and despite being "warned" of the form's "possible" non-compliance (as such procedures surrounding the form were allegedly unknown by the S.S.A. personnel, the only logical course of action, in comparative analysis of the event, should have been for the two S.S.A. personnel to either completely refuse the form's filing prior to its official stamping or copying of, or to file the form and allow the S.S.A. headquarters to supply a response letter in official verification of its non-compliance; as such would have relieved the locally-based U.S. Government Agency office of any claims relating to economic espionage, or antitrust offenses, or retaliation, etc.  See an *Epic.org* publication,[25] entitled "*The Right to Financial Privacy Act*."

      "[T]*he ensuing cases resulted in multiple blows to consumer privacy. For example, in California Bankers Association v. Schultz,*[ '416 US 21 (1974),'] *the U.S. Supreme Court held that the Constitution did not protect the privacy of personal information in records maintained by business and government...*

      "*The reaction to the Supreme Court decisions*[ within '*United States v. Miller, 425 U.S. 435 (1976),*'] *was Congress' enactment of the RFPA, which <u>was essentially designed to reverse Miller in the context of financial records and **provide standing for individuals to complain about the improper release of information about them in records maintained by financial institutions**</u>*[;]... *argu*[ing that the] *purpose for the RFRA was threefold*[:... (i)] *customers be notified before disclosure*[;... (ii)] *customers standing to challenge release of their records to the government; and* [(iii) r]*equire government agencies to produce an audit trail documenting the disclosure of customer info to the government, as well as any interagency transfer of info...*

      "*RFPA sates that '<u>no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described</u>*[,]' *requir*[ing] *that the*

---

FOOTNOTE 25: Source: "https://epic.org/privacy/rfpa/"

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 43 of 72 *COMPLAINT*
*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* 43



requesting <u>federal government agency must give the customer advance notice of the requested disclosure from the financial institution</u>, thus giving the customer opportunity to challenge the government's access to the records before the disclosure takes place...
"*The Act only governs disclosures to the federal government, its officers, agents, agencies, and departments...*
"[T]<u>he availability of RFPA protection depends on the type of person or entity whose records are sought</u>[,]... allow[ing] <u>financial information to be revealed based on a much weaker showing than the Fourth Amendment requirement of probable cause</u>...
"*In these situations, <u>disclosure by a financial institution is always permitted</u>, <u>and no authorization, subpoena, or warrant is required</u>*[:... (i) *Disclosures in the financial institutions interest,... as well as disclosures that are relevant to possible violations of the law...* [(]'*the nature of any suspected illegal activity.*' 12 U.S.C. §3403(c). Example: A federal government agency requests the release of financial records to prove a bankruptcy claim[)... (ii) Disclosures in connection with supervisory investigations and proceedings[,]... the rights of customers are not at stake... [(]Example: The Securities and Exchange Commissions wishes to investigate suspicious business operations[)... (iii) Disclosures under the tax privacy provisions. Example:* <u>The IRS may obtain information from a bank about a customer without the use of a summons or notice because the Internal Revenue Codes has its own individual privacy protections</u>[ (unlike that of the S.S.A.);... (iv) *Disclosures pursuant to other federal statutes or rules, administrative or judicial proceedings, and legitimate functions of supervisory agencies*[;... (v) *Emergency disclosures and disclosure to federal agencies charged with foreign intelligence or counter intelligence or other national security protective functions.  Example: A bank may disclose customer records to a federal agency if the customer is suspected of terrorist action*[ (pertaining to financial institutions named defendants)]." highlighting [and emphasis added]

### III.B.3.b.  ANTITRUST CLAIMS AGAINST THE SOCIAL SECURITY ADMINISTRATION: COMPREHENSION OF FORM "*SSA-1694*"

55. In analysis of S.S.A.'s form SSA-1694, entitled "*Request for Business Entity Taxpayer Information,*" such factually excludes any reference to the form's usage being solely for the acquisition of information pertaining to legal entities, or the businesses in which they are to pay legal fees to, or whom they receive legal fees from.
   a. There is a "***PERJURY STATEMENT***" section, stipulating if "*any false representation*" is made, a taxpayer(s) EIN "*could be criminally punished by a fine or imprisonment or both.*"
   b. In the "***Purpose of Form***" section, such states the S.S.A. "*is required to file an information return... with the* [I.R.S..]"
   c. In the "***Employer Identification Number***" section, such states an EIN may be acquired through the "*filing* [of] *an SS-4*[ ]... *with the* [I.R.S.... or] *apply for an EIN online*[.]"
   d. The "***Name of Business Entity***" section states such should signify the name "*shown on required Federal tax documents*[.]"
   e. Within the "***Privacy Act Notice***" section, such states:
      "<u>Request for Business Entity Taxpayer Information</u>
      "<u>Sections 206(a) and 1631(d) of the Social Security Act</u>, as amended, <u>authorize us to collect this information</u>. We will <u>use the information you provide to identify appointed representatives associated with a business entity</u> as employees or partners <u>and to facilitate issuance of appropriate return information</u> for reporting purposes...
      "*We <u>rarely use the information you supply for any purpose other than to identify appointed representatives associated with a business entity</u>* as employees or

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 44 of 72
*COMPLAINT*
*Southern District Court of the State of New York*

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  44



partners and to facilitate issuance of appropriate return information for reporting purposes… [and] *may also disclose information to another person or to another agency…* [so as to: (i)] *enable a **third party** or an agency to assist Social Security in establishing rights to Social Security benefits*[;… (ii) t]*o comply with Federal laws requiring the release of information from Social Security records*[;… (iii) t]*o make determinations for eligibility in similar health and income maintenance programs*[;… and (iv) t]*o facilitate **statistical research**, **audit**, or **investigative activities** necessary **to assure the integrity** and improvement of **Social Security programs**…*

"***We may also use the information you provide in computer programs***… [to] *compare our records with records kept by other Federal, State, or local government agencies*[.]" [highlighting and emphasis added]

56. As evidenced above, form SSA-1694, does not contain any reference to its use being anything other than associated to the financial history and business entity information of an EIN, however, as previously mentioned, the claims against the S.S.A. entail clerical officers alleging the form's use is solely designated for the reporting of legal fees and awards acquired from judicial hearings. See a *Government Publishing Office* internet publication,[26] entitled "*Federal Register Volume 80, Number 27 (Tuesday, February 10, 2015)*," referencing "*Docket No. SSA-2015-0002*," wherein ¶7 of the publication, states:

"***Request for Business Entity Taxpayer Information***[ ('*Form SSA-1694*')… is used primarily for l]*aw firms or other business entities…* [to] *appoint representatives and receive direct payment of fees from SSA… SSA also **uses the information to allow business entities to designate individuals to serve** as entity administrators authorized to perform certain administrative duties **on their behalf**, such as **providing bank account information**, maintaining **entity information**, and **updating individual affiliations**."* [highlighting and emphasis added]

See also "*Federal Register (Vol. 71, No. 89, Tuesday, May 9, 2006),*"[27] wherein the publication, referencing "*law firm*[s]," states the form is:

"*used to collect information from law firms or other business entities that have partners or employees to **whom SSA pays fees that have been authorized as compensation for the representation of claimants before SSA**. SSA will collect the name of the firms and/or business entities, as well as their addresses and Employer Identification Numbers (EIN) to keep a record on file for tax purposes. This information will be used to meet any requirement for issuance of a Form 1099-MISC. The respondents are law firms or other business entities that have partners or employees that are attorneys or other qualified individuals who represent claimants before SSA. Type of Request: Request for a new information collection. Number of Respondents: 1,000. Frequency of Response: 1. Average Burden Per Response: 10 minutes. Estimated Annual Burden: 167 hours." Id. at 27017.*" [highlighting and emphasis added]

57. If indeed, the above quoted publication is accurate, and form SSA-1694 is solely for entities receiving "*compensation for the representation of claimants before SSA*," [highlighting and emphasis added] instead of the 2015 publication, referencing such is additionally for "*other business entities*," [highlighting and emphasis added] then PLAINTIFF instructs the Court to discard aforementioned claims of malicious discriminatory obstruction of due processes, and, as an alternative, replace such with adjacent claimed constitutional offenses upon acceptance of waiver of sovereign immunity (U.S. Const. Am. 11; Fed. R. Civ. P. 11(c), 37,) (under U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1) against the UNITED STATES Government for consumer fraud. 5 U.S.C. §301; 28 U.S.C. §§509, 510. See *Dodd-Frank Wall Street Reform and Consumer*

---

FOOTNOTE 26: Source: "https://www.gpo.gov/fdsys/pkg/FR-2015-02-10/html/2015-02657.htm."
FOOTNOTE 27: Source: "https://www.gpo.gov/fdsys/pkg/FR-2006-05-09/pdf/E6-7022.pdf."



FITTED SOLE
PRODUCTIONS    FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    45

*Protection Act.* See also *Consumer Financial Protection Act of 2010* ("CFPA", 12 U.S.C. §5481 *et seq.*).  See also §1108 of the *Right to Financial Privacy Act of 1978*. 12 U.S.C. §3408), wherein such stipulation of "*compensation for* [ ] *representation*" by "*law firm*[s]" should have been included upon the SSA-1694 form itself.  See *GREAT PLAINS LENDING, LLC, ET AL., v. CONSUMER FINANCIAL PROTECTION BUREAU*, Docket No. 17-184, 846 F.3d 1049:

" *'any person'* that the Bureau *'has reason to believe * * * may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation' of federal consumer financial laws. 12 U.S.C. 5562(c)(1). The Act defines 'person' to mean 'an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity*['* (]*12 U.S.C. 5481(19)*[, see "*other entity*" to mean the **UNITED STATES** in its federal corporate capacity under 28 U.S.C. §3002(15)(A))]*…

" *The CFPA prohibits 'offer[ing] or provid[ing] to a consumer any financial product or service not in conformity with" those laws*[ (]*12 U.S.C. 5536(a)(1)(A)*[),]*… mak*[ing] *it unlawful for covered persons to 'engage in any unfair, deceptive, or abusive act or practice,' 12 U.S.C. 5536(a)(1)(B)*,…

" *Congress has authorized the Bureau to issue 'civil investigative demand[s]' (CIDs), a form of administrative subpoena, '[w]henever the Bureau… [finds ]any person may be in possession, custody, or control of any… tangible thing*[ ]*, or may have any information, relevant to a violation' of any such law. 12 U.S.C. 5562(c)(1) (emphasis added).*

"[A] *court enforces a CID '[a]s long as the evidence is relevant, material and there is some plausible ground for jurisdiction.' [Pet. App.] 7a n.2 (quoting EEOC v. Federal Express Corp., 558 F.3d 842, 848 (9th Cir.), cert. denied, 558 U.S. 1011 (2009)); see, e.g., Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509 (1943) (ordering district court to enforce subpoena where '[t]he evidence sought * * * was not plainly incompetent or irrelevant to any lawful purpose' of the agency)…*

" *In Jefferson County Pharmaceutical Ass'n v. Abbott Laboratories, 460 U.S. 150 (1983), for example, this Court held that the regulation of 'persons' and 'purchasers' under the Robinson-Patman Price Discrimination Act was 'sufficiently broad to cover governmental bodies' where a state-owned entity 'compet[es] against private enterprises,' id. at 154-155 (citation and internal quotation marks omitted)."*

See also a *New York State Bar Association* publication,[28] entitled "*WHISTLEBLOWER CLAIMS UNDER THE DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT: THE NEW LANDSCAPE*" (by Jill L. Rosenberg and Renée B. Phillips):

" *In Egan v. TradingScreen, Inc.*,[ '*No. 10 Civ. 8202(LBS), 2011 WL 1672066 (S.D.N.Y. May 4, 2011),*'] <u>*Judge Sand interpreted the anti-retaliation provisions of section 21F as covering not only whistleblowers who provide information to the SEC, but also individuals whose disclosures are 'required or protected' under the Sarbanes-Oxley Act ('SOX'), the Securities Exchange Act, 18 U.S.C. § 1513(e), or any other law, rule, or regulation subject to the SEC's jurisdiction.*</u>" [highlighting and emphasis added]

See also *ROHRBOUGH. ET AL. v. HARRIS, ET AL.*, Nos. 07-1186, 07-1202:

" *The FRA*[ ('<u>*Federal Records Act*</u> (FRA),' '*Armstrong v. Bush, 924 F.2d 282, 284 n.1 (D.C. Cir. 1991)*')] *governs the management, retention, and disposal of federal records. See 44 U.S.C. chs. 21, 25, 29, 31, 33.* [' *The National Archives and Records Administration (NARA)*'] *has primary authority over the management of federal records under the FRA and is authorized to promulgate regulations regarding records management. See, e.g., id. § 2904(a) ('The Archivist [of the United States, see id. § 2901(15), who administers NARA,*

---

FOOTNOTE 28: Source: "https://www.nysba.org/Sections/Labor_and_Employment/Labor_PDFs/LaborMeetingsAssets/
Whistleblower_Claims_Under_Dodd_Frank.html."



see id. § 2102] shall provide guidance and assistance to Federal agencies with respect to . . . ensuring proper records disposition'); id. § 2904(c) (the Archivist, together with the Administrator of General Services, shall 'have the responsibility–(1) to promulgate <u>standards, procedures, and guidelines with respect to records management</u> . . . .'); id. § 2905(a) ('The Archivist shall establish standards for the selective retention of records of continuing value . . . .'); id. § 3302 ('The Archivist shall promulgate regulations . . . establishing . . . (1) procedures for the compiling and submitting to him of lists and schedules of records proposed for disposal [and] (2) <u>procedures for the disposal of records authorized for disposal</u> . . . .'); Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 62 (D.C. Cir. 1983) ("<u>Congress clearly intended to transfer final approval authority over the disposal of records to [NARA]</u>"); see also 44 U.S.C. §§ 2908, 2909; 3303a(d) (additional authority to promulgate regulations)...

"First, the dissent faults us for relying on the definition of records in 44 U.S.C. § 3301 even though the record-preservation duty imposed on federal agencies by 44 U.S.C. § 3101 does not encompass everything defined as a record' in § 3301. In particular, it points out that <u>§ 3101 requires agencies to 'make and preserve' records 'containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities.' Absent from § 3101 is any mention of those documentary materials that are records under § 3301 only 'because of the informational value of data in them'</u>"]...

"<u>This argument might be compelling if § 3101 were intended to establish the sole record-preservation duties of federal agencies</u>. But that is not the intent of the section. <u>Its clear purpose is to ensure that agencies make adequate records documenting its operations</u>. It also mandates, quite naturally, <u>that the agencies then retain those records</u> (else making them would be of little consequence). It does not say, however, that <u>if an agency makes other records or receives records that do not document agency operations, then the agency is free to dispose of them as it will</u>. Nor can we read § 3101 to imply such a limit on an agency's preservation responsibilities. That implication would contradict the express language of 44 U.S.C. § 3314, which states that '[t]he procedures described by [chapter 33, which does not include § 3101] are exclusive, and records of the United States Government may not be alienated or destroyed except under [chapter 33].' When chapter 33, entitled 'Disposal of Records,' imposes duties with respect to records, it undoubtedly refers to all records defined by § 3301 of that chapter, not just the subset described in § 3101.

58. To the best of PLAINTIFFs' knowledge, no other course of action exists within S.S.A. procedural forms to acquire business related and financial information concerning EIN's (filed with the I.R.S.); as such has caused years of extreme mental and physical strain to gain knowledge of law, simply in order to locate the Federal Register's publication, wherein the referenced legal parameters, stipulated upon the form itself, as asserted, hold no bearing to the acquired publication, nor any other reference to the Internal Revenue Code.

    a. If such designated form does not exist in the S.S.A., it is insisted the Court conceive of, or amend, a form to include the obtaining of EIN information related to all business entities (especially designating the acquisition of information pertaining to business entities in control over trust assets, where financial institutions tend to go through various frequent take-overs and trading of subsidiaries to accommodate the global financial market), or, at least, to acknowledge the information collected through the use of form SSA-1694 via a determination of necessity (44 U.S.C. §3508).

**FITTED SOLE**
PRODUCTIONS

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*



### III.B.4.   UNITED STATES/CANADA TAX TREATY CLAIMS:
### SOCIAL SECURITY ADMINISTRATION / INTERNAL REVENUE SERVICE

"*Wages, salaries, and similar income (other than pensions) paid by Canada or by a Canadian* [po]*litical subdivision or local authority to a citizen of Canada for performing governmental functions are exempt from U.S. income tax.*"

- "*U.S. Tax Treaties*" (I.R.S. "*Publication 901*[;] *(Rev. September 2016)*")[29]

-

"*The benefits of the income tax treaty are gener*[ally] *provided on the basis of residence for* [in]*come tax purposes. That is, a person who is recognized as a resident of the United States under the treaty, who claims the benefit of the treaty, and who has income from Canada, will often pay less income tax to Canada on that* [in]*come than if no treaty was in effect...*
"*The treaty contains a credit provision (Article XXIV) for the elimination of double taxation. In general, the United States and Canada both* [al]*low a credit against their income tax for the* [in]*come tax paid to the other country on income from sources in that other country.*"

- "*Information on the United States-Canada Income Tax Treaty*" (I.R.S. "*Publication 597*[,] *(Rev. October 2015)*")[30]

---

59. As alleged, in coordination with PLAINTIFFs' three month stay at **MR. WHITNEY's**, he taught himself how to file tax returns from a tax book he procured from the *New York Public Library* ("NYPL," located at the *Tompkins Square Library*, 331 East 10th Street New York, NY, 10009), of which went delinquent in late payments and was never returned.

   a. The NYPL is sought for investigations for retaliation by NYPL Trustees and by members of the public, as such is based upon claimed malicious insider trading of **Microsoft** stocks (allegedly advertised primarily through an internet publication concerning timestamp trading) and for newly enacted NYPL rules restricting on the amount of personal belongings one can bring into the library (and the creation of "square black boxes" prior to entering the *Science, Industry and Business Library* of NYPL; allegedly occurring when PLAINTIFF defended himself within the trial of *PEOPLE v. STEVEN WILLIAMS*, Index No. 2012NY089333 (NYCC) and first beginning to write U.S. S.Ct court documents at the *Riverside Library* for *WILLIAMS v. UNITED STATES*, *ET AL.*,15cv5114(LAP)(SDNY))

      i. Alleged as retaliation and sought for investigation, during the time of filing PLAINTIFFs' certiorari petition with the U.S. S.Ct. (using computers which were available for viewing by the general public walking outside; in full view of the U.S. S.Ct. heading "*IN THE SUPREME COURT OF THE UNITED STATES*"), the librarians of the *Riverside Library* ceased and then limited the providing of guest passes to him (which they had allegedly provided, repeatedly, all day long, for nearly a year and a half period), as the librarians allegedly conveyed that members of the community were complaining about computer usage by homeless individuals.

60. PLAINTIFF allegedly placed together ten years of tax information at **MR. WHITNEY's**, for which he allegedly filed with the I.R.S., Canada and various State governments, including that of New York, Pennsylvania, Illinois, California and New Jersey.

   a. Within PLAINTIFFs' filings, he also filed for foreign earned credit with the I.R.S. for foreign tax returns with the Canadian Government (including the *Canadian Revenue Agency*, "CRA" and the local government in Montreal, CA, "*Revenue Quebec*"); for which the use of **MR.**

---

FOOTNOTE 29: Source: "https://www.irs.gov/pub/irs-pdf/p901.pdf."
FOOTNOTE 30: Source: "https://www.irs.gov/pub/irs-pdf/p597.pdf."

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 48 of 72    *COMPLAINT*
*Southern District Court of the State of New York*
*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  48



WHITNEYs' fax machine, three month stay, allegedly led to the faxes sending and receiving faxes on their own.

61. As stipulated, PLAINTIFF was under the impression the S.S.A. and the I.R.S. would be the responsible parties when communicating with the Canadian government (as such would verify assets of foreign earned wages, without himself having to act as an unqualified government representative), whereby he had to allegedly maneuver through the process of enforcing an international treaty; the *US/CAN Totalization Agreement* of the *Canada-U.S. Treaty.*

62. PLAINTIFF assumed, due to tax provisions associated to CRA form "*CDN-USA1*" ("*SC ISP-5054-USA(2012-01-01) E*"), Revenue Quebec and the *US/CAN Totalization Agreement* of the *Canada-U.S. Treaty,* as amended by Pres. William J. Clinton on "*September 3, 1997,*" and the dual taxation he experienced with Revenue Quebec for his employment with *Cirque du Soleil.* See the "*UNITED STATES - CANADA INCOME TAX CONVENTION,*"[31] first signed by Pres. Jimmy Carter on "*November 12, 1980,*" stipulating a self-employed person should contact the S.S.A. to enforce foreign employer compliance, he believed the Canadian Government would transfer to the I.R.S. dual taxation of mandatorily taxed retirement benefits acquired by Revenue Quebec from any income earned within its territory.

63. When PLAINTIFF attempted to transfer the above referenced credit for dual taxation, there was an alleged discrepancy between the S.S.A. and the I.R.S. concerning the *Canada-U.S. Treaty,*

   a. When contacting both the S.S.A. and the I.R.S., PLAINTIFF allegedly found each agency, instead of clarifying the provisional procedures in lieu of transferring a credit from the Canadian Government, both U.S. agencies directed him to contact the other agency, sending him around in a never ending cycle of confusion, where, at times, he allegedly had to wait on the phone for an hour to speak to a representative from each agency, while making close to ten calls in a single day.

64. Inevitably, PLAINTIFF had to pay for both CRA (Revenue Quebec) social insurance and I.R.S. foreign earned income, allegedly due to neither the I.R.S. or S.S.A. willing to abide by the *Canada-U.S. Treaty.*

65. In explanation of the above referenced loss of the dual taxation exemption credit, the S.S.A. told him to contact his employer, *Cirque du Soleil,* so they may send proof of income to Revenue Quebec and then to have them contact the S.S.A. to approve such revenue for exemption, which they would then transfer to the I.R.S. for deduction of dual taxation from the Canadian Government (evidenced on form "*SSA-L4201-BK*" provided to PLAINTIFF by S.S.A. for his employers of *Cirque du Soleil* to file within their records; see DISCLAIMER #1).

   a. As alleged, PLAINTIFF abided by the directions of the S.S.A. and contacted *Cirque du Soleil's* taxation department in Montreal, Quebec, providing them form SSA-L4201-BK and requesting them to send all appropriate information to the S.S.A. and other agencies.

      i. As background information, at the beginning of his employment with *Cirque du Soleil,* he was given opportunity to have their taxation department file taxes for himself (as a group), whereby he opted not to use their services (evidenced on *Cirque du Soleil's* form "*2010 TAX QUESTIONAIRE*" (see DISCLAIMER #1) provided to PLAINTIFF at the onset of the Creation process in Montreal, CA for the production of *Banana Shpeel,* originally named "*Vaudeville,*" as such shows were separated for taxable earned income through a separate contractual agreement).

   b. As exclaimed, PLAINTIFFs' request of *Cirque Du Soleil's* legal and taxation departments to contact Revenue Quebec and transfer the Canadian dual taxation credit to their Las Vegas offices was refused, as such ceased any further action taken to resolve the issue and due to time limitations to file taxes in order to claim his 2010 I.R.S. refunds; forcing PLAINTIFF

---

FOOTNOTE 31: Source: "https://www.irs.gov/pub/irs-trty/canada.pdf.."

COMPLAINT

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 49 of 72

*Southern District Court of the State of New York*

FITTED SOLE
PRODUCTIONS

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    49



to instead forgo the dual taxation exemption, as such not only affected his overall tax filings' gross earnings, but, in turn, offset a complex calculation related to I.R.S. form 1116 ("*Foreign Earned Credit,*" depicted within I.R.S. "*Publication 54*").

66. PLAINTIFF questions if such specifically pertained to the possibility of taxes filed for the productions of *Banana Shpeel* and *Vaudeville* were executed as if the company filed for tax credits as an entertainment performance group, instead of having hired performers (where PLAINTIFF had allegedly attempted such on his own through the I.R.S. and S.S.A., only to choose to file returns as a self-employed performer.

    a. Avoidance may also be due to administrators of *Cirque Du Soleil* simply not wanting to perform the process of adding him to a possibly filed performance troupe tax incentive.

67. As claimed, upon acceptance of waiver of sovereign immunity (U.S. Const. Am. 11; Fed. R. Civ. P. 11(c), 37), the S.S.A. and I.R.S., maliciously and intentionally conspire to obstruct the granting of exemption from foreign taxable insurance on earnings in order to oppress and impede upon provisions of the *US/CAN Totalization Agreement* of the *Canada-U.S. Treaty* (in opposition of U.S. Const. Am. 1, 4, 5, 8, 10, 14 §1), in turn, allowing Revenue Quebec to illegally claim taxable amounts for Social Insurance. 18 U.S.C. §§111, 241, 242, 371, 1001(a); 26 U.S.C. §§6049(b)(5(B)(ii), 6114(a)(1), 6038(c), 6204, 6233, 6301 et seq. (highlighting §6304(b)(3), "*engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass*"), 6316, 6401 et seq., 6414 to 6416, 6422(2), 6601(f), 6611, 6651, 6672(a), 6673(b)(3), 6682 (penalties determined upon investigation under §7602), 6701(a)(2), 6704, 6861 to 6864 ("*jeopardy*" relating to identity theft), 7201 to 7203, 7206(1), 7212(a), 7214(a) (U.S. employees), 7215, 7270, 7323 (forfeiture), 7622 (oaths and duty, under U.S. Const. Art. 1 §10, 6 §3), 7654(c); 42 U.S.C. §§1983, 1987 (nationality) and other provisions of law. See penalties related to the *Administrative Procedure Act* within the PRAYER FOR RELIEF (Part C.6). See also *UNITED STATES v. TEMPLE*, 342 F.Supp.2d 233, 236 (S.D.N.Y.2004), Docket Nos. 05-0165-CR(L), 05-0679(XAP) (2nd Cir. Ct., 2006), as such relates to the denial of *Cirque du Soleil* personnel refusing to handle tax matters for which U.S. Government agencies should have accomplished through vigilant due diligence with the Canadian Government:

> "*[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt*"]… *United States v. Guadagna, 183 F.3d 122, 130(2d Cir.1999) (internal quotation marks omitted)…*

> "*'Oppression' includes the 'unjust or cruel exercise of authority or power.'  Merriam-Webster's Third New International Dictionary, Unabridged 1584 (1993).  In criminal law, it is '[a]n abuse of office committed by a public official.'  Oxford English Dictionary Online, http://dictionary.oed.com/entrance.dtl (search for 'oppression')…*

> "*Although no 'bright line' separates actions taken under color of law from personal pursuits, Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir.1994), the 'relevant question' in determining whether an action was taken… 'is not whether the [action] was part of the defendant's official duties but, rather, whether the [action] was 'made possible only because the wrongdoer is clothed with the authority of [federal] law,'' Walsh, 194 F.3d at 51 (quoting Classic, 313 U.S. at 326, 61 S.Ct. 1031).*"

See also *Western New England Law Review* publication[32] (Vol. 31, Iss. 1, Art. 6, 2009), entitled "*CIVIL RIGHTS/TAX LAW–'UNDER COLOR OF' INTERNAL REVENUE LAWS: THE ROLE OF UNITED STATES v. TEMPLEAND SECTION 7214 IN THE 'UNDERCOLOR OF LAW' DEBATE*" (by Ms./Mrs. Sarah T. Biolsi):

> "*[see] Monroe v. Pape, which stated:[O]ne reason [§ 1983] was passed was to afford a*

---

FOOTNOTE 32: Source: "digitalcommons.law.wne.edu/cgi/viewcontent.cgi?article=1005&context=lawreview."

Page 49

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 50 of 72



*COMPLAINT*

*Southern District Court of the State of New York*

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 50

federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies[ (*'Monroe v. Pape, 365 U.S. 167, 180 (1961), overruled in part by Monell v.Dep't of Soc. Servs., 436 U.S. 658 (1978)*).]"

68. Due to being taxed dual income for PLAINTIFF employment within Canada, he insists upon redemption of earnings lost by the I.R.S. and S.S.A.'s claimed obstruction.

69. Due to such claims against the I.R.S. and S.S.A., PLAINTIFF requests an investigation be had through the intervention of financial regulators of the U.S. government, Canadian government and independent accountants, so as to inquire into this matter, which may possibly provide additional claims; as such is accompanied with requests for subpoenaed testimony and electronically recorded materials (specifically that of phone records of the I.R.S. and S.S.A.), including testimonies by I.R.S. and S.S.A. representatives, as such may provide further information into claimed illegalities pertaining to claims of economic espionage and antitrust offenses connected to the IRA of Trust LPSW).

70. As alleged, during PLAINTIFFs' communications with *Cirque du Soleil* (as such were to acquire equivalent tax records of W-2 forms to file with the Canadian Government), he was unable to obtain the sensitive tax documents, as such were in coordination with his "*Social Insurance Number*" granted to him from the Canadian Government) through the payroll service website utilized by *Cirque du Soleil*, "*ADP iPayStatements*" ("*ipay.adp.com*"), where such internet-based payroll system, when coordinated with claims of internet intrusion, has the strong likelihood of having induced identity theft.

   a. Furthermore, PLAINTIFF alleges, instead of having the ability to download payroll stubs from the *ADP iPayStatements* website, he had such sensitive confidential identifying salary and tax documents emailed to his *Google.com* mailing account (an unsecured email address, where PLAINTIFF allegedly had communications with *Cirque du Soleil's* "*Payroll Manager*," MS./MRS. "*Christine Leroque*;" available upon demand), for which may be further cause for concern relating to internet intrusion, antitrust related offenses and identity theft (whether or not domestically or within the territory of Canada, or other foreign territory) and claimed illegalities related to his tax filings with the I.R.S. (such as the claimed evidenced amended years of tax return filings executed without his consent).

      i. Additionally, as alleged, not all of PLAINTIFFs' salary pay periods were accounted for within his *ADP iPayStatements* member account, whereby he questions if such was simply an act of security protocol for the website, where such skipped listings of payment periods from the beginning to the end of his employment (having only a few payment checks accounted for in-between).

   b. Due to PLAINTIFFs': (i) secured U.S. Government files contained in his unsecured email; (ii) the inability to control internet intrusion; and, most importantly, (iii) use of open internet access while displaced, he insists upon a thorough investigation into the possible use and identity theft of himself within the government of Canada; as such seeks pretrial involvement with the Working Group (15 U.S.C.) and coordination with Canadian government agencies (such as "*Service Canada*") or officials.

### III.C.    THE LINDA WILLIAMS BENEFICIAL TRUST
### (LAST WILL & TESTMENT, CODICILS & TESTAMENTARY IRREVOCABLE/CUSTODIAL TRUST)

71. As aforementioned evidenced, DECEDENT initially formulated the creation of a signed *Last Will & Testament* with the law firm of *Paul & Rosen, LP*, thereafter having the testamentary instrument, along with accompanying documents (codicils and the testamentary instrument of

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 51 of 72   *COMPLAINT*

*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*   51



the **LINDA WILLIAMS BENEFICIAL TRUST**), transferred to **MR. VANN** (of **VANN, PC**), as legal representative holder of invaluable documents to **DECEDENTs'** estate.

72. It is exclaimed, to the best of PLAINTIFFs' knowledge, a few of the testamentary instruments, attached to **DECEDENTs'** *Last Will & Testament*, are as follows:
    a. a *Health Proxy*, connected to **DECEDENTs'** *MetLife Group Disability Plan*, acquired from previous her employment with the **NEW YORK TIMES**;
    b. a *Power of Authority* for **DECEDENTs'** father's estate (**MR. ABRAHAM SREGER**); and
    c. the irrevocable testamentary instrument of the **LINDA WILLIAMS BENEFICIAL TRUST**, naming PLAINTIFF as sole beneficiary, wherein such contained associated assets from:
        i. an IRA account, originally created with *Kirlin* (Ex. 5), referencing **JP MORGAN**) and **B.N.Y.** as the check clearing financial institutions, where **DECEDENT** assigned an appropriated value of no less than "*103,000*" be provided to PLAINTIFF upon her death or expiration of the trust's custodial age;
        ii. an appropriated amount of "*$75,000*" from various life insurance policies; and
        iii. an additional monetary cash amount of $500.

73. In furtherance of providing evidence of fact, the following citations from are from the evidenced LINDA WILLIAMS BENEFICIAL TRUST (Ex. 1), wherein it states:
    a. on the first page of the testamentary instrument (*Id.* at ¶1, 2(a), 2(b)):
        "*TRUST PROPERTY… transfer*[ of]*… the property* [is] *described in Schedule 'A' annexed hereto*[*… where any a*]*dditional property*[*… *] [is] *by inter vivos transfer*[*,… and wherein through*] *DISPOSITIVE PROVISIONS… *[t]*he Trustee shall hold, manage, invest and reinvest the Trust Estate, as set forth in article '3' of this Trust Agreement*[*,… wherein p*]<u>*rior to termination of this Trust any net income generated… shall be distributed… to or*</u> *for the benefit of the Grantor during her lifetime; and… *[u]<u>*pon the termination of this Trust the Trust Estate shall be paid and distributed to the Beneficiary Steven Williams*</u>[;]" [highlighting and emphasis added]
    b. on page five, titled under "<u>*IRREVOCABILITY:*</u>"
        "<u>*This Trust is irrevocable*</u>[;]" [highlighting and emphasis added] and
    c. on an undesignated page seven, specifying unique monetary details of amounts attached to the testamentary instrument:
        "*The Grantor has named… the Trust (the <u>Linda Williams Beneficial Trust</u>) <u>the beneficiary of the following assets</u>… *[a]<u>*ny sum in the Linda Williams IRA in the amount of… ($103,000)*</u>*… *[and ]<u>*insurance… in the amount of… ($75,000)*</u>[.]" [highlighting and emphasis added]

**III.D.**    **CLAIMS AGAINST AVROM R. VANN (AVROM R. VANN, PC)**
**III.D.1.**    **AVROM R. VANN: HISTORICAL LEGAL & ACCOUNTANT REPRESENTATIONS FOR MRS. LINDA PAULA STREGER WILLIAMS**
**III.D.2.**    **AVROM R. VANN: HISTORICAL LEGAL REPRESENTATIONS (PAUL & ROSEN, LP)**

74. On June 8, 2000, **DECEDENT** acquiring Ovarian Cancer (for eleven years on experimental medication, authorized by **MR. WILLIAMS, JR.** and PLAINTIFF; allegedly being DOXIL and Cisplatin, both currently <u>used by the internet for drug delivery</u>. <u>**See a forthcoming affidavit on the threat to human life, through use of nano-robotics and the internet when homeless**</u>), she received a letter (Exhibit 13) from **MR. STEVEN H. ROSEN** of the law firm *Paul & Rosen, LP* (once located at "*420 LEXINGTON AVENUE NEW YORK, N.Y. 10170*"), depicting the acquisition of services through the presentation of drafted testamentary instruments.
    a. Such letter contains written notes of **DECEDENT**, depicting a corresponding signer to the drafted testamentary instruments, with further references to a "*notary.*"
    b. Other notes (Ex. 12, *Id.* at 2) of **DECEDENT** signify filed documents, as listed, being:



**FITTED SOLE** PRODUCTIONS     FITTED FABLES A PUBLISHING COMPANY     *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.* *Southern District Court of the State of New York* *(Docket - TBD) (Dated December 13, 2019)*     52

"*Health Proxy*;" "[agraveur];" "*2 Wills*;" "*Power of Atty*."

75. To the best of PLAINTIFFs' knowledge, **MR. ROSEN** passed away and **DECEDENT** sought other representation, despite successive representation belonging to **MR. HAROLD PAUL.**

76. It is noted, while researching into background and any forwarding information on **MR. PAUL's** current location, occurring during PLAINTIFFs' displacement, he was unable to do so; however, when performing financial research into the IRA of the LINDA WILLIAMS BENEFICIAL TRUST through the *Securities and Exchange Commission* ("SEC") website, he allegedly executed an additional search of **MR. PAUL,** as well as any and all law firms related to *Kirlin Securities* (of *Kirlin Holding Grp.*), wherein an unconfirmed alternate address for **MR. PAUL** was found, located at North Brisa Fresca Dr. Box 33812 Santa Fe, NM 87506.

   a. One intriguing fact of the search results, **MR. PAUL** is the sole legal representative held accountable to the SEC for *Paul & Rosen, LP,* however, it is questioned if **MR. PAUL** acted as fiduciary of the IRA of the LINDA WILLIAMS BENEFICIAL TRUST prior to testamentary instruments transferred to **MR. VANN** or whether the transfer of assets happened immediately after the dissolving of *Kirlin* of Syosset, NY.

### III.D.3.   AVROM R. VANN: HISTORICAL LEGAL REPRESENTATIONS (JULIETTE LEVIN, ESQ.)

77. Aside from the reference documents previously mentioned within ¶71, one specific document, depicts **DECEDENTs'** notations and her use of legal services from **MS./MRS. JULIETTE LEVIN, ESQ.** ("**MS./MRS. LEVIN**," a probate attorney), specifically utilized for matters pertaining to PLAINTIFF himself, as indicated by DECEDENT (evidence available).

78. Unsure as to whether or not the acquisition of **MS./MRS. LEVIN's** services were associated to the LINDA WILLIAMS BENEFICIAL TRUST, communication was allegedly made with her by PLAINTIFF, wherein she stipulated the matter did not concern **DECEDENTs'** estate, however, was told to present her with letters testamentary from **S.C.N.Y.** for further information.

   a. As alleged, **MS./MRS. LEVIN's** withholding of information, even though justifiable, presents an environment for grounds to dispute her representation under S.C.P.A. §1813.

   b. The document of notations, it is added, contains further writings associated to PLAINTIFF and the LINDA WILLIAMS BENEFICIAL TRUST, as well as **MR. WILLIAMS, JR.** and **MS./MRS. BEVERLY NADLER** as being the named trustees for the LINDA WILLIAMS BENEFICIAL TRUST; where trustee duties are asserted as null and void upon PLAINTIFF having surpassed the custodial age clause of the trust's testamentary instrument.

      i. PLAINTIFF makes note, the date in which **MR. VANN** provided the LINDA WILLIAMS BENEFICIAL TRUST's testamentary instrument to **MR. WILLIAMS, JR.** being on or after the day of October 13, 2010 (<u>ten months of laches after his Thirtieth birthday</u>), signifying **MR. VANN** not only neglected his duty as a holder of testamentary instruments, but also implies he <u>had not</u> reviewed the documents in his possession; for, if he did, he would have contacted PLAINTIFF (as claimed sole beneficiary) due to trustee duties ceasing upon his custodial age, therefore being insolvent. E.P.T.L. §§7-1.5, 7-1.9, 7-2.6(a)(2).

   c. In light of the claimed neglect to provide the depicted custodial, irrevocable (12 C.F.R. §330.13), testamentary instrument of the LINDA WILLIAMS BENEFICIAL TRUST upon PLAINTIFF obtaining the age of Thirty by **MR. VANN (VANN, P.C.),** where neither of the named trustees are alleged to have contacted PLAINTIFF to satisfy obligations to the trust's signed testamentary instrument (evidenced as notarized by a **MS./MRS. SUSAN PENNY KORNBLUM**), this affidavit is presented (to the court of jurisdiction) as a formal document, releasing **MR. VANN (VANN, P.C.), MR. WILLIAMS, JR.** and **MS./MRS. NADLER** from their "*powers of appointment*," originally created by DECEDENT.  See E.P.T.L. §10-9.2(c)(3), "[r]*elease of a power of appointment... may be delivered... [to t]*<u>he *county clerk... in which the instrument creating the power is filed*</u>." [highlighting and emphasis added]

*COMPLAINT*
*Southern District Court of the State of New York*
In re.: *Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  | 53



i.   Prior to the claimed illegal eviction from Building 449, PLAINTIFF alleges, he contacted **MS./MRS. NADLER** to determine her role in **DECEDENTs'** estate and the **LINDA WILLIAMS BENEFICIAL TRUST**, who expressed she was under the impression the estate held no monetary value but the house at 40 Seneca and her Social Security Insurance benefits (for which **MR. WILLIAMS, JR.** lays claim to as spouse).

### III.D.4.    AVROM R. VANN: SUCCESSOR LEGAL REPRESENTATIVE; HOLDER OF TESTAMENTARY INSTRUMENTS & FORCED DIVULGENCE FROM THE MARZEC LAW FIRM

79.  On October 3, 2003, after the death of **MR. ROSEN**, a written letter (Ex. 12, *Id.* at 3) was given from a newly acquired lawyer, **MR. VANN** (of VANN, PC), to whom provided legal services to both **DECEDENT** and **MR. WILLIAMS, JR.**, whereby the letter was acquired by **DECEDENT** through a telephone call to **MR. VANN** (signified by "*called 12/11/03 for copies.*") of a correspondence between *Paul & Rosen, LP* and **MR. VANN** (VANN, PC).

   a.  As asserted, the letter of correspondence is prima facie of **VANN, PC** representatives transferring testamentary instruments, and **MR. VANN's** completion of a *Last Will & Testaments* (as new acquired clients. S.C.P.A. §1406), confirming the "*execut*[ion of] *codicils... and* [other] *revisions*" as being a contractual agreement made of **DECEDENT**, **MR. WILLIAMS, JR.** and **MR. VANN** (VANN, PC), not simply requisitioning documents. E.P.T.L. §5-1.1-A(6)(1)(F); S.C.P.A. §1404(5)(a)(1) ("*authenticity of inception*").

   b.  The letter additionally references **MR. VANN's** employee, "*Sue*," as well as evidencing a previously formed relationship between the two legal representatives, **MR. ROSEN** and **MR. VANN**; axiomatic from **MR. VANN's** closing statement upon page one, where he stated, "[a]s *always*,..."

   c.  Such as it is, **MR. VANN** provided **DECEDENT** with unsigned copies of his letter.

   d.  The most intriguing feature of the letter, asserted as the reasoning behind his previously stipulated attempt to "compare" the *Last Will & Testament* in his possession to computer files of **MR. VANN** within **S.C.N.Y.** (File No. 2013-3538(SCNY)), is the computerized *file path*, shown at the end of the document (originating from either **MR. VANN's** personal or professional computer), signified as:

   "*C:\WORD\Williams\Paul_2003-10-3.DOC.*" [emphasis added]

80.  Unaware of **MR. VANN's** successor existence, PLAINTIFF, immediately following **DECEDENTs'** death, allegedly waited to hear word of the probate of her estate (or a reading of the Will), figuring **DECEDENTs'** attorney (*Paul & Rosen, LP*) would contact him.

   a.  PLAINTIFF alleges, inquiry was made of probate for **DECEDENTs'** estate with **MR. WILLIAMS, JR.**, at the time grieving her passing, yet resisted from pressuring him, or even into providing a copy of the *Last Will & Testament*.

81.  Subsequently, PLAINTIFF procured the services of *Marzec Law Firm, P.C.*, to determine the identity of **DECEDENTs'** new legal representative and acquire a copy of her Will (see Ex. 3.4).

   a.  Immediately prior to hiring the services of *Marzec Law Firm*, unbeknownst to PLAINTIFF, **MR. WILLIAMS, JR.** contacted **MR. VANN**, notifying him of **DECEDENTs'** passing and to allegedly acquire accompanying testamentary instruments of both **DECEDENT** and himself, specifically "<u>*Last Will & Testament and the beneficial trust*</u>."

      i.   Such is alleged to be proven axiomatic within a letter (Ex. 12, *Id.* at 4) from **MR. VANN** to **MR. WILLIAMS, JR.** (dated October 13, 2010, claimed as being ten months of legal malpractice laches after the date of the **LINDA WILLIAMS BENEFICIAL TRUST's** custodial clause for PLAINTIFF's Thirtieth birthday on December 19, 2009).

      ii.  As claimed, the above referenced laches not only signify **MR. VANN's** blatant disrespect for beneficiaries, but also for third-party clients and the legal profession (as a holder of testamentary instruments); claimed as implying neither **MR. VANN**, nor any

Case 1:19-cv-11547-CM   Document 2   Filed 12/13/19   Page 54 of 72
*COMPLAINT*
*Southern District Court of the State of New York*





representative of **VANN, PC**, had reviewed the testamentary instrument of the **LINDA WILLIAMS BENEFICIAL TRUST** held within their possession, for, if they had, they would have immediately contacted PLAINTIFF (as named "sole beneficiary." Ex. 1, *Id.* at 1, "[u]*pon termination of the Trust the Trust Estate shall be paid and distributed to the Beneficiary Steven Williams.*"), despite trustee duties technically ceasing (see ¶75(b)(i)).

b. As proven within the letter, **MR. WILLIAMS, JR.** was additionally requested, in return, for a "*countersign*[ature]."

c. The letter, as emphasized, additionally contains evidence of a computer's file path from the personal or professional computer of **MR. VANN**, depicted as:

"*C:\word\Williams\Williams_Eugene*[ ]*2010-10-13.doc*"

   i. As highlighted, PLAINTIFF is unaware as to whether or not the space contained in the above quoted text, depicted as "[ ]," is a typo by **MR. VANN**; being under the assumption a computer's file path should never contain a blank space.

82. After first acquiring the services of *Marzec Law Firm* (Ex. 12, *Id.* at 5), PLAINTIFF was informed by the firm of **MR. VANN** being the named "holder" of all testamentary instruments to **DECEDENTs'** estate, as well as instruments of **MR. WILLIAMS, JR.**, wherein **MR. VANN** was contacted by *Marzec* shortly after to divulge a copy of **DECEDENTs'** *Last Will & Testament*.

a. After **MR. VANN (VANN, PC)** was contacted, **MR. WILLIAMS, JR.** allegedly provided PLAINTIFF with a copy of **DECEDENTs'** *Last Will & Testament*, (the copy of claimed stolen; see DISCLAIMER #1), as being an intermediary to **MR. VANN**. S.C.P.A. §1407; U.P.C. §2-503 ("*clear and convincing evidence*," as such is "*Substantial Compliance*"). See *HORNSTEIN v. PODWITZ*, 254 N.Y. 443, which provided for the existence of a valid Will.

83. As alleged, immediately after obtaining a copy of **DECEDENTs'** signed *Last Will & Testament*, PLAINTIFF contacted **MR. VANN**, via email (Ex. 12, *Id.* at 6), requesting additional information concerning the testamentary instrument, as well as the instrument's reference to the **LINDA WILLIAMS BENEFICIAL TRUST's** testamentary instrument, wherein **MR. VANN**, as evidenced within various emails (see PART III.C.5), denied having any legal commitment to PLAINTIFF as a third-party client.

### III.D.5.   AVROM R. VANN: LEGAL MALPRACTICE
### (EMAILED CORRESPONDENCES W/ CESTUI QUE STEVEN TALBERT WILLIAMS)

84. On August 17, 2012, the day following PLAINTIFFs' first appearance within **N.Y.H.C.**, *ST OWNER, LP v. WILLIAMS*, Index No. 52069/12(JHS)(NYHC) ("*JHS-001*") (aforementioned evidenced), concerning the claimed illegal eviction from **DECEDENTs'** leased real property of Building 449, he allegedly placed a visit to **MR. VANN**, at the offices of **VANN, PC's** Lexington Avenue address, in attempts to acquire an "officially" verified version of **DECEDENTs'** *Last Will & Testament* to present to the Housing Court as evidence of her estate's insolvency.

a. Upon entering the lobby, security officers telephoned the law firm to grant him entry.

b. Upon entering the upstairs offices of **VANN, PC**, PLAINTIFF was allegedly greeted by two employees (one being a secretary, a middle-aged woman, and an older gentleman), both of whom allegedly informed him of **MR. VANN** being absent from the office, stating he was located at his office in Long Island, NY.

85. Proof of insolvency for **DECEDENTs'** estate would have been vital to achieving a victory over the owners of PCV/ST within *ST OWNER, LP v. WILLIAMS*, Index No. 52069/12(Chan)(JHS)(NYHC), wherein such would have proven **DECEDENT** had previously obtained a renter's insurance policy (under **STATE FARM**; Ex. 4), that of which, as claimed, went knowingly and maliciously closed due to lapse in premium payments, for which attempted to repay as being <u>the only liable successive holder previously attached to the policy</u> (as though **DECEDENT** had prior intentions of having a renewal lease for the dwelling of Building 449

**Page 54**



*COMPLAINT*
*Southern District Court of the State of New York*

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    55

solely in PLAINTIFFs' name, under rent stabilization right for succession. 9 NYCRR §2522.8).

   a. Furthermore, the **STATE FARM** renter's insurance policy of Ex. 4 covered property loss for up to the amount of "*$25,000*," as such is claimed prima facie that, due to the insurance policy and insolvency of **DECEDENTS'** estate (ISC §3420(a)(1)), such would have satisfied any and all disputed back due rents owed upon the apartment dwelling of PCV/ST's Building 449 (for which surround the disputed eviction); thereby proving illegal actions by **ST OWNER, LP, CWCAM** and **BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL.**

86. The following are two detailed emailed correspondences (Ex. 12, *Id.* at 7; dated August 18 & 19, 2012), between PLAINTIFF ("*stwlegal@gmail.com*") and MR. VANN ("*a2442@aol.com*"), claimed as being prima facie of further claimed legal malpractice:

   a. On August 18, 2012, PLAINTIFF contacted **MR. VANN**, requesting a meeting as named "*alternate Executor*" (Ex. 3, ¶3(a) of Will, *Id.* at ) of **DECEDENTS'** estate. S.C.P.A. §1805.

      i. It is mentioned, PLAINTIFF embellished within the email, attempting to exemplify the extreme urgency for the need to obtain verified proof of the insolvency **DECEDENTs'** estate, specifically in light of his adjourned court date for Index No. 52069/12(JHS)(NYHC) ("*JHS-002*").

      ii. The email of Ex. 12 (*Id.* at 7), makes reference to an unsigned and notated *Last Will & Testament* of **DECEDENT** and a revised version, signed by all witnesses and legal representatives, for which PLAINTIFF wished to compare to MR. VANN's records.

      iii. Subsequently, due to being unfamiliar with the legal process of client-lawyer relationships at the time, PLAINTIFF blamed **MR. WILLIAMS, JR.** for the claimed neglect to probate **DECEDENTs'** *Last Will & Testament.*

      iv. Within the email, PLAINTIFF further embellished how **MR. WILLIAMS, JR.** had not settled "*any debts*" of **DECEDENT**, knowing such to be untrue, wherein he had previous knowledge of a few banking and insurance assets which had been attended to.

         (a) Such embellishment was allegedly provided to **MR. VANN** simply in order to have expedited action for his requests.

      v. Embellishment continued when PLAINTIFF made reference to **MR. WILLIAMS, JR.'s** disassociation from himself; alleged as being an attempt to coordinate with **MR. VANN** as a third-party client (by beneficial right) and to assume executor duties; which, as claimed, **MR. VANN** and other legal representatives of **VANN, PC** should have been aware of; if, that is, review of the actual *Last Will & Testament* was had.

      vi. Furthermore, as claimed, **MR. VANN** should have noticed the lapse in executor duties by **MR. WILLIAMS, JR.**, due to **DECEDENTs'** passing being nearly two years prior to their emailed correspondences;

   b. On the following day, August 19, 2012, **MR. VANN** replied to the email, where, as claimed, the opening sentence proves not only the attorney's lack of attorney-client compliance to beneficiaries, but also complete disregard to the legal craft, the sanctity of contractual obligations, ethical standards, as well as canons of the ABA (claimed to be a member of the qualifying legal authority and third-party contracted employee of the *Judicial Conference*, of the U.S.D.O.J.), wherein the sentence reads:

      "*I regret that I am not in a position to be of assistance to you.*" [emphasis added]

      i. MR. VANN's reply email, as evidenced, continued by allegedly taunting him (as puffery), making reference to instituting legal proceedings as the only recourse available to havematters settled, stating:

      "[y]*our attorney presumably knows what proceedings have to be instituted to enforce any rights.*" [highlighting and emphasis added]

      ii. MR. VANN is claimed to have blatantly excused himself from contractual duties, stating: "*I cannot involve myself on your behalf...*" [highlighting and emphasis added]



FITTED SOLE
PRODUCTIONS

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 56

    iii. MR. VANN continued allegedly claiming his duties as a lawyer were obligated solely to **MR. WILLIAMS, JR.** and, therefore:

        "*cannot create any conflict of interest.*" [highlighting and emphasis added]

    iv. The mere statement alone, as claimed, indicates **MR. VANN's** malicious, willful and knowing attempt to induce division between **MR. WILLIAMS, JR.** and PLAINTIFF, violating nearly every ethical code to legal canons in one brief sentence.

87. After the emails of August 18 & 19, PLAINTIFF allegedly placed another visit to VANN, PC's Lexington Avenue offices, whereby security officers once again telephoned the office and were, as alleged, specifically not to grant him entry.

    a. One further attempt was made to have a meeting with **MR. VANN** at his Lexington Avenue office, this time, however, being told to exit the building and not to step foot on the premises again by security officers, who, allegedly, never attempted to contact the VANN, PC office.

88. In order to verify the multiple attendances of PLAINTIFF at the Lexington Avenue office building of VANN, PC, subpoena is requested for electronically recorded video surveillance (PEN §240.20(g)) in order to emphasis his blatant disposal and challenges befallen upon a deprived and displaced individual with beneficial rights.

    a. Further investigation is sought so as to prove security officers of the building did not intentionally restrict PLAINTIFF access due to his appearance alone while displaced or through any affiliations which may or may not be corresponding to enterprise corruption (such as retirement accounts of the *New York State & Local Retirement System*).

89. On March 26, 2013, PLAINTIFF, as evidenced (Ex. 12, *Id.* at 9), made further correspondence with **MR. VANN**, via email, representing himself this time as a separate business entity, wherein he recently established a "*Doing Business As*" under the name of *Fitted Sole Productions, D.B.A.*; as such was presented to the legal representative as though he had never made contact prior to the creation of the business.

    a. However, PLAINTIFF made **MR. VANN** aware of being prepared to report any further neglect to settle **DECEDENTs'** estate "*to the IRS, SEC, and other* [government] *agencies*[.]"

90. The following day, March 27, 2013, **MR. VANN** sent a reply email, stating:

    "*It is your father who is named executor, who needs to make any request of me...* [as such are] *proper procedures.*" [highlighting and emphasis added]

91. On March 28, 2013, PLAINTIFF wrote a reply email (Ex. 12, *Id.* at 10), expressing to **MR. VANN** the lapse in time to probate **DECEDENTs'** estate, as well as **MR. WILLIAMS, JR.** allegedly attending a grievance program within the *Salvation Army* without completing responsibilities related to the estate, enforced as providing PLAINTIFF contractual rights to assume executor duties, as he hoped **MR. VANN** was well aware of.

    a. The email additionally reminded **MR. VANN** of the law surrounding "*Power of Appointment*" and E.P.T.L. §10 ("*part 6.5*"), wherein PLAINTIFF even referenced the case of *THOMPSON'S ESTATE*, 80 N.Y.S. 2d 1 (N.Y. App. 1948).

    b. PLAINTIFF further expressed to **MR. VANN** within the email that he did not, in fact, need to have **DECEDENTs'** estate probated to claim assets in the LINDA WILLIAMS BENEFICIAL TRUST; despite the contractually allocated life insurance policies mentioned within the trust's testamentary instrument and presented to **MR. VANN** as though he had not viewed the testamentary instrument claimed stored on his personal or professional computer (see ¶¶79(d), 81(c)).

    c. In closing of PLAINTIFF email, he exemplified to **MR. VANN**:

        "*according*[ly]... *you, being holder of the extremely invaluable document*[s] *should adhere to such laws of the state of N.Y.* [a]*s well as the Will's contents...,*" [highlighting and emphasis added]

92. On the same day (March 28, 2013; Ex. 12, *Id.* at 11), **MR. VANN** replied to PLAINTIFFs' email



FITTED SOLE PRODUCTIONS    FITTED FABLES *A PUBLISHING COMPANY*    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    57

claiming disassociation to his rights as entitled alternate Executor, leaving such a determination to be proven by "*a court of competent jurisdiction*," as though the laws encompassing estates and contracts were unbeknownst to **MR. VANN**, or any other employed individual within **VANN, PC**; wherein such blatant disrespect for statutory provisions, when seen with other claimed liable laches, are claimed as <u>grounds for disbarment</u> (U.S. Const. Am. 11, DR §9-102, and Fed. R. Civ. P. 11(c), 37). See IN RE ADDAMS, 579 A.2d 190 (D.C. 1990) (en banc).  See also *REID v. MISSISSIPPI STATE BAR*, 586 So. 2d 786 (1991), "*mishandling other peoples' money is... the capital crime of a lawyer to his profession. Odom, supra; Mississippi State Bar v. Moyo, 525 So. 2d 1289 (Miss. 1988)*." See also *North Carolina Central Law Review* (Vol. 21, Art. 8, No. 2), entitled "*A New Standard for Disbarments: Misappropriation through Gross Negligence - North Carolina State Bar v. Ford*" (by Mr. Michael J. Dayton, dated October 1, 1995):

"*any misappropriation severe enough to warrant disbarment has always been accompanied by a finding that the lawyer acted with dishonest intent or motive*[ ('[w]*hile specific intent to misappropriate client funds was always an element in past disbarments, it was not necessary that the lawyer directly take the money. In at least one case, the Disciplinary Hearing Commission disbarred an attorney who directed his support staff to misappropriate funds. See North Carolina State Bar v. Johnson, 90 DHC 2*)]."″

a.  As claimed, **MR. VANN** taunted PLAINTIFF, through an additional act of puffery (U.S. Const. Am. 1), exclaiming legal action is the only solution; expressing this email would be:
"*the last email* [he] *will respond to*,".

b.  As stated, **MR. VANN** *did* provide PLAINTIFF legal advice, as a member of the ABA should.

c.  Ultimately, **MR. VANN** is claimed to have conspired to created division within Williams family (under EC §5-15, 18 U.S.C. §§241, 371), claiming the legal representative is not obligated to any client other than **MR. WILLIAMS, JR.**, or any discrepancy had between the two family members, wherein stating he is:
"*not a party to that dispute...*,"
thereby violating contractual obligations to **DECEDENT** and any beneficial third-party client. See "*Estates and Trusts*," by Stewart E. Sterk, Melanie B. Leslie, Joel C. Dobris, stating:
"*clients* come *to lawyers with objections in mind: they want to assure that their property reaches its intended beneficiaries; they want to minimize taxes; they want to protect beneficiaries from creditor claims... [The lawyer, therefore, is]* to help the client achieve her objectives... [and] *act as a wise counselor.*"

93.  Due to **MR. VANN** claimed malicious intent to not assist PLAINTIFF as a third-party client, an investigation is sought into **MR. VANN** or employee of **VANN, PC** in any way associated to the claimed illegally reinvested assets of the LINDA WILLIAMS BENEFICIAL TRUST, yet holds **MR. VANN** liable (under EC §5-8, DR §9-102) for providing the appearance of mishandling funds during the ten month period after the expiration of his custodial age and prior to releasing the testamentary instrument to **MR. WILLIAMS, JR.**  See also *NORTH CAROLINA STATE BAR v. MULLIGAN*, 101 N.C. App. 524, 400 S.E.2d 123 (1991), "*removing his client's funds from his trust account and appropriating those funds to his own use... by the facts found*[.]"

**III.D.5.a.**    AVROM R. VANN: LEGAL MALPRACTICE
(CHARACTER OF MR. AVROM R. VANN: PRIOR TRIALS PROVING LEGAL MALPRACTICE)

**III.D.5.a.i.**    AVROM R. VANN: LEGAL MALPRACTICE: CHARACTER
("*TED LAPIDUS V. VANN*." SANCTIONS PLACED UPON MR. AVROM R. VANN)

94.  In the trial of "*TED LAPIDUS v. VANN*[,] *77 XYZ*,"[33] as such matter dealt with a trademark dispute, PLAINTIFF states, Justices "*FEINBERG and PARKER*" "*awarded [Plaintiff] sanctions*

FITTED SOLE
PRODUCTIONS.
FITTED   FABLES
A PUBLISHING COMPANY



against… [MR. VANN ]*sua sponte under 28 U.S.C. §1927 in the amount of $10,000,"* wherein the federal court stated MR. VANN " *failed to comply with procedural requirements of Rule 11.'*"

a. In June of the year 1995, MR. VANN and MR. STANLEY WARNER (president and C.E.O. of *77 World Design, Inc.*) filed a *"'Third Party Complaint'… for breach of the seizure order and for false arrest of Warner."*

b. In July of the year 1995, *"Adams threatened to seek sanctions against* [MR. VANN ]*and defendants for filing a frivolous claim*[.]"

c. In September of the year 1995, MR. WARNER and MR. VANN *"moved to disqualify"* the legal representative of MR. LAPIDUS, whereby:

"*[t]he district judge denied the motion, pointing out that bringing a motion to disqualify counsel on ground that*[ MR. VANN] *himself demonstrated bad faith."* [emphasis added]

d. After MR. ADAMS moved *"to strike the third-party complaint and for Rule 11 sanctions*[,]" he attached a memorandum *"assert*[ing… MR. VANN's] *motion improper under Fed.R.Civ.P. 14*[.]"

e. MR. VANN and MR. WARNER attempted then to file a supporting affidavit, nunc prop tunc, whereby MR. LAPIDUS argued the procedure violated *"safe Harbor' provision*[s]."

f. After MR. VANN attempted to file documents nunc pro tunc, for the alleged "*improper*" motion, the District Court judge denied such for lack of *"jurisdiction over the claims in the third-party complaint,"* wherein MR. VANN withdrew the complaint by dismissal.

g. Consequently, due to MR. LAPIDUS' non-compliance to Rule 11, by not separating the sanction demand, on August 6, 1995, the judge provided an alternative ruling to enforce sanctions against MR. VANN, stating *"nonetheless… the provisions… better capture the impropriety of*[MR. VANN's] *actions."* [highlighting and emphasis added]

### III.D.5.a.ii.  AVROM R. VANN: LEGAL MALPRACTICE: CHARACTER
### ("*VANN V. HOME INSURANCE CO.*:" NEGLECT TO COMMENCE IN APPROPRIATE TIME)

95. In the trial of "*VANN v. HOME INSURANCE CO.*," 288 A.D. 2d 60 (2001), 733 NYS 2d 13,[34] PLAINTIFF states, MR. VANN apparently:

"*fail*[ed] *to take any steps to void the settlement although almost immediately made aware of it, and indeed by failing to voice any meaningful objection to it until commencement of the instant action more than three years later (see, Suncoast Capital Corp. v Global Intellicom, 280 A.D.2d 281, 281-282)."* [emphasis added]

### III.D.5.b.  AVROM R. VANN: LEGAL MALPRACTICE: INVESTIGATIONS

96. Due to MR. VANN's claimed malicious avoidance to attend to probate of DECEDENTs' estate, as well as her accompanying testamentary instruments, an investigation is sought into whether MR. VANN's actions were in corroboration with: (i) past and previous owners of PCV/ST, (ii) the fiduciary financial institutions of the LINDA WILLIAMS BENEFICIAL TRUST, or (iii) the legal representation for TRUST2007-C30 (and PCV/ST's law firm for the trust, VENABLE, LLP.

a. As highlighted, the sought after investigation, additionally concerns the BONDHOLDERS of TRUST2007-C30, where CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM ("CALPERS"); CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM  ("CALSTRS")

---

FOOTNOTE 33: "TED LAPIDUS v. VANN 77 XYZ" - "TED LAPIDUS, S.A., Plaintiff-Appellee, v. Avrom R. Vann, Esq., Appellant, 77 World Design, Inc., Designers Only, Inc., Names for Dames, Inc., Stanley Warner, Rochelle Pazer, Jack Welikson, various John Does, Jane Does and XYZ Companies (unidentified, Defendants. No. 1176, Docket 96-9043. Decided: April 25, 1997."
  Source: "http://caselaw.findlaw.com/us-2nd-circuit/1096961.html"
FOOTNOTE 34: "VANN v. HOME INSURANCE CO.," 288 A.D. 2d 60 (2001), 733 NYS 2d 13," "AVROM R. VANN, et al., Appellants, v. HOME INSURANCE CO. et al., Respondents, et al., Defendant, Appellate Division of the Supreme Court of the State of New York, First Department. Decided November 13, 2001. Concur - Rosenberger, J.P., Tom, Rubin, Buckley and Marlow, JJ."
  Source: "http://www.leagle.com/decision/2001348288AD2d60_1256/VANN%20v.%20HOME%20INSURANCE%20CO."

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 59 of 72

*COMPLAINT*
*Southern District Court of the State of New York*
*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    59



(**BONDHOLDERS**) were directly utilized within the tranched trust of and by the *New York State & Local Retirement System*, and where **DEUTSCHE BANK** is the managing entity of the retirement system which supplies retirement accounts to the **NEW YORK POLICE DEPARTMENT** (previously sought as a defendant for racketeering, economic espionage and corruption of enterprise claims within the trials of *WILLIAMS v. UNITED STATES, ET AL.,* 15cv5114(LAP)(SDNY), 16-189(ALK)(DJ)(BDP), 137 U.S. 1611(2017) (Index No. 16M111)(U.S. S.Ct., Mar. 15, 2017)); and (ii) *WILLIAMS v. UNITED STATES, ET AL.,*18cv1264(LLS)(SDNY), 19-39(2ⁿᵈ Cir.)(denied on appeal))

   b. Furthermore, the sought after investigation into **VENABLE, LLP**, additionally concerns **DREYFUS FUND, INC. (DREYFUS CORP.,** subsidiary of B.N.Y.), an alleged tranche to **TRUST2007-C30**, where **VENABLE** is evidenced as a legal representative of **DREYFUS** (B.N.Y.) (see a SEC filing (EX.99), entitled "*OPINION AND CONSENT OF VENABLELLP,*" dated January 21, 2014), as well as to **BANK OF AMERICA** and CWCAM.

**III.E.**    **DOMESTIC HOUSING TERRORISM:**
        **ANTITRUST CLAIMS AGAINST THE FINANCIAL INSTITUTIONS OF THE**
        **LINDA WILLIAMS BENEFICIAL TRUST & PETER COOPER VILLAGE/STUYVESANT TOWN**

**III.E.1.**    **DOMESTIC HOUSING TERRORISM: A HISTORICAL REFERENCE**

97.  At the turn of the 20th Century, the **UNITED STATES** accumulated foreign debt through use of War Savings Bonds, whereby the *Federal Reserve Act of 1913* was enacted, as well as:
   a. the shepardizing of the U.S. Const. Am 16 to include the levying of income tax;
   b. the amending of the *Revenue Act* during the year 1918, where such "*lower*[ed] *the number of exemptions and greatly increase*[ed] *tax rates;*"³⁵ and
   c. the shepardizing of the *Revenue Act* in 1921, enacted through **MR. ANDREW W. MELLON** (of B.N.Y., the then U.S. Secretary of U.S. TREAS.), to utilize even higher rates in sales tax upon wealthier U.S. Citizens and corporations to stabilize the nation's debt; as such is referenced within an *American Economic Association* publication³⁶ of an *American Economic Review* (Vol. 12, No. 1, March 1922), entitled "*The Revenue Act of 1921*" (by Roy G. Blakey), wherein such is cited as stating the revised *Revenue Act*.
      "*is the result of a rather long and spirited contest between those who desired to reduce the rates of the Revenue act of 1918 upon large incomes, profits and wealth and those who opposed such reductions or who, at least, opposed the shifting of greater burdens upon the masses through sales and other taxes.*"

98.  Restrictions upon the use of tax-exempt funds of the U.S. Government, provided within the provisions of the *Revenue Act* (as amended), evidenced within *MURRAY v. LAGUARDIA*³⁷ ("Matter of Murray"), stating "*no such exemption may be granted or authorized for a period of more than sixty years*[.]" [highlighting and emphasis added]

99.  As a solution to the acquired debt, other than the increase of surcharges, the **UNITED STATES** used War Savings Bonds and, thereafter (post the Great Depression), attempted to eliminate the use of such bonds of lesser value sitting stagnant within the treasury, which further led to the use of War Savings Bonds as tax-exempt bonds by corporations (such as *Metropolitan Life Insurance Co.,* "*MetLife*") within affordable housing Acts.

100. The affordable housing Acts' sixty year limitation (Matter of Murray), led to the enactment of the *Reconstruction Finance Corporation Act of 1932* and New York State's *Hampton-Mitchell*

---

FOOTNOTE 35: See a History.com publication, entitled "1917 War Revenue Act passed in U.S."
  Source: "http://www.history.com/this-day-in-history/war-revenue-act-passed-in-u-s."
FOOTNOTE 36: See the American Economic Association publication of "The Revenue Act of 1921."
  Source: "http://www.jstor.org/stable/1801769."
FOOTNOTE 37: See Matter of Murray, 180 Misc. 760 (N.Y. Misc., 1943), 291 N.Y. 320, 52 N.E.2d 884.



Redevelopment Companies Act of 1943 ("Hampton-Mitchell Act"), which led to the assistance of **MAYOR FIORELLO H. LAGUARDIA**, with *MetLife* (as a "*wholly owned subsidiary.*" See Matter of Murray), in constructing the PCV/ST community as a "*Redevelopment Compan*[y,]... *pursuant to the requirements of section 15 of the Redevelopment Companies Law, McK Unconsol. Laws*[ (]§*3415*[)]" in 1943 and to form rent stabilization laws of the early 1970's,. See *American Land Planning Law: Case and Materials, Vol. 2* (by Jr. Williams)[38], delineating:

> "[t]*he entire cost of...* the construction project*...* represents an investment of not less than of $90,000,000 of private funds held by [*MetLife*] for the benefit of its more than thirty-three million policyholders" [emphasis added]

101. The affordable housing Acts and tax-exempt municipal bonds, associated to Redevelopment laws of New York State, were additionally utilized by *MetLife* in the construction of the *Empire State Building* and **ROCKEFELLER CENTER** .

102. In light of the construction of the PCV/ST community, with the use of tax-exempt securitized municipal bonds (appropriated to the State of New York), with specified federal limitations of "*$349,000,000 in residential*"[38] ("*in forty-four cities*"), restricted any Redevelopment Corporation from reinvesting in foreign markets (see *Hampton-Mitchell Act*, as such may have otherwise been a conflict of paying off foreign debt through the federal government).

103. As claimed, local governments, in coordination with major corporations, attempted to conceive alternatives to addressing such foreign investment restrictions limiting growth in investments.

104. As alleged, the solution utilized by the **UNITED STATES** was the enactment of the *Garn-St. Germain Depository Institutions Act of 1982*, deregulating banking institutions (initially regulated through the *Securities Act of 1933*), thereby, providing a viable opportunity for the financial industry in America, and as a whole, to test their limitations of investment strategies, so as to determine the breadth of financial expansion within a condensing chest of regulations.

   a. In other words, to essentially individualize and categorize regulations to provide for other funding alternatives; such as the use of *Commercial Mortgaged-Backed Securitized* ("CMBS") loans within investment tranches, as well as the use of sub-prime mortgages.

      i. Despite such good intentions to expand the financial industry, what followed thereafter was the 2000-2010 Housing Crisis.

### III.E.1.a  DOMESTIC HOUSING TERRORISM: A HISTORICAL REFERENCE
### (UNCONSTITUTIONAL USE OF TAX-EXEMPT BONDS)

105. Highlighted as pertinent factor for establishing motive for why PCV/ST sought the removal of tax-exemption for the raising of units to market-rate prices and PLAINTIFFs' eviction, the historical event of *CITY OF CHICAGO ET AL. v. BANK OF NEW YORK MELLON* ("Matter of CW"), No. 11-05459 (SDNY), 914 F.Supp.2d 422 (SDNY, 2012), 297 F.R.D. 218 (SDNY, 2013), 775 F.3d 154 (see 156-158) (US App. Ct., 2014),are depicted, which is said to have brought about all the future calamites which befell upon the LINDA WILLIAMS BENEFICIAL TRUST, as well as the associated real property asset of **DECEDENT** in Pennsylvania (40 Seneca) and advanced the delineation of regulations for repurchasing ("repo's") within the financial industry in terms of contractual agreements and sub-prime lending, where securitized investments were further distributed through the *Federal Reserve Bank of New York* (within the *Maiden Lane II* and subsequent auctions) and utilized in the investments of PCV/ST's CMBS trusts through **BLACKROCK**;

106. Matter of CW, as alleged, was a conspired scheme to take advantage of a *Trust Indenture Act of 1939* oversight, allegedly supported by the *Securities and Exchange Commission* ("SEC") in their "*interpretive guidance*[,] on the SEC website[,]... indicat[ing] that PSA-governed RMBS

---

FOOTNOTE 38: See The American Contractor, Vol. 42 (Oct.-Dec. 1921). Id. at 29, Dec. 10, 1921.
   Source: "https://babel.hathitrust.org/cgi/pt?id=nyp.33433057658837;view=1up;seq=839;size=75."



*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 61

[('*Residential Mortgage-Backed Securities*') ]*certificates* [were] *exempt from the TIA pursuant to § 304(a)(2)*' (see Matter of CW[39]); regarding provisions of a *Pooling and Servicing Agreement* ("POA," 15 U.S.C. §§77aaa-77aaaa), where certificateholders of **B.N.Y.** (having voting rights and attendance of board meetings) were owed diligent care to look after the: "*contractual* [ ] *duties under the trusts' governing agreements, and statutory duties imposed by the TIA*[,... when **C.W.**] *became aware of a material breach...* [and] *did not act to remedy the breach*[,]... *there*[by] *hav*[ing] **a duty to enforce** [C.W.'s] *repurchasing obligation and*[... to] *inform*[ ]*certificateholders...* [of] *document deficiencies*[,... which] *made it more difficult to foreclose on delinquent loans, causing losses*[.]"

107. As alleged, the use of tax-exempt bonds after the shepardizing of *Revenue Acts of 1918, 1921* and *1932* led to the utilization of tax-exempt bonds within **COUNTRYWIDE FINANCIAL CORP.** ("**C.W.**," of **B.N.Y.**) RMBS's, where "*Congress enacted the TIA in 1939 to address perceived abuses in the bond market*' (See Matter of CW); as such use of tax-exempt bonds after World War I and the Great Depression, <u>accruing extreme amounts in foreign debt</u>, was the bases for which the U.S. Appellate Court made their determination.

108. According to Matter of CW (297 F.R.D. 218 (SDNY, 2013), Slip Op. *Id.* at 9) RMBS's were: "'*in form and function to bonds issued under an indenture,*'... [and] '*resemble debt,*' *as defined by federal tax law. Id. at* [914 F.Supp.2d 422, ]*428, 429 (quoting Ellington Credit Fund, Ltd. V. Select Portfolio Servicing, Inc., 837 F.Supp.2d 162, 182 (S.D.N.Y.2011)) (internal quotation marks* [and original highlighting ]*omitted*[, with emphasis added])*.*"

109. It is alleged, it was the "debt" portion of bond investments, which Congress wished to avoid through enacting the TIA, thereby avoiding any misinterpretation of which a corporate entity is exactly responsible for the repayment of foreign debt accrued; keeping the government, as a federal corporation, solely liable and avoiding the intervention by private enterprise.

110. The scheme, as claimed, comes about when examining certain statutory provisions of the TIA, 15 U.S.C. and local statutes, indicating the likelihood of corporations and certificateholders conspiring to return government issued bonds (limited in investment strategies).

   a. In layman's terms, corporations wished to utilize the "repurchasing" obligation, within a PSA (in compliance with the TIA), to return bonds of debt to the federal government (after their maturing) by specifically inducing a late filing of a document with the SEC so certificateholders would be able to file "valid" claims; as such was lucrative for both themselves and the government, especially if such repurchased bonds were further utilized by the federal government to bail out financial institutions affected by the Housing Crisis.

111. As further highlighted and claimed, the financial institutions involved within Matter of CW are directly affiliated; where **C.W.** (acquired by **B.O.A.**) was the original mortgage company for **DECEDENTs'** real property asset at 40 Seneca, as such real property asset, due to a late payment, experienced an alleged obscene increase in **DECEDENTs'** interest payments (comparable to that of the "*High-Speed Swim Lane*,"[40] "HSSL," scheme of 2012).

   a. Additionally, **B.O.A.** is the financial institution in ownership of PCV/ST's CMBS trusts.

   b. **B.N.Y.**, acting as the Underwriter for **C.W.** (**B.O.A.**) in Matter of CW, is the parent corporation for **DECEDENTs'** IRA of the LINDA WILLIAMS BENEFICIAL TRUST, where such controlling financial institution to obtained rights for the IRA's formation and registry of **DECEDENTs'** original institution, from *Kirlin*, in the U.S. TREAS.; such being **PERSHING**.

---

FOOTNOTE 39: *See the Slip Op. (Id. at 23) for Matter of City of Chicago, CITY OF CHICAGO ET AL. v. BANK OF NEW YORK MELLON, 297 F.R.D. 218 (SDNY, 2013), written by Hon. Debra Ann Livingston, at the source below.*
   *Source: "http://law.justia.com/cases/federal/appellate-courts/ca2/13-1776/13-1776-2014-12-23.html."*
FOOTNOTE 40: *See a Bloomberg.com news article, entitled "Countrywide: What's the high-speed swim lane?" (by Jacqueline Nelson, dated Oct. 24, 2012).*
   *Source: "https://www.theglobeandmail.com/globe-investor/countrywide-whats-the-high-speed-swim-lane/article4647836."*

*COMPLAINT*

*Southern District Court of the State of New York*

**FITTED SOLE** PRODUCTIONS.    FITTED FABLES A PUBLISHING COMPANY    *In re.: Steven Talbert Williams, Cestui Que v. United States, et al. (Docket - TBD) (Dated December 13, 2019)* | 62



112. The primary defendant in *"CITY OF CHICAGO, ET AL.,"* the *Retirement Board of the Policemen Annuity & Benefit Fund of Chicago*, is stated as having their investments under the control of **DEUTSCHE BANK**, affiliated to not only PCV/ST's trusts and **BONDHOLDERS** (namely **CALPERS** and **CALSTRS**), but also to the *New York State Retirement System* (in control of police retirement funds); claimed to being directly connected to previous claims of enterprise corruption within *WILLIAMS v. UNITED STATES, ET AL.,* 15cv5114(LAP) (SDNY) and *WILLIAMS v. UNITED STATES, ET AL.,* 18cv21064(LLS)(SDNY), associated to the **NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES (N.Y.P.D.), NEW YORK CITY METROPOLITAN TRANSIT AUTHORITY (N.Y.P.D.)** and **WHITE PLAINS CITY POLICE DEPARTMENT**, as named defendants.

113. As alleged, such affiliated institutions of the *Retirement Board of the Policemen Annuity & Benefit Fund of Chicago*, and **DEUTSCHE BANK** incurred a severe loss in assets due to the Housing Crisis, where the replenishment of assets were desperately needed and certain corporations endeavored to institute <u>long-term financial strategies</u> to not only replenish lost funds, but to also return debt owed to foreign entities (accumulated since the onset of giant corporations in the beginning of the 20th Century).

   a. As claimed, one such strategy was conceived by **MR. LAURENCE D. FINK** during his *opportunity* of employment with **BLACKSTONE**, where the first risk management company, **BLACKROCK**, was formed and where certain commercial investment properties, such as PCV/ST (during *MetLife's* ownership, after enactment of rent stabilization laws), seemed nothing more than a lucrative investment to strive to acquire.

   b. Furthermore, the PCV/ST property is alleged to have been specifically desired by **BLACKSTONE**, where one of the firm's founders, **MR. PETER G. PETERSON** (who began his financial career during the year of *"1971;"*[41] at the height of the formation of rent stabilization laws), held positions of government and private enterprises (namely the *Federal Reserve System*), which are claimed to have conflicted with future events of the housing crisis, specifically those related to the *"Maiden lane II"* and *"Bids Wanted In Competition"* ("BWIC") auctions, where **BLACKROCK** further utilized acquired investments (obtained through the enactment of the *Emergency Economic Stabilization Act of 2008*) in the community of PCV/ST and in one of the check clearing firms of the LINDA WILLIAMS BENEFICIAL TRUST, **JP MORGAN**; where their assets, as claimed, were attempted for replenishment after the housing crisis.

      i. It is mentioned, **MR. PETERSON's** career began:

         *"when President Richard Nixon named him Assistant to the President for International Economic Affairs*[,... where o]*ne year later, he was named U.S. Secretary of Commerce*[,... as well as taking] <u>on a public service role from 2000 to 2004, when he chaired the Federal Reserve Bank of New York</u>."* [emphasis added]

114. *MetLife's* 1942 construction of Rockefeller Center ("**ROCKGRP.**") is alleged to have made **TISHMAN** (in ownership of **ROCKGRP.** in the year 2006) a more than worthy successor of the PCV/ST community from its sale; where *MetLife* could retain investments from both properties.

115. The involvement of **BLACKROCK** within the PCV/ST 2006 sale is further alleged to have not only expanded the communities financial return (through the investing in a CMBS trust, subsequent tranches and the new owners intended *Major Capital Improvements*, "MCI's"), but additionally stabilize securitized investments and the corporations longevity within the financial industry as <u>a risk management firm</u>, when in the past it was solely the U.S. Government which would provide the public such financial risk management assessments.

FOOTNOTE 41: See a Peter G. Peterson Foundation internet publication, entitled *"Bio - Peter G. Peterson" (2017)*. Source: *"http://www.pgpf.org/board/peter-g-peterson."*

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 63 of 72
*COMPLAINT*
*Southern District Court of the State of New York*



**FITTED SOLE**
PRODUCTIONS.

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    63

a. As claimed, <u>it was through the securitized investments and upgrades to the PCV/ST</u> <u>community which **BLACKROCK** found as an attractive quality, and where such investments</u> <u>could then be transferred to **BLACKSTONE**</u>, only after other strategized investment opportunities would be implemented; such as: (i) how to eliminate the J-51 tax-exempt status, where the community could be dissolved of any ties to the use of tax-exempt bonds and further used as a co-op or condo investment (see FACT SHEET #36, Ex. 7) (thereby increasing rent stabilized units to present day market rates); and/or (ii) how to transfer such tax-exempt bonds, initially acquired by *MetLife* for redevelopment, out of personal ownership to then distribute such to foreign financial markets, restricted by New York State's *Hampton-Mitchell Act* and Redevelopment laws, despite the involvement of **TRUST2007-C30's** foreign **BONDHOLDERS** within the senior mortgage of the PCV/ST community, where the **GOVERNMENT OF SINGAPORE** and the **CHURCH OF ENGLAND**; a previously claimed defendant, in violation of a First Amendment's Establishment Clause offense; due to the Church's role within the "*rushed*" sale of the community to **BLACKSTONE GRP.** in the year 2013 ("**[BLACKSTONE GRP.]**,... *wanted the deal done by Dec. 31, or else.*"[42] [emphasis added]), where the use of municipal government issued Green Bonds ("*Sustainable Neighborhood Bonds*," SNB's) played a pertinent role within PCV/ST's investments of utilized tax-exempt War Savings Bonds.

### III.E.2. DOMESTIC HOUSING TERRORISM: ANTITRUST SCHEMES

116. In furtherance of explanation of this complaint's statement, the claimed illegal fiduciary acquisition of the IRA by the controlling entities of **PERSHING (B.N.Y.)**, **UBS**, and **F.M.R.** allegedly occurred after PLAINTIFFs' beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST went insolvent during final years of the U.S. housing crisis (2000-2010).

117. PLAINTIFFs' beneficial assets of the LINDA WILLIAMS BENEFICIAL TRUST, as claimed, were further utilized by UBS in securitized investments to reinvest such assets through "dark-pool" trading and act as "*Custodian*" to an IPO of P.S.H. (Ex. 5; previously presented as new evidence in the trials of *WILLIAMS v. UNITED STATES, ET AL.*, 15cv5114(LAP)(SDNY) and *WILLIAMS v. UNITED STATES, ET AL.*, 18-12064(LLS)(SDNY)).

118. In the year 2010, P.S.H. purchased PCV/ST's *Collateral Debt Obligation* ("CDO") trust solely after owners had placed the community's mortgage for sale within the DIL auctions

119. P.S.H. acquired ownership of a mezzanine mortgaged loan of PCV/ST (**TRUST2007-C30** of **B.O.A.**); as such CMBS loan was the leading investment loan in a series of tranches.

a. Furthermore, as claimed, P.S.H. utilized the AUM of UBS (LINDA WILLIAMS BENEFICIAL TRUST) to, essentially, "bail-out" financial loss of PCV/ST's 2010 owners, **BLACKROCK** and **TISHMAN SPEYER PROPERTIES, LP**.

120. It is further claimed, not only had PCV/ST's owners, **BLACKROCK** and **TISHMAN SPEYER PROPERTIES, LP**, profited from real property assets (maliciously raising rental prices), but they, along with financial institutions of the LINDA WILLIAMS BENEFICIAL TRUST (and others), utilized such reinvested assets to invest within the gambling casino corporation of **PNK FINANCE CORP.** ("**PNK**," a subsidiary of **PINNACLE ENTERTAINMENT, INC.**); where assets of the IRA (through the reinvested AUM of UBS) were redistributed to the previous owners of the PCV/ST community by **PNK** (namely **BLACKROCK**, "*control*[ling] *'9.65%' of beneficial assets in Pinnacle*[ (**P.N.K.**)], *as such was amended upon the onset of the 2010*" (the year of **DECEDENTs'** passing) (allegedly cited in PLAINTIFFs' filed certiorari in *WILLIAMS v. UNITED STATES, ET AL.*, 137 U.S. 1611 (Index No. 16M111)(U.S. S.Ct., Mar.15, 2017), quoting

---

FOOTNOTE 42: See entitled "$5.45 Billion Deal for Stuyvesant Town Completed After Threatened Lawsuit, by Charles V. Bagli (dated December 18, 2015).
Source:    "https://www.nytimes.com/2015/12/19/nyregion/dollar5-45-billion-deal-for-stuyvesant-town-completed-after-threatened-lawsuit.html?mcubz=1."

 

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 64 of 72 *COMPLAINT*
*Southern District Court of the State of New York*

FITTED FABLES
A PUBLISHING COMPANY
*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  64

**PINNACLE's** 2010 SEC filing (Form SC 13G, No. 005-33517, CIK: 0000356213)) (the exhibit claimed as being stolen by an unknown entity from Richard Tucker Park and the rest of exhibits by **N.Y.P.D.'s 20**TH **PRECEINCT**).

   a. On a side note, part of **PNKs'** "*Ameristar Merger*" was allegedly signed the day of PLAINTIFFs' custodial age, December 19, 2009; despite being signed,[43] with a final agreement to the merger, on December 20, 2012 (the year of PLAINTIFFs' eviction).

      i. Further, the *Ameristar Merger*, between **PNK** and **HOLDCO**, formed the financial institution of **AMERISTAR CASINOS, INC**; agreed upon by **HOLDCO, PNK DEVELOPMENT 32, INC.** and **AMERISTAR CASINOS, INC.**, where the "*guarantor*[ ]" for **PNK**, "*as of August 10, 2009, governing the 8.625% Senior Notes*,"[44] was **B.N.Y.**; where such Notes were divided in multiple CDOs.

121. As claimed, due to the forming the first "*risk management*" entity within the financial institution of **BLACKSTONE**, conceived by **MR. FINK (BLACKROCK)**, when no other financial entity would allegedly entertain funding of such an idea, **MR. FINK** felt obligated to continue good financial relations with **BLACKSTONE**, even after **BLACKROCK** was disassociated from its parent institution, and sell the real property asset of PCV/ST to **BLACKSTONE GRP.** (consisting of **C.D.P.Q.**; a new partner to *Cirque du Soleil*, PLAINTIFFs' last employer) as a "gift," of sorts, where the investments of the community is further alleged to be a property of substantial profit, which any real estate investor would desire.

   a. As a historical reference, the entire scheme of **BLACKROCK** is claimed to have originated from the end of the 19th Century, where successful businessmen like J.D. Rockefeller and his brother William (whom co-founded the *Standard Oil Co.*) donated and invested substantial amounts of tax-exempt assets to the U.S. Government (including other entrepreneurial giants which influenced the financial industry).

      i. As alleged, certain questions were posed before the Government, being: (i) how would the nation be relieved from foreign debt by the use of tax-exempt securities, accumulated after the first World War?; (ii) how would the wealthy and major corporations contribute income to the nation?; and how would the treasury would be able to eliminate bonds of lesser value after the Great Depression of 1929?

122. After **TISHMAN/BLACKROCK** defaulted mortgage (see Statement) and the Art. 9 DIL Auction, while during **CWCAM's** interim ownership of the community on behalf of **BLACKROCK**, a series of claimed "staged hearings" by **P.S.H.** (entailing a controversy over the mezzanine mortgage's contract. See *BANK OF AMERICA, NA v. PCV ST OWNER, LP*, 10-cv-1178(AHK)(SDNY), *PCVST MEZZCO 4, LLC, ET AL. v. WACHOVIA BANK COMMERCIAL MORTGAGE TRUST 2007-C30, ET AL.*, 14-cv-6023, *APPOLOOSA INVESTMENT, LP v. CW CAPITAL ASSET MGMT., LLC*, No. 653741 (2015), and *PSW NYC, LLC v. BANK OF AMERICA, NA*, No. 650390 (2016)), laying the proper setting for any alleged needed delay in a forthcoming sale of the community and distraction from any possible illegal reinvesting of assets(such as PLAINTIFFs') into the community of PCV/ST, to then replenish any loss in profits incurred from the housing crisis.

123. In finality of the claimed conspired scheme, CWCAM (as a recent subsidiary of W.D.C.), on behalf of **TISHMAN/BLACKROCK**, was able to complete the originally intended scheme and eliminate the use of tax-exempt bonds (see *Hampton-Mitchell Act*) and to further provide the

FOOTNOTE 43: See **PNK's** Form 8-K SEC filing of December 21, 2012 (file No. 001-13641121279081).
   Source: "https://www.sec.gov/Archives/edgar/data/356213/000119312512511382/d457889d8k.htm."
   Comment 1: See also "https://www.streetinsider.com/Special+Reports/Notable+Mergers+and+Acquisitions+of+the+
     Day+1221%3A+%28PNK%29%28ASCA%29+%28CR%29+%28WWAY%29+%28AV%29/7966439.html"
FOOTNOTE 44: See **PNK's** Form 10-K/A SEC filing of December 31, 2012 (see Ex. 4.23. Id. at 52).
   Source: "https://www.sec.gov/Archives/edgar/data/356213/000035621313000021/pnk1231201210ka2.htm"


FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 65



newly renovated property (with increased property value) as an intended "gift" to the financial institution for which **MR. FINK** holds his claim to fortunes, **BLACKSTONE**; where the investments of TRUST2007-C30, and new ownership by **BLACKSTONE GRP.**, incorporate the affiliated invested assets of the **SOCIÉTÉ GÉNÉRALE** (to whom played a significant role in the Housing Crisis, during "*late 2007 and continuing throughout 2008,... [where such entity was a s]econdary market participant[ ]  named  in [a] suit*[45]").

124. However, **CWCAM's** claimed illegal eviction of PLAINTIFF aided to **BLACKROCK's** "gift" scheme and recuperating assets of the housing crisis, where the scheme ended with the previously mentioned "rushed" sale of PCV/ST to **BLACKSTONE GRP.** (with municipal bonds, SNB's), in the year 2015; claimed to have occurred solely after PLAINTIFF allegedly began accumulating evidence against the owners of PCV/ST in front of *Bruno's Café* (within the community of PCV/ST; where he allegedly was forced to pack up his evidence after three PCV/ST security vehicles rushed over to escort him off the property) and bringing action in the local federal court, within the trial of *WILLIAMS v. UNITED STATES, ET AL.*, 15cv5114(LAP)(SDNY).

125. As claimed, the use of SNB's provided **BLACKSTONE GRP.** allowance to distribute the originally acquired tax-exempt bonds of 1942, or prior, to foreign markets through such availability of the municipal SNB's to be easily transferred to the European market via Eurobonds; thereby eliminating the restrictions placed upon *MetLife* as a Redevelopment corporation through the enacting of local New York State Redevelopment laws (including the *Reconstruction Finance Corporation Act of 1932*) from investing within foreign governments.

126. It is unknown how **DECEDENTS'** IRA went insolvent (most likely from a lapse in tax payments), however, to the best of PLAINTIFFs' knowledge, neither he nor his father (**MR. WILLIAMS, JR.**), as the two beneficiaries to **DECEDENTs'** estate, ever received notification from the financial institutions of PERSHING (B.N.Y.), UBS, or F.M.R.; or from the Superintendent of the **N.Y.S.D.T.F.** or the Commissioner of *New Jersey's Banking & Insurance Commission*, or from **DECEDENTs'** last known legal representative, MR. VANN (VANN, PC).

127. As previously stated, PLAINTIFF allegedly attempted to acquire information of the LINDA WILLIAMS BENEFICIAL TRUST from PERSHING, who stated the trust's EIN for the IRA was in their ownership; despite **UBS**, after his PERSHING visit, allegedly stating the trust was acquirable (<u>where their emails state otherwise</u>) and **F.M.R.** (from a previous **CORRESPONDENT SERVICES CORPORATION** account of the trust) stating they would not provide PLAINTIFF with any information without letters testamentary from a surrogate's court.

   a. PLAINTIFF thought it best not to claim the trust from his visit to **UBS** and file for probate within **S.C.N.Y.** (the jurisdictional county court which **DECEDENT** allegedly received hospice care and passed away in);, who are claimed to have performed illegalities, forcing PLAINTIFF to seek redress and estate probate in a court of equity; as a cestui que ("beneficiary"), solely to be named "ex parte" if **MR. WILLIAMS, JR.** declines to appear.

### III.E.3.   DOMESTIC HOUSING TERRORISM: ILLEGAL EVICTION (FACTUAL BACKGROUND)

128. On or about the years of 1971-1973 (due to PLAINTIFF never being allowed viewing of the original or copied version of the lease agreement to **DECEDENTs'** PCV/ST apartment of 7d of Building 449), **DECEDENT,** at the time depicting herself as the sole tenant, signed a rent stabilized tenancy agreement within the community of PCV/ST.

129. At the time of **DECEDENT** signing the above referenced lease agreement, the community was under the ownership of *MetLife*, where the owners acquired the property, originally occupied as

---

FOOTNOTE 45: *See a Harvard Law School Forum on Corporate Governance and Financial Regulation publication, entitled "Subprime-Related Securities Litigation: Early Trends" (posted by Andrew Tuch on April 5, 2009) ("base on the client memorandum by Jonathan C. Dickley and Aric H. Wu of Gibson, Dunn & Crutcher LLP" [internal highlighting ommitted]).*
   *Source: "https://corpgov.law.harvard.edu/2009/04/05/subprime-related-securities-litigation-early-trends."*

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 66 of 72
*COMPLAINT*
*Southern District Court of the State of New York*





an estate (by **MR. PETER STUYVESANT**, Governor of the New England Colony), converted by **MAYOR FIORELLO H. LAGUARDIA** in the 1940's, under provisions of *Reconstruction Finance Corp. Act of 1932* and *Hampton-Mitchell Redevelopment Companies Act of 1943*, and again through the *Rent Stabilization Act of 1969*, which all provided affordable housing and tax exempt benefits to the community, where apartment units were offered to lower income families (namely secretaries, police officers and war veterans).

130. On or about the month of November of the year 1974, **DECEDENT** engaged in personal relations with **MR. WILLIAMS, JR.**, where, during the period leading up to his PLAINTIFFs' birth (in 1979), **MR. WILLIAMS, JR.** became a co-signed rent stabilized tenant to the lease as husband to **DECEDENT**.  See BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL's ("BGANG's") alleged filed evidence in PLAINTIFFs' unconstitutional **N.Y.H.C.** eviction trial of *ST OWNER, LP v. WILLIAMS*, Index No. 52069/12(NYHC), evidencing **MR. WILLIAMS, JR.** as a "*resident*" upon a renewal lease agreement and alleged proof of a statement, presented by **MR. PHIL WISCHERTH, of the lease agreement being rent stabilized** (see DISCLAIMER #1; see also Appendix G, BGANG's N.Y.H.C. filings for Index No. 52069/12 (**see PART III.E.3.d**)).

131. As alleged, while PLAINTIFF attended parochial school, **DECEDENT** attempted to place him on the lease as a resident, where *MetLife* allegedly told her the lease solely allows for two signers as residents, where any other would be an "occupant."

132. In the year 1989, PLAINTIFF was named upon the lease to Building 449's Apt. 7d as an "*occupant*" tenant, establishing succession rights to a renewal lease. See App. G (*Id.* at G.3), BGANG's Index No. 52069/12(NYHC)'s exhibits of the *Department of Housing & Community Renewal's* ("DHCR").  See exhibits of DHCR's "*MRI Production Report*[s]" (2011 and 2012)*.

133. In order to confirm the filings of the MRI Production Report in Housing Court, PLAINTIFF insists upon the acquisition of **DECEDENTs'** original lease agreement from the following locations: the real property at 40 Seneca; *New York City Housing Authority* ("NYCHA"); the personal files of all previous and current owners of PCV/ST; the *City Rent Agency* ("CRAgency," within the DHCR); and the City Register.

   a. The subpoena shall provide evidence of **DECEDENT** being established as a rent stabilized tenant in Building 449 and neglected of notification or presentation of a renewal lease upon **DECEDENTs'** death, as should have also been executed through due diligence (via a death index search. ISC §3240(d)(1); E.P.T.L. §5-1.1-a) by owners and management.

134. As alleged, according to New York City law, sought after filings should also provide prima facie evidence for the notification by the CRAgency to **DECEDENT** for an option to obtain rent stabilization during the time period of her occupancy (if not already stipulated at the time of signing the original lease, or when she registered for social security benefits).

135. The original lease to **DECEDENTs'** PCV/ST real property apartment dwelling unit of Building 449 was signed in or about the years 1970 to 1975.

   a. As evidenced in the above filing of the L&T Court on January 18, 2012 (see DISCLAIMER #1), signed by **MR. WISCHERTH** (an agent within the management offices of PCV/ST), where **DECEDENTs'** signed renewal lease was classified "*rent stabilized*," (see App. G, *Id.* at G.5, an August 8, 2012 N.Y.H.C. print-out of BGANG's filing date, "*01/18/2012*'); as such was in abidance with the *Rent Stabilization Act of 1969*. 9 NYCRR §2522.8.

   b. Due to not having **DECEDENTs'** original lease and not being provided a renewal lease as a legal life tenant (S.C.P.A. §801(1), 807), or an option to apply for renewal by DHCR, PLAINTIFF requests a subpoena of any rent stabilization application and agreement signed by **DECEDENT**, to verify the dwelling being rent stabilized, as well as verifying rental information, payments and attempted evictions.

   c. **MR. WILLIAMS, JR.** was placed on the PCV/ST leasing agreement as a resident during *MetLife's* ownership; as was '[p]*rior to 1986*[,... wherein] *every two (2) years*[,]... *MetLife*

*Southern District Court of the State of New York*



*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)* | 67

continued *tender renewal lease agreements*" of PCV/ST), with payments for rent still provided under **DECEDENTs'** name, as "primary resident." See Matter of Dizengoff.

136. In 2006, *MetLife* put PCV/ST up for sale to **TISHMAN/ BLACKROCK**, "*in the most expensive single residential sale ever in the country,*" for a price of "*$5.4 billion*" when the property "*ha*[d] *$4.4 billion* [in] *debt.*" See a *Therealdeal.com* news article,[46] entitled "*Stuyvesant Town Turned Over To Creditors*" ("**ST Turned Over**," 2010).

137. PCV/ST, at the time of sale, was still under management of *Rose Associates, LLC.*

138. Despite Major Capital Improvements ("MCIs") to PCV/ST and new "optional" or demanded increases in rent, **TISHMAN/BLACKROCK** and CWCAM still managed to lapse in the filing of taxes, and in the year 2010, "*after missing a $16.1 million debt payment*" [highlighting and emphasis added] (see ST Turned Over) ("*default*[ing] *on senior debt*"[47]) (including other monetary related issues), **TISHMAN/BLACKROCK** decided to place the community of PCV/ST up for a *Deed-In-Lieu of Foreclosure* auction (an UCC Art. 9 auction), as such is claimed to have been a conspired act to intentionally induce a default in mortgage payment so as to: (i) relieve themselves of debt incurred by MCIs, as such would be replaced through a closing agreement (with monetary incentives of remaining in ownership of securitized assets within **TRUST2007-C30**, or any renamed mortgaged investment of the community); and (ii) to provide **MR. FINK** an opportunity to resell the community to **BLACKROCK's** originating financial firm of **BLACKSTONE** through a series of claimed "staged" judicial hearings (namely by the a newly acquired owner of a mezzanine mortgage, P.S.H.) concerning contractual discrepancies for the auctioned mezzanine mortgages of **TRUST2007-C30**, in attempts to divert attention from CWCAM, in their interim ownership of PCV/ST, terminating lease agreements associated to rent stabilized and elderly tenants; yet, emphasis is placed upon PLAINTIFFs' beneficial assets being utilized by UBS AG within P.S.H.'s IPO immediately prior to the UCC Art. 9 auction). See a *Law360.com* article (dated January 13, 2015), entitled "*Stuy-Town Juniors Kick $5.4B Loan Fight To State Court*,"[48] stating:

> "*CWCapital, which has managed Stuy Town since 2011*, *canceled a planned foreclosure auction and took title to the residential development back in June after a $3 billion mortgage default and was sued the following month by several funds controlled by* [**CENTERBRIDGE PARTNERS, LP**] *that hold lower-ranking mezzanine debt.*" [emphasis added]

139. While under interim ownership/management of CWCAM (and representative **BONDHOLDERS**) the community underwent additional improvements, luring tenants into a scheme to pay roughly Two-Hundred Dollars for use of amenities (such as a movie theater, cafe, library with free computer use, as well as a children's center), offered in attempts to:

> "*raise the rents at the complex's regulated units, which led to a contentious class action by tenants... culminating in an April 2013 decision approving* a landmark $173 million settlement *between the tenants and owners.*"

140. Additionally built in PCV/ST was a private fitness center, charging tenants a high membership fee, which PLAINTIFF allegedly sought employment with as a dance instructor, where he even gave a private class to their employees, as an "audition," only to be told they were not hiring.

   a. During the above period, PCV/ST owners demanded registration and fee of One-Hundred

FOOTNOTE 46: Source: "https://therealdeal.com/2010/01/25/stuy-town-turned-over-to-creditors."
FOOTNOTE 47: See a Law360.com publication by Natilie Rodrigeuz, entitled "Blackstone, Ivanhoe Seal Deal For Beleaguered Stuy Town," highlighting PCV/ST's owners:
  "default[ing] on senior debt... [and the] raise the rents at the complex's regulated units, which led to a contentious class action by tenants... culminating in an April 2013 decision approving a landmark $173 million settlement between the tenants and owners." [emphasis added]
  Source: "http://www.law360.com/articles/716299/blackstone-ivanhoe-seal-deal-for-beleaguered-stuy-town."
FOOTNOTE 48: See the Law360.com article, entitle "Stuy-Town Juniors Kick $5.4B Loan Fight To State Court."
  Source: "https://www.law360.com/articles/610967/stuy-town-juniors-kick-5-4b-loan-fight-to-state-court."



*COMPLAINT*

*Southern District Court of the State of New York*



Fifty Dollars per dog ownership, along with the optional use of, air conditioners (for which they charged for installation and additional monthly increases in rent).

141. During the first week of June of 2014, during CWCAM's officially claimed ownership of PCV/ST, claimed as being simply in order to reap in the monetary benefits from the auctioning of the property, wherein a *Law360.com* article, entitled "*CWCapital Takes Title To Stuy Town, Scrubs Auction*"[49] (by MS./MRS. KAITLIN UGOLIK, dated June 6, 2014), states:

"[CWCAM], *LLC took title to Manhattan's Stuyvesant Town-Peter Cooper Village housing complex this week, canceling an upcoming auction for the property,... [CWCAM], which has been managing the 80-acre property since [BLACKROCK] and [TISHMAN] backed away from their investment in Stuyvesant Town in 2010, acquired title to the asset via deed-in-lieu of foreclosure on June 3, as rumors swirled that a mystery buyer may be set to take control through an auction.*" [emphasis added]

142. The "*mystery buyer*," as it turned out, was "*SL Green Realty Corp.*"[50] ("SL GREEN," 420 Lexington Avenue New York, NY 10170, a prominent investor in TRUST2007-C30, operating as SL GREEN OPERATING PARTNERSHIP, LP (CENTERBRIDGE PARTNERS, LP)); as such pertains to SL GREEN pursuing a corresponding lawsuit against CWCAM, on behalf of its client BONDLDERS of TRUST2007-C30, where CWCAM felt obligated to establish ownership of the community as quickly as possible, ensuring control over the property by, essentially, paying SL GREEN "*$10 Million*,"[51] as a "*go-away-payment*," to not pursue legal action.

143. However, another "*mystery buyer*," as proven through invested assets and (to this day) unresolved legal action over contractual agreements within TRUST2007-C30, is P.S.H., as such is said to additionally pertain to the company's involvement as a "bail out" entity for TISHMAN/BLACKROCK's DIL auction for the PCV/ST community and the overall invested assets of UBS AG within P.S.H.'s IPO (evidenced within P.S.H.'s prospectus. See Ex. 5), wherein, as claimed, the assets of Trust LPSW were utilized within the AUM of UBS to invest in P.S.H.'s IPO.

   a. As claimed, the IPO's negotiated contracts between P.S.H. and UBS began during the years 2010 to 2012 (the timeframe of DECEDENTs' death,... PLAINTIFFs' custodial age of the LINDA WILLIAMS BENEFICIAL TRUST's irrevocable testamentary instrument,... and the eviction of the Williams household from PCV/ST's Building 449).

FOOTNOTE 49: *See the Law360.com article, mentioned in FOOTNOTE 48. See also ROBERTS, ET AL v. TISHMAN SPEYER PROPERTIES, LP, ET AL, 2009 NY Slip Op 07480, 13 NY3d 270, 62 AD3d 71 ("Matter of Roberts," aforementioned), wherein legal action was had against the owners of PCV/ST for attempts to inflate rents through the adding of amenities, as such should have originally been included within their signed lease agreements (considered a ploy by owners to gain profit at the expense of tenant rights), whereby:*
   "*current and former owners of the properties, respectively, were not entitled to take advantage of the luxury decontrol provisions of the Rent Stabilization Law (RSL)[FN1] while simultaneously receiving tax incentive benefits under the City of New York's J-51 program.*"
FOOTNOTE 50: *See the Law360.com article, entitled "CWCapital Takes Title To Stuy Town, Scrubs Auction" at the source below.*
   *Source: "https://www.law360.com/articles/545464."*
FOOTNOTE 51: *See a RealDeal.com internet news article, entitled "SL Green given $10M to withdraw suit blocking Stuy Town deal: report" (dated December 21, 2015), stating:*
   "[t]*he sale of Stuyvesant Town to the Blackstone Group and Ivanhoe Cambridge closed on Friday, but not without some heavy drama behind the scenes.*
   "*As the closing of the deal approached, SL Green Realty threatened to file a lawsuit that would block the sale, or at least hold it up. The Stuyvesant Town deal, valued at over $5.3 billion, ended up going through as planned, but not before SL Green received $10 million dollars from CWCapital Asset Management[.]*"
   *Depicting such settlement as a "go-away-payment," the article further states the primary matter dealt with the "conflict over SL Green's One Vanderbilt development in Midtown... [and] CWCapital's parent company, Fortress Investment Group,..." causing CWCAM to seek formal ownership of PCV/ST in its entirety.*
   *Source: "http://therealdeal.com/blog/2015/12/21/sl-green-threatened-to-block-stuy-town-sale."*

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 69 of 72
*COMPLAINT*
*Southern District Court of the State of New York*



FITTED    FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*    69



b. In essence, the overall claimed non-coincidental conspired scheme of economic espionage, racketeering, antitrust was executed in order to illegally reinvest the LINDA WILLIAMS BENEFICIAL TRUST's IRA assets throughout the world, simply in order to gain monetary assets to: (i) salvage a community from debt (Art. 9 DIL auctions); (ii) advance the elimination of rent stabilized tenants; (iii) ensure the subversion of PLAINTIFF (enslavement within impoverishment), in prevention of a rent stabilized successive tenant, from obtaining beneficial assets; (iv) or even **business disenfranchisement**, depriving PLAINTIFF the opportunity to advance upon a newly conceptualized internet-based Intellectual Property ("IP") investment platform for his privately registered business (developed and researched **the week prior to his eviction**).

   i. As mentionable, PLAINTIFFs' newly created business (a production company; *Fitted Sole Productions*, DBA), entailed the use of an alleged newly built vocal booth and the recording of singers or tap dancers to sell for performance royalties upon the internet (despite utilizing such a business to set up the internet-based platform to expand upon PLAINTIFFs' personal collection of IP through the use of others who register as members and then trade such IP between each member), where the owners of the community would have to incorporate PLAINTIFFs' I.R.S. tax filings for "*Business Use of Your Home*," and square footage of the Building 449 apartment dwelling.

   A. As alleged, such I.R.S. **filing for square footage** may induce **severe consequences** to the PCV/ST's owners own tax filings **and to their J-51 tax status** (possibly sending them into another defaulted mortgage).

   B. As claimed, PLAINTIFFs' conceptualized trade secrets for his business were allegedly intruded upon through PLAINTIFFs' use of **TISHMAN's** open internet access within the community of PCV/ST (prior to eviction) (see previous internet intrusion claims associated to PCV/ST through PLAINTIFFs' use of **TISHMAN's** open internet access at *Rockefeller Center* (**ROCKGRP.**) in *WILLIAMS v. UNITED STATES, ET AL.*, 15cv5114(LAP)(SDNY)).

144. Once the property had ownership assumed under CWCAM's representative authority, through foreign **BONDHOLDERS** (which included "*several funds controlled by Centerbridge Partners, LP*" (see "*FOOTNOTE 48*"), P.S.H. created numerous subsidiaries, one in the name of **PCV/ST OWNER, LP** (consisting of **PCV OWNER, LP** and **ST OWNER, LP**), consisting of foreign and domestic **BONDHOLDERS** to **TRUST2007-C30**, fully establishing their financial investment affiliation within the **UNITED STATES** at the **Nat. Registered Agents, Inc.** offices (located within the complex of **ROCKGRP.**; where **ROCKGRP.** is also named defendant due to U.S. Const. Am. 1, 4 and 14 §1 claims of being unlawfully removed from a public area).

145. It is worth highlighting, the insurance company for CWCAM and PCV/ST is **B.O.A.** (*Estate of Linda Williams* and PCV/ST), as such insurer remained as CWCAM after CWCAM was purchased by W.D.C. from **FORTREESS** and after CWCAM assumed official ownership of PCV/ST before selling to **BLACKSTONE GRP.**.  See a *Bisnow.com* publication,[52] entitled "*WHAT'S BIGGER THAN BIG?.*"

   "*Walker & Dunlop's $220M acquisition of CWCapital to create the **second-largest** multifamily lender in the US is more than a really, really **big deal**... CEO Willy Walker told us **this morning** it's the **culmination of a journey** started in the depths of the **recession** to invest in agency business. (But it is also a really big deal.)*" [emphasis added]

   a. During such period of ownership transition, PLAINTIFF allegedly provided the entertainment director of PCV/ST, **MS./MRS. MIRANDA LANGDON**, a business plan (see DISCLAIMER #1) to further expand his entertainment business and relationships, wherein the community would have the chance to experience a "Carnival Day," not unlike the community's discontinued flea market and the second avenue fairs he remembered from

Case 1:19-cv-11547-CM    Document 2    Filed 12/13/19    Page 70 of 72
*COMPLAINT*
*Southern District Court of the State of New York*





his childhood (where all of New York City would attend).

   i. The specialized event would have provided the community with performances from dance and new performing artist's in the community (known as the "oval," where, during the summer, movies where shown and folk singers provide stage performances).

b. The business plan proposal unfortunately went ignored, however, shortly after the community began advertising for a "*Farmers Market.*"

c. Whether or not such proposal may or may not have been a factor to the owners establishment of a Farmers Market, PLAINTIFF presents such to show his constant participation he had within the community since his childhood, including the community's "*Point Tournaments*" and an alleged membership within the "*Stuyvesant Town Chess Club*" (**MR. ROBERT KWEST** allegedly being president, at the time of his <u>participation within the Bankers Athletic League</u>, "BAL," a tournament chess team of PCV/ST).

146. As a topic of discussion worth noting, PLAINTIFF points out certain events pertaining between *New York University* (staff and alumni) and himself during his displacement, as such is in relation to a fellow member of the *Stuyvesant Town Chess Club*, **MR. RONALD GOLDBRENNER, ESQ.**

a. While attempting to locate legal representation (post eviction), PLAINTIFF contacted fellow *Stuyvesant Town Chess Club* member **MR. RONALD GOLDBRENNER, ESQ.**, due to his relations as alumni of *New York University* and their intimate relations as BAL teammates.

   i. The BAL, is also an alleged contributing factor to consider when investigating economic espionage, racketeering and antitrust claims for the LINDA WILLIAMS BENEFICIAL TRUST, due to the attendance of players from opposing teams (representing banking institutions) being in direct connection to the trust's clearing firms.

147. On September 19, 2012, **MR. RONALD GOLDBRENNER, ESQ.** and PLAINTIFF allegedly exchanged emailed correspondences (evidence available), wherein they agreed to meet to discuss **MR. GOLDBRENNER, ESQ.'s** services as a notary, where, on the day of their meeting, PLAINTIFF was granted allowance (via a guest pass) to use the *New York University* library in furtherance of his development within legal studies by **MR. GOLDBRENNER, ESQ.**.

a. Subsequently, on March 6, 2013, PLAINTIFF returned to *New York University* in attempts to utilize their library by requesting such from their staffed security (located within a building directly across the street from the library), where he was granted admittance and a guest pass (see DISCLAIMER #1) allegedly by **MR. KENNETH KLEINROCK**.

   i. However, on March 7, 2013, PLAINTIFF was allegedly granted access and a day pass, only to have security guards remove him from the premises (due to not being a student); as such was immediately after PLAINTIFF sent two important emails to various judicial officers of the New York County Court System and to various *New York University* civil rights teachers (and other administrative personnel, imploring them to aid in his endeavors to combat the claimed injustices which had occurred from his eviction).

   ii. Such emails allegedly contained valuable information of the LINDA WILLIAMS BENEFICIAL TRUST and claimed illegalities committed by the owners of PCV/ST. See Exhibit 14 (*Id.* at 1), the emailed transmission by PLAINTIFF to New York County E-court (at the attention of **HON. J. LUIS A. GONZALES** and **MS./MRS. SUSANNA MOLINA ROJAS** (Clerk of the court), prima facie evidence of the New York County E-court System having acquired knowledge of his displacement and attendance within N.Y.H.C., so as to seek restitution for *ST OWNER, LP v. EUGENE WILLIAMS* Index No. 52069/12(JHS)). See also Ex. 13 (*Id.* at 2), an emailed transmission by PLAINTIFF to multiple administrative and educational personnel of *New York University*, containing a forwarded message of his earlier sent email to judicial officials of the New York County

---

*FOOTNOTE 52: Source: "https://www.bisnow.com/baltimore/news/commercial-real-estate/WHATS-BIGGER-THAN-BIG-4295."*




*Southern District Court of the State of New York*

FITTED FABLES
A PUBLISHING COMPANY

*In re.: Steven Talbert Williams, Cestui Que v. United States, et al.*
*(Docket - TBD) (Dated December 13, 2019)*  71

E-court system, as such provides prima facie evidence of *New York University* personnel having acquired knowledge of all related events and how such would influence the owners of PCV/ST, due to their contractual involvement for dormitories within the community.

148. While performing investigative research into trial filings of **S.D.N.Y.** and the **N.Y.H.C.** for the names of **PCV/ST OWNER, LP** or **ST OWNER, LP**, PLAINTIFF allegedly found the interim owners of CWCAM allegedly performed irregular acts of ownership duties without laying claim to ownership itself.  See a *Rew-online.com* news article,[53] entitled "*$69M Stuy town deal a double-edge sword,*" (by **MS./MRS. MOLLOT**, dated December 5, 2012), referencing the settlement of Matter of Roberts (see "*FOOTNOTE 49*"), stating:

> "*owners of ST/PCV (senior lenders represented by* [CWCAM], *who in court papers are referred to as 'PCV ST Owner LP' and 'ST Owner LP')* contributed $58.25 million of the $68.75 million settlement. <u>Metropolitan Life, the owner until November 2006, contributed $10.5 million.</u>" [highlighting and emphasis added]

149. PLAINTIFFs' **federal court search for cases filings**, specifically against the community of PCV/ST (since the time of his displacement), <u>**have been recently sealed and hidden from public viewing**</u>.

a. Such event, PLAINTIFF mentions, was immediately after he had sent the emailed transmissions to the New York County Court System (using the computers within the library of *New York University*.

b. Such is highlighted due to a trial which was allegedly found during PLAINTIFF initial search, whereby the owners of PCV/ST were sued for an amount of One-Billion Dollars, only to settle the matter out of federal court.

c. Additionally, due to *MetLife's* continued relations with CWCAM and the original owners of PCV/ST being well beyond the date of PLAINTIFFs' eviction, such is claimed prima facie of CWCAM's neglect to acquire the original lease of **DECEDENT** and provide such to **MR. WILLIAMS, JR.** or PLAINTIFF (or even to file such within **N.Y.H.C.** for the eviction; despite filing the "new tenants" lease agreement, aforementioned evidenced), as such would have proven the dwelling to be rent stabilized, instead of filing the new tenants lease who had nothing to do with the original trial matter.

150. A thorough investigation and auditing is sought into the property of PCV/ST and its owners (past and present, including **BONDHOLDERS** of CWCAM), conducted by federal agencies and regulators, as well as be separately presented to PLAINTIFF for analysis and comparison of their findings; as such shall assess verification of:

  a. **DECEDENTs'** bill payments;
  b. lease agreements/evictions of all rent stabilized tenants;
  c. late tax filings by owners;
  d. census reports of tenants (either through written deposition or verbal testimony);
  e. environmental safety hazards (such as pesticide use, lead-based paint, asbestos and rodent or mite infestation);
  f. Health Department records and history of renovations;
  g. history of vacated tenants;
  h. acquisition of sealed trials; and
  i. other matters of interest.

151. In furtherance of historical and legal education, PLAINTIFF insists upon the requisitioning of historical documents and other filings related to the property of PCV/ST prior to its inception (specifically from the time period of initial land ownership of the *Estate of Peter Stuyvesant*)

---

FOOTNOTE 53: See the Rew-online.com internet news article, entitled "$69M Stuy town deal a double-edge sword."
Source: "http://rew-online.com/2012/12/05/69m-stuy-town-deal-a-double-edge-sword"





and afterward (including all reference materials related to contracts, tax maps, cartography, sewer lines, district establishments, municipal or cooperative municipal establishments and other historical materials or records or other contractual agreements).

### III.E.3.a  DOMESTIC HOUSING TERRORISM: ILLEGAL EVICTION (FACTUAL BACKGROUND): STATE FARM RENTERS' INSUR. POLICY & REPRESENTATIVE AGENT MR. KEVIN LEONG

152. On March 19, 2003, as alleged, according to records, **DECEDENT** initiated a rental insurance policy (Ex. 4, *Id.* at 1) for Apt. 7d of Building 449 (PCV/ST) with **STATE FARM** agent **MR. KEVIN LEONG**, located at 134 West 20th Street, Frnt. 1 New York, NY 10011-3606.
   a. Due to the possibility of inducing penalty of perjury, PLAINTIFF is unsure whether the above referenced date of **DECEDENTs'** established policy is completely accurate, as such may have been a previous date.
   b. On March 19, 2003, PLAINTIFF was added to **DECEDENTs' STATE FARM** policy, <u>in his sole capacity</u> as a secondary policy holder.

153. As alleged, when PLAINTIFF acquired certain financial documents from the real property asset of 40 Seneca, with **DECEDENTs'** estate in insolvency, Apt. 7d was mailed a billing statement (Ex. 4, *Id.* at 2), from "***STATE FARM FIRE & CASUALTY CO.***"), dated March 19, 2011, from **MR. LEONG**, <u>requesting **DECEDENTs'** attention to pay premium payments</u> in "*$193.00.*" [highlighting and emphasis added]

154. The date of March 19 is accentuated to provide prima facie evidence of the billing statement sent well after the death of **DECEDENT**, as such is claimed to have been axiomatic of laches for performing a death index search (ISC §3240(d)(1); E.P.T.L. §5-1.1-a) and to provide notification to PLAINTIFF, as successive policy holder, or **MR. WILLIAMS, JR.** as her spouse.

155. Whereas PLAINTIFF assumes responsibilities for executorship over **DECEDENTs'** debts, he states such may only be, or have been, accomplished through acquiring of records for all of her beneficial assets, where the claimed neglect by **MR. VANN** and **MR. WILLIAMS, JR.** (in his grievance), in essence, induced the onset of PLAINTIFFs' impoverishment, and where lached financial obligations to billing statements (namely that of **STATE FARM**), caused the estate to become insolvent, or to have a PCV/ST renewal lease provided to PLAINTIFF for him to sign under rights to succession (9 NYCRR §2522.8); all of which <u>should have</u> provided allowance for the policy's continuance after the claimed illegal eviction, even if premium payments went neglected, as such is enforced under ISC §3420(a)(1), wherein it states:
   "the <u>insolvency</u> or bankruptcy <u>of the person insured, or the insolvency of the insured's estate</u>, shall not release the insurer from the payment of damages for injury sustained or <u>loss occasioned during the life of and within the coverage of such policy or contract.</u>" [highlighting and emphasis added]

156. On August 15, 2012, after PLAINTIFF allegedly acquired **DECEDENT** files from 40 Seneca, he immediately contacted **MR. LEONG** by email, informing the representative of **DECEDENTs'** passing and requesting further information concerning the **STATE FARM** policy (Ex. 4, *Id.* at 3, two pages of emailed correspondences between PLAINTIFF (*stwlegal@gmail.com*) and **STATE FARM** agent **MR. LEONG** (*Kevin.leong.ngfd@statefarm.com*).

157. Within **MR. LEONG's** response email, dated August 16, 2012 (Ex. 4.), the agent confirmed the policy was, in fact, a "*renter policy, since she rented the apartment?*" [highlighting and emphasis added]
   a. The question mark at the end of **MR. LEONG's** sentence is alleged to have been a replied statement, implying the agent was *unsure*, or did not have proper knowledge, of the policy's contents and the actual date in which **DECEDENT** obtained the policy; however, **MR. LEONG** reassured PLAINTIFF, stating "*feel free to email or call me with any questions.*"
   b. Furthermore, in the exhibited email, **MR. LEONG** provided information of a policyholder's

**Page 72**